PILLSBURY WINTHROP SHAW PITTMAN LLP
Joseph D. Jean
Alexander D. Hardiman
Janine M. Stanisz
1540 Broadway
New York, NY 10036-4039
212.858.1000
joseph.jean@pillsburylaw.com
alexander.hardiman@pillsburylaw.com
janine.stanisz@pillsburylaw.com

*Attorneys for Plaintiff JULIO ROCHA*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JULIO ROCHA,<br><br>            Plaintiff,<br><br>        v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; AXIS SPECIALTY EUROPE SE,<br><br>            Defendants. | Civil Action No.: 1:16-cv-02327 RJD-RML |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS
MOTION FOR PRELIMINARY INJUNCTION
<u>REQUIRING DEFENDANTS TO PAY DEFENSE COSTS</u>**

## TABLE OF CONTENTS

                                                                                                       **Page**

PRELIMINARY STATEMENT ................................................................................................ 3

ARGUMENT .................................................................................................................................. 4

I.     THIS COURT'S HOLDINGS IN THE LI LITIGATION ARE THE LAW OF THE CASE ............................................................................................................................... 4

II.    THIS COURT HAS JURISDICTION TO HEAR THIS CASE ........................................ 5

III.   MR. ROCHA IS ENTITLED TO INJUNCTIVE RELIEF ............................................... 7

        A.     Mr. Rocha Is an Insured by Virtue of Being Named as a Co-Defendant with Several FIFA Vice-Presidents.................................................................................. 7

        B.     Mr. Rocha Also Is an Insured Because He Was Employed by FIFA in a Managerial or Supervisory Capacity ..................................................................... 8

        C.     The Superseding Indictment Alleges Criminal Conduct in Relation to Mr. Rocha's Employment by FIFA .............................................................................. 10

        D.     Mr. Rocha Will Suffer Irreparable Harm.............................................................. 11

        E.     Mr. Rocha Has Demonstrated a Likelihood of Success on the Merits and the Balance of Hardships Favors Mr. Rocha ............................................................. 12

CONCLUSION............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Certain Underwriters at Lloyd's of London v. Illinois Nat'l Ins. Co.*,
No. 09 Civ. 4418, 2012 WL 4471564 (S.D.N.Y. Sept. 24, 2012)............................................3

*Chesley v. Union Carbide Corp.*,
927 F.2d 60 (2d Cir. 1991)......................................................................................................5

*Cluett, Peabody & Co. v. CPC Acquisition Co.*,
863 F.2d 251 (2d Cir. 1988)..................................................................................................10

*Coleco Indus., Inc. v. Universal City Studios, Inc.*,
637 F.Supp. 148 (S.D.N.Y. 1986) ...........................................................................................2

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994).................................................................................................................3

*Levitt v. Brooks*,
669 F.3d 100 (2d Cir. 2012).....................................................................................................4

*M.E.S., Inc. v. Safeco Ins. Co. of Am.*,
No. 10-cv-02798, 2014 WL 2931398 (E.D.N.Y. June 27, 2014).............................................2

*Ovadia v. Top Ten Jewelry Corp.*,
No. 04 Civ. 2690, 2005 WL 1949970 (S.D.N.Y. Aug. 12, 2005) ............................................2

*Rosco, Inc. v. Mirror Lite Co.*,
506 F. Supp. 2d 137 (E.D.N.Y. 2007) .....................................................................................2

*Sash v. Schwartz*,
No. 04 Civ. 9634, 2007 WL 30042 (S.D.N.Y. Jan. 4, 2007), aff'd 356 Fed.
Appx. 555 (2d Cir. 2009).........................................................................................................4

*In re WorldCom, Inc., Sec. Litig.*,
354 F. Supp. 2d 455 (S.D.N.Y. 2005)......................................................................................9

*York-Buffalo Motor Express v. Nat'l Fire & Mar. Ins. Co.*,
294 N.Y. 467 (N.Y. 1945) .......................................................................................................9

Rules and Regulations

Federal Rules of Civil Procedure
    Division of Business Rule 50.3.1(a) .......................................................................................2
    Federal Rule of Civil Procedure 65 ........................................................................................1

Plaintiff Julio Rocha submits this reply memorandum of law in further support of his motion, pursuant to Fed. R. Civ. P. 65, for injunctive relief requiring Defendants to immediately pay costs incurred by Mr. Rocha in connection with his defense of the Underlying Action.

## PRELIMINARY STATEMENT

In the *Li* Litigation, this Court held unequivocally that the matter was subject to this Court's ancillary jurisdiction and that the Policy was required to provide critical and necessary insurance coverage for the defense costs being incurred by a defendant in the Underlying Action. Notwithstanding this Court's clear ruling, Defendants have continued their bad faith efforts to deny individuals the defense costs due under the Policy in connection with their ongoing defense of the Underlying Action. Defendants continue to advance now frivolous arguments regarding this Court's jurisdiction and, in this related case, Mr. Rocha's entitlement to the payment of his defense costs.

Mr. Rocha has demonstrated a likelihood of success on the merits because, among other reasons: (1) Mr. Rocha is an insured under the Policy by virtue of his employment with FIFA and being named as a co-defendant in the Superseding Indictment with FIFA Vice-Presidents; (2) the Superseding Indictment alleges wrongful acts in Mr. Rocha's insured capacity; and (3) Defendants have failed to prove the applicability of any exclusion in the Policy that would otherwise preclude coverage.

Accordingly, as set forth below and in Mr. Rocha's opening memorandum of law, this Court should grant his preliminary injunction and order that Defendants immediately pay the costs associated with his defense in the Underlying Action.

# ARGUMENT

I. **THIS COURT'S HOLDINGS IN THE LI LITIGATION ARE THE LAW OF THE CASE**

This case and the *Li* Litigation are related matters,[1] and so the *Li* Litigation holdings with respect to jurisdiction and matters of law constitute law of the case. The law of the case doctrine "posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *M.E.S., Inc. v. Safeco Ins. Co. of Am.*, No. 10-cv-02798, 2014 WL 2931398, at *18 (E.D.N.Y. June 27, 2014) (citations omitted). The doctrine "is broad enough to encompass a lower court's adherence to . . . the rulings of another judge or court in . . . a closely related case." *Ovadia v. Top Ten Jewelry Corp.,* No. 04 Civ. 2690, 2005 WL 1949970, at *1 (S.D.N.Y. Aug. 12, 2005) (alterations in original) (citations omitted); *see also Coleco Indus., Inc. v. Universal City Studios, Inc.*, 637 F.Supp. 148, 150 (S.D.N.Y. 1986) ("[I]t is the duty of the District Court to follow the law of the case, albeit a related case, particularly when the law has been pronounced, at least *pro tem*, by this court.").

A court should not review its prior decision, which has become the law of the case, unless "one of three exceptional circumstances exists: 1) the evidence on a subsequent trial was substantially different; 2) controlling authority has intervened; or 3) the earlier decision was clearly erroneous and would work a manifest injustice." *Rosco, Inc. v. Mirror Lite Co.,* 506 F. Supp. 2d 137, 155 (E.D.N.Y. 2007) (quotations and citations omitted)). None of the three noted exceptional circumstances apply here, and Defendants have not argued otherwise. Thus, the *Li*

---

[1] Mr. Li and Mr. Rocha were named in the same criminal indictment, and are both seeking insurance recovery from the same Defendants under the same insurance policy. On May 10, 2016, this Court filed a Notice of Related Case stating that the civil cover sheet in this action indicated it is related to the *Li* Litigation. Subsequently, the case was reassigned to be heard by the judges presiding over the *Li* Litigation. *See also* Division of Business Rule 50.3.1(a) ("A civil case is 'related' to another civil case . . . because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge.").

Litigation holdings are the law of the case, and more specifically, this Court has already determined that it can properly exercise its ancillary jurisdiction in this matter. Accordingly, Defendants are barred from attempting to reargue this Court's proper exercise of ancillary jurisdiction over this matter.

## II. THIS COURT HAS JURISDICTION TO HEAR THIS CASE

Even assuming that this Court's holding regarding ancillary jurisdiction did not constitute law of the case (which it does), the same reasons that this Court has ancillary jurisdiction over the *Li* Litigation exist here.[2]

Ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994). Federal courts have asserted ancillary jurisdiction for two purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80 (citations omitted).

This Court held that both purposes warranted the exercise of ancillary jurisdiction in the *Li* Litigation. With respect to the first purpose, this Court stated that the factual interdependence of the criminal charges and insurance coverage claim "is self-evident: both proceedings turn, in material part, on the nature of positions [defendant] held within FIFA and his conduct while

---

[2] Although moot in light of this Court's holding regarding its ancillary jurisdiction, Mr. Rocha also pled diversity jurisdiction based on the fact that Defendants in the *Li* Litigation had previously removed that case to this Court on the basis of an assertion of this Court's diversity jurisdiction. While it now appears that Defendants, for the purposes of this related action, are contradicting that assertion and have instead asserted that the syndicates at issue all are foreign citizens, Defendants have failed to demonstrate that each of the "Names" participating in such syndicates are foreign citizens as required for a diversity analysis. *Certain Underwriters at Lloyd's of London v. Illinois Nat'l Ins. Co.*, No. 09 Civ. 4418, 2012 WL 4471564, at *1 (S.D.N.Y. Sept. 24, 2012) ("For jurisdictional purposes, courts generally consider the citizenship of each Name in a Lloyd's syndicate.") (citations omitted).

holding those positions." Hardiman Decl., Ex. A, p. 6. With respect to the second purpose, this Court noted that "successful management of [defendant's] criminal case necessarily involves preventing any potential issues or delays from impeding a timely, efficient, and fair trial as to [defendant] and his many co-defendants." *Id.* at 6. Moreover, this Court held that " [a]n ancillary proceeding is needed to foreclose undue delay . . . and to ensure that this insurance dispute does not interfere with a fair and efficient trial for Li and his many co-defendants, while, as noted, the Insurers face no discernable prejudice." *Id.* at p. 8. The same is true here, even assuming that Defendants are not barred by law of the case from relitigating the issue.

Thus, Courts have consistently exercised ancillary jurisdiction over cases similar to Mr. Rocha's, such as fee disputes and civil matters related to criminal cases over which they already have jurisdiction. *See, e.g., Levitt v. Brooks,* 669 F.3d 100, 103 (2d Cir. 2012) ("'It is well settled that a federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes . . . between litigants and their attorneys when the dispute relates to the main action.' Ancillary jurisdiction over fee disputes is equally available in criminal and civil cases." (citations omitted)); *Sash v. Schwartz*, No. 04 Civ. 9634, 2007 WL 30042, at *6 (S.D.N.Y. Jan. 4, 2007), aff'd 356 Fed. Appx. 555 (2d Cir. 2009) (finding ancillary jurisdiction in a legal malpractice suit by a criminal defendant against his former attorney and stating that "courts have held that ancillary or supplemental jurisdiction may be exercised over disputes relating to criminal cases over which the courts have original jurisdiction.").

Defendants' arguments fail because they misstate the law of this jurisdiction. Defendants state that ancillary jurisdiction "exists <u>only</u> 'over related matters <u>arising out of</u> the case in which it has initial jurisdiction.'" Def. Memo. 11-12 (emphasis added). Defendants, however, do not cite to any binding precedent from this Circuit to support their argument that ancillary

jurisdiction is "only" available for matters "arising out of" another matter for which the court has original jurisdiction. Rather, the Second Circuit's test for ancillary jurisdiction is broader and is based on "if the claim is sufficiently related to an initial claim properly before the court." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 64 (2d Cir. 1991) (emphasis added). Applying either standard, however, leads to the same result: Mr. Rocha's insurance coverage action is sufficiently related to and arises out of the criminal matter because the former is required to provide him with an adequate defense in the latter. Accordingly, this Court has ancillary jurisdiction to hear this insurance coverage dispute.[3]

### III.     MR. ROCHA IS ENTITLED TO INJUNCTIVE RELIEF

#### A.     Mr. Rocha Is an Insured by Virtue of Being Named as a Co-Defendant with Several FIFA Vice-Presidents

The Policy provides insurance coverage for FIFA employees "named as a co-defendant with a President, Vice-President or Member of [FIFA]" or "while acting in a managerial or supervisory capacity of [FIFA]." Hardiman Decl., Ex. B, § 1.3(a). Importantly, Defendants do not argue that Mr. Rocha was not a FIFA employee, and they cannot now argue otherwise. Indeed, Defendants do not dispute Mr. Rocha's affidavit that he was employed by FIFA or the Superseding Indictment's assertion that Mr. Rocha "was employed by FIFA as a development officer." (Knoerzer Decl., Ex. A, ¶ 254).[4] Instead, Defendants argue only that Mr. Rocha purportedly did not act in a managerial or supervisory capacity and as such should not be entitled to insurance coverage. Even assuming Defendants are correct as to Mr. Rocha's "managerial or

---

[3] In this regard, as established in the *Li* Litigation, the Policy's forum selection clause does not govern here because the individual insureds did not subscribe to that clause and are therefore not bound by it. Hardiman Decl., Ex. A, pp. 13-14. Like ancillary jurisdiction, this holding constitutes the law of the case.

[4] That Mr. Rocha was employed by FIFA is confirmed by FIFA's own admissions in its Victim Statement and Request for Restitution, which alleges wrongful acts by Mr. Rocha in his capacity as a FIFA employee and seeks restitution of his salary and other amounts based on FIFA's employer status. Hardiman Decl., Ex. D., pp. 15, 17-18.

supervisory capacity" (which they are not), Defendants have failed to offer any argument to dispute Mr. Rocha's entitlement to coverage by virtue of being employed by FIFA and "named as a co-defendant with a President, Vice-President or Member of [FIFA]."

Thus, Mr. Rocha is named as a co-defendant in the Superseding Indictment with several FIFA Vice-Presidents, including Jack Warner ("[f]rom in or about 1983 to June 2011, WARNER was a member of the FIFA executive committee, and, beginning in 1997, was also a FIFA vice president") and Eugenio Figueredo ("[f]rom in or about May 2013 to May 2015, FIGUEREDO was a member of FIFA's executive committee and a FIFA vice president"). Knoerzer Decl., Ex. A, ¶¶ 40, 48. Accordingly, Mr. Rocha is an insured under the Policy by virtue of his being named in the Superseding Indictment both as an employee of FIFA and "as a co-defendant with a . . . Vice-President."

### B. Mr. Rocha Also Is an Insured Because He Was Employed by FIFA in a Managerial or Supervisory Capacity

Mr. Rocha also is an insured under the Policy as a result of his employment by FIFA in a managerial or supervisory capacity as FIFA's head Development Officer for Central America. Rocha Decl. ¶ 3. Defendants offer no evidence from FIFA or anyone else to refute Mr. Rocha's supervisory or managerial status and the Superseding Indictment specifically alleges that Mr. Rocha was "responsible for overseeing FIFA's development efforts in Central America." (Knoerzer Decl., Ex. A, ¶ 35).

Instead, Defendants cite to provisions of the Employment Agreement, none of which refute that Mr. Rocha acted in a managerial or supervisory capacity. First, Defendants' assertions that the Employment Agreement was "entered into with respect to a one-off service and [did] not form the basis for an ongoing mandate or regularly recurring agency relationship" or that it "authorize[d] or entitle[d] [Mr. Rocha] to act as a representative of FIFA . . . upon instructions"

does not establish that Mr. Rocha's responsibilities were not managerial or supervisory. Def. Memo. at 16. These provisions limit the length of the relationship and concern how Mr. Rocha represents FIFA, but they do not address Mr. Rocha's work responsibilities.

Second, Defendants' citation to the provision in the Employment Agreement that Mr. Rocha was to "act independently, outside the organisational structure of FIFA" is clarified by the rest of the sentence that Defendants omit: "and shall have his own work plan." *Id.*; Knoerzer Decl., Ex. B, § 1.2. Again, this provision does not in any way establish that Mr. Rocha had no managerial or supervisory responsibilities, but rather only that he was to develop his own work plan while employed by FIFA. Likewise, Defendants' assertion that the Employment Agreement's registration requirements with the "relevant social security institution" somehow demonstrates a lack of supervisory or managerial responsibilities has no merit because the reference to such registration does not explain or in any way limit Mr. Rocha's responsibilities while employed by FIFA.

Defendants' assertion that the Employment Agreement requires Mr. Rocha to "maintain his own insurance" somehow demonstrates a lack of supervisory or managerial responsibilities similarly has no merit. In this regard, Defendants omit that Mr. Rocha was to declare only "that he has adequate insurance coverage" for "activity-related risks (such as insurance against civil liability and accident, daily sickness, allowance, material damages, state old-age and invalidity cover, occupational pension scheme, etc.)." Knoerzer Decl., Ex. B, § 2.2. Accordingly, the Employment Agreement only required "activity-related risks" insurance and this does not preclude FIFA from covering Mr. Rocha under the Policy. In short, the Employment Agreement does not in any way establish that Mr. Rocha was not acting in a managerial or supervisory

capacity and Defendants have provided no evidence to contradict either Mr. Rocha's affidavit or the allegations in the Superseding Indictment.

C. **The Superseding Indictment Alleges Criminal Conduct in Relation to Mr. Rocha's Employment by FIFA**

Defendants also assert that Mr. Rocha is not entitled to insurance coverage because "there is no suggestion that any of [Mr. Rocha's] alleged criminal behavior was conducted in relation to his duties as a FIFA development officer" and that "all of the criminal acts [Mr. Rocha] is alleged to have committed were done for his own personal gain." Def. Memo. 17-18. Defendants are incorrect.

Mr. Rocha was President of FENIFUT until December 2012 and FIFA's Development Officer from January 2013 until at least May 2015. The Superseding Indictment specifically alleges wrongful acts in Mr. Rocha's insured capacity and during the time he served as FIFA's Development Officer, including but not limited to:

- "From in or about January 2013 to at least May 2015, ROCHA was a FIFA development officer based in Panama, responsible for overseeing FIFA's development efforts in Central America" (Knoerzer Decl., Ex. A, ¶ 35);

- "On or about February 25, 2014, the defendant JULIO ROCHA met with Co-Conspirator #3 in Miami, Florida. At the time, ROCHA was employed by FIFA as a development officer, and Co-Conspirator #3 was the general secretary of CONCACAF. During the meeting, ROCHA asked Co-Conspirator #3 to speak with his successor at Traffic USA about whether ROCHA could receive a payment in connection with the sale of FENIFUT's rights to their qualifier matches in advance of the 2022 World Cup" (*id.* ¶ 254); and

- "In or about and between 1991 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants . . . JULIO ROCHA . . . together with others, being persons employed by and associated with the enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c)" (*id.* ¶ 363).

Accordingly, Defendants' assertion that the Superseding Indictment fails to allege conduct by Mr. Rocha in his capacity as a FIFA employee has no merit.[5]

D. **Mr. Rocha Will Suffer Irreparable Harm**

Finally, Defendants also argue that Mr. Rocha will not suffer any irreparable harm because of the purported existence of other insurance coverage or personal resources that could cover his defense costs. Just as this Court held in the *Li* Litigation, Defendants' argument has no merit.

The existence of other insurance or other sources of funds does not change the irreparable harm analysis or absolve Defendants of their obligations in the Policy. As the Southern District of New York explained:

> The issues here surmount whether an individual director has or does not have sufficient funds to pay counsel when confronted with litigation stemming from service as a corporate director. In some cases the litigation will be minor; here it is massive. In some cases a director will have great personal wealth; in other cases she will not. The issue here is whether every director protected by a policy . . . is entitled to ongoing payment of defense costs until there is a judicial determination that the right does not exist. Under the terms of the . . . policy, and for the reasons set for here, the answer is yes.

*In re WorldCom, Inc., Sec. Litig.*, 354 F. Supp. 2d 455, 470 (S.D.N.Y. 2005). Moreover, Defendants have an independent obligation to pay Mr. Rocha's defense costs regardless of any other concurrent insurance policy so long as he does not obtain a double recovery. *York-Buffalo Motor Express v. Nat'l Fire & Mar. Ins. Co.*, 294 N.Y. 467, 473 (N.Y. 1945).[6]

---

[5] In light of the Superseding Indictment's allegations against Mr. Rocha in his capacity as a FIFA employee, Defendants' assertions regarding the nature of the relationship between FENIFUT and FIFA are irrelevant. Nonetheless, Defendants have failed to establish that Mr. Rocha in his capacity as President of FENIFUT, a member association of FIFA, was not acting as a "general agent[]/representative[]" of FIFA or otherwise acting in an insured capacity. Hardiman Decl., Ex. B, § 1.3.

[6] Moreover, although irrelevant, currently no other insurance policy is providing coverage to Mr. Rocha for his defense costs being incurred in connection with the Superseding Indictment and Mr. Rocha has no knowledge regarding the existence of any policy that could provide such coverage.

Defendants' failure to pay the defense costs also jeopardizes what the *Li* Litigation recognizes as "the Court's obligation to protect defense counsel in [defendant's] criminal case by ensuring that they are properly compensated in that matter." Hardiman Decl., Ex. A, p. 6; *see also Cluett, Peabody & Co. v. CPC Acquisition Co.,* 863 F.2d 251, 256 (2d Cir. 1988) ("[A] court has a responsibility to protect its own officers in such matters as fee disputes."). Accordingly, as in the *Li* Litigation, Defendants' arguments that coverage under the Policy is precluded by the purported existence of other insurance or personal resources has no merit.

### E. Mr. Rocha Has Demonstrated a Likelihood of Success on the Merits and the Balance of Hardships Favors Mr. Rocha

As set forth above and in his opening brief, Mr. Rocha has plainly demonstrated a likelihood of success on the merits because: (1) Mr. Rocha is an insured under the Policy; (2) the Superseding Indictment alleges wrongful acts in Mr. Rocha's insured capacity; and (3) Defendants have failed to prove the applicability of any exclusion in the Policy that would otherwise preclude coverage. Moreover, the balance of hardships favors Mr. Rocha. As in the *Li* Litigation, Mr. Rocha is entitled to the insurance coverage that is necessary and critical to fund an adequate and ongoing defense of the Underlying Action. Further, unlike Mr. Rocha, Defendants will not suffer irreparable harm through the provision of the defense cost payments required under the Policy pending a final determination of Defendants' purported defenses to coverage.

### CONCLUSION

For the foregoing reasons, and those reasons contained in his opening memorandum of law, Mr. Rocha respectfully requests that this Court grant his motion for preliminary injunction requiring Defendants to immediately pay Mr. Rocha's defense costs in connection with the Underlying Action as required by the Policy.

Dated:  June 14, 2016             Respectfully submitted,

                                  PILLSBURY WINTHROP SHAW PITTMAN LLP



                                  By:  s/Alexander D. Hardiman
                                       Alexander D. Hardiman
                                       Joseph D. Jean
                                       Janine M. Stanisz
                                       1540 Broadway
                                       New York, NY 10036-4039
                                       212.858.1000
                                       alexander.hardiman@pillsburylaw.com
                                       joseph.jean@pillsburylaw.com
                                       janine.Stanisz@pillsburylaw.com

                                       *Attorneys for Plaintiff JULIO ROCHA*