# EXHIBIT B



Beilage......4......
Friedli & Schnidrig

# Agreement

between

**Fédération Internationale de Football Association (FIFA)**

FIFA-Strasse 20,
8044 Zurich,
Switzerland
(hereinafter, **"FIFA"**)

and

**Julio Rocha Lopez**

Km. 39 ½ Carretera Sur,
Diriamba, Carazo,
NICARAGUA

(hereinafter, the **"Development Officer"**)

The following agreement is concluded:

## Preamble

The Development Officer has demonstrable expert knowledge in relation to the implementation and the monitoring of football development programmes. FIFA shall therefore endeavour and intends to make use of the services and the know-how of the Development Officer.

In view of the above, the parties agree the following:

## 1  Activity

1.1  This agreement is entered into with respect to a one-off service and does not form the basis for an ongoing mandate or a regularly recurring agency relationship. The Development Officer (hereinafter: DO) shall provide FIFA with advice, assistance and other services as listed in Appendix 1 hereto (hereinafter: Services).

1.2  The DO shall act independently, outside the organisational structure of FIFA and shall have his own work plan. The DO holds a position of trust with respect to FIFA. He must refrain from any act that may cause damage to FIFA and must draw FIFA's attention to the inappropriateness of any provisions of this agreement.

1.3  The DO is under the obligation to carry out this mandate in accordance with the provi-

sions contained herein. Project deadlines set by FIFA must in particular be observed as well as any technical specifications necessary to perform the work properly.

1.4 This agreement does only authorise or entitle the DO to act as a representative of FIFA in any *de facto* or *de jure* capacity upon instructions.

## 2 Provision of service

2.1 The DO shall himself supply the tools and materials necessary to carry out the agreement. In principle, the DO is obliged to carry out the mandate personally, but he may engage third parties (for which he will be responsible) to provide the Service. The subcontracting to third parties requires FIFA's prior written consent, to be given at its sole discretion. Notwithstanding the foregoing, the assignment of a third party is only valid subject to the sub-contractor providing a declaration in accordance with Appendix 2 hereto. The original copy of such declaration shall be handed over to FIFA immediately upon its execution. In case of sub-contracting, the DO is obliged to pay the fees and the costs of the sub-contracting parties. Additionally, the DO shall ensure that the sub-contracting parties have adequate insurance as foreseen under clause 2.2 of this agreement. Irrespective of any permitted subcontracting, the DO shall remain fully liable towards FIFA for the proper and punctual performance of his duties hereunder and all rights of DO under art. 399 para. 2 CO are hereby waived.

2.2 The DO hereby declares that he has adequate insurance coverage for activity-related risks (such as insurance against civil liability and accident, daily sickness allowance, material damages, state old-age and invalidity cover, occupational pension scheme, etc.) and agrees to sign the declaration attached in Appendix 3. The DO further declares that he is registered as self-employed at the relevant social security institution. FIFA is entitled (but not obliged) at all times to require evidence of the declared insurance cover.

2.3 With respect to the provision of his Services, the DO shall – except as otherwise instructed by FIFA – send legally valid communications to the Development Programmes Department or the FIFA management only. The DO reports within FIFA to the Development Programmes Department which coordinates and approves all his missions for FIFA. The MA and Development Division is permitted to give instructions to the DO.

2.4 The Services to be undertaken by the DO shall be limited to the countries as listed in Appendix 4.

2.5 The DO is resident in **Managua, Nicaragua** and operates from **Panama City, Panama**. He shall inform FIFA immediately of any change regarding his address.

2.6 Finally, both parties to the agreement undertake to inform each other in the event of problems arising out of the performance of this mandate or foreseeable time delays.

## 3 Service fees and expenses

3.1 A net remuneration, valid for the duration of the Agreement, has been agreed for the activity set out under clause 1. The net remuneration shall amount to a total of

2

**USD 7,000** per month for the period foreseen under art. 9 of this agreement and payable upon the terms of the present agreement ("service fee").

3.2 In the event of a mission abroad from the country of Panama on FIFA business ("mission abroad"), daily fees of USD 200 for each day of the mission abroad will be paid to the DO on a monthly basis upon submission of receipts.

3.3 Travel and accommodation costs incurred by the DO in the performance of the Services during a mission abroad will be reimbursed by FIFA in accordance with the Travel and Expense Guidelines for FIFA Development Officers. An invoice for these costs must be submitted to FIFA for approval once a month. This invoice shall indicate the number of days and places where the Services were provided and offer details on travel, accommodation and other costs accrued in connection with the provision of the Services.

3.4 An invoice regarding the office costs, including fixed line and mobile telephone, stationery, postal, staff and other office costs must be submitted to FIFA for approval on a monthly basis.

3.5 FIFA will reimburse the DO further costs accrued in connection with the provision of the Services if such costs are agreed upon in writing in advance by FIFA. Any costs or expenses not expressly agreed in this Agreement will not be reimbursed by FIFA.

3.6 If FIFA disagrees with any of the above-mentioned invoices, it has the right and obligation to notify the DO immediately, whereupon the latter shall specify the information contained therein. In default of a reaction from FIFA within 30 days upon receipt of the invoice, such invoice shall be considered approved.

3.7 FIFA shall pay the DO within 30 days upon receipt of the approved invoice to the bank account indicated in writing.

3.8 The DO shall keep separate and detailed books of account and records of all expenses (including all receipts) so as to enable FIFA to verify the accuracy of the information contained in the expense records. Such books and records will be kept for a minimum of two years following the expiration or earlier termination of this agreement.

3.9 FIFA is entitled to inspect, audit and copy such books and records on reasonable notice. Any such audits shall be at FIFA's expense, unless an audit establishes a deficiency of more than 1% between the amount found to be incurred by the DO and the amount actually invoiced to and paid by FIFA, in which case the cost of the audit shall be paid by the DO together with the amount of the deficiency plus interest of 5%.

3.10 In the event of inadequate performance of the Service under this agreement, the DO's fee as provided for in clauses 3.1 and 3.2 of this agreement may be, in addition to FIFA's rights and remedies under this Agreement and under the applicable Swiss law, reduced.

3.11 The fee fully compensates the rights conferred in accordance with clause 11 of this agreement.

3.12 The DO shall be solely responsible for the payment of any and all taxes, levies, social security (including but not limited to liability, accident and disability insurance, retirement provisions), labour costs (including but not limited to office charges and thirds engaged on behalf of the DO), health insurance and other similar payments arising out of the provision of the Services and agrees to sign the declaration attached in Appendix 2. The DO fully indemnifies FIFA against any and all claims in respect thereof.

## 4 Warranty and liability

4.1 The DO is under the obligation to provide the Services faithfully, carefully and in a diligent and professional manner in accordance with the recognised standards in his sector, and to safeguard the interests of FIFA. If the DO breaches any of his contractual duties, he shall indemnify FIFA against any and all damages arising therefrom, including consequential damages, direct damages and loss of earnings.

4.2 The DO undertakes to hold FIFA fully harmless against any third party claims in connection with the Services that have or should have been provided by the DO. This indemnification particularly includes any claim for damages and legal costs and costs payable to other parties by FIFA. The DO may not offset any claims against this obligation to indemnify.

4.3 The DO further undertakes to carry out any follow-up work and to remove any defects caused by him free of charge.

## 5 Data protection

For the completion of the activity set out under clause 1 of this agreement, the DO is obliged to adhere to and execute the FIFA Data Protection Regulations (cf. Appendix 5) and applicable laws.

## 6 Continuous training

The DO undertakes to undergo continuous training on the latest developments in his area of activity and to stay abreast of current changes in this area at all times.

## 7 Conflict of interests

7.1 Subject to clause 7.2, the DO may act for other contractors, provided always that such other activities of the DO do not, in the reasonable opinion of FIFA, prevent, inhibit or

otherwise disturb or negatively affect in any way the DO's provision to FIFA of the Services in accordance with the terms and conditions of this Agreement. The DO must immediately disclose any other activities which may give rise to a conflict of interest.

7.2 The DO shall not, without the prior consent of FIFA, perform any consultancy work for FIFA member associations or confederations for the duration of this Agreement.

# 8 Competition

8.1 The DO may, in principle, act for other contractors. However, the DO must immediately disclose any other activities which may give rise to a conflict of interest.

8.2 The DO shall not, without the prior agreement of FIFA, perform any consultancy work for FIFA member associations or confederations for the duration of this agreement.

## 9 Secrecy, safekeeping and return of documents

9.1 The DO undertakes to maintain absolute confidentiality and secrecy with respect to any and all information such as documents, programs, assessments and any other know-how which is made available under the present agreement, or comes to the DO's knowledge in the performance of his work under this agreement, or which was otherwise disclosed to him for the duration of the agreement and for an indefinite period following its termination, irrespective of whether or not the specific information represents a trade secret. He further undertakes upon termination of the agreement to return to FIFA all objects and documents (electronic or otherwise) supplied to him for the performance of his activity, including those in the form of copies, disks, CDs, DVDs, etc. A right of retention is excluded. The parties shall, in principle, observe secrecy with respect to the content of this agreement insofar as and to the extent that this rule is not contrary to their obligations under public law.

9.2 The DO shall not distribute or disclose to third parties any information or opinions in relation to the activity under this agreement without the prior written approval of FIFA.

9.3 The obligation of confidentiality shall survive the expiration or termination of this agreement.

## 10 Agreement term, termination

10.1 The DO commences his activity as from **1 January 2013**.

10.2 This agreement shall terminate without notice on **31 December 2013**.

10.3 This agreement may further be terminated at any time by either party. Whosoever terminates this agreement in an untimely manner shall be liable for damages. Enduring rights and duties (e.g. compensation for damages, secrecy, transfer of rights and waiver, intellectual and other property rights) shall remain in force following termination of the agreement.

10.4 For the avoidance of doubt and without prejudice, a termination of this Agreement by FIFA shall under no circumstances be deemed to be untimely, if the DO:

   a) is in breach of any of his obligations under this Agreement and fails to remedy such breach (if capable of remedy) within five (5) days of the date on which the DO receives written notice from FIFA such breach to be remedied;

   b) persistently fails to satisfy the quality requirements, or to comply with the deadlines or instructions applicable to the Services;

   c) if the DO becomes insolvent, becomes unable to pay his debts as they fall due, enters into a bankruptcy, insolvency, or similar proceeding.

10.5 If this Agreement is terminated for any reason whatsoever

a) the provision of all Services shall be cancelled automatically and all permissions, authorisations and consents of whatsoever nature granted to the DO under this Agreement shall immediately and automatically be revoked;

b) the DO shall immediately provide FIFA with unlimited access to and/or - in accordance with FIFA's instructions - deliver to FIFA within ten (10) calendar days all materials, documents and other property received from FIFA in relation to this Agreement and all materials created and/or produced, or which are in the process of being created and/or produced (in whatever form, including electronic files, source code);

c) the DO shall immediately deliver to FIFA, upon FIFA's first demand, the unfinished parts of the Services and there shall be no compensation payable therefor and

d) the DO shall not assert any claims for damages against FIFA.

## 11 Intellectual property right

11.1 Other than as expressly permitted by FIFA in writing, the DO shall not, and shall not authorise any third party to, whether during or after the duration of the contract, use and/or adopt any name, mark or other indicia which, in FIFA's reasonable opinion:

a) identifies with FIFA, any of its affiliates or any competition or event organised by or under the auspices of FIFA (including the competition, other FIFA events and the qualifying competition(s) thereof); or

b) associates the DO and/or any of their products or services with FIFA, any of FIFA's affiliates or any competition or event organised by, or under the auspices of, FIFA (including the competitions, other FIFA events and/or the qualifying competition(s) thereof).

11.2 Other than as expressly permitted by FIFA in writing, the DO shall not, and shall not authorise any third party to, whether during or after the term:

a) adopt, use or reproduce in any media whatsoever (including as any internet domain name), or apply for trademark registration in respect of, any of the FIFA marks, competition marks, other FIFA event marks or legal names that are owned, controlled or used by FIFA or any of its affiliates (including the official name(s), emblem(s) or trophies of any competition or event organised by, or under the auspices of, FIFA), or any symbol, emblem, logo, mark or designation which, in FIFA's reasonable opinion, is similar to, or is a derivation or colourable imitation of, any of the FIFA marks, competition marks, Other FIFA event marks or such legal names;

b) whether directly or indirectly, do any act which would, or may, invalidate or challenge the trademark registration (including applications therefore) of, or invalidate, challenge or dilute FIFA's right, title and interest to, any of the FIFA marks, competition marks, other FIFA event marks or legal names that are owned, controlled or used by FIFA or any of its affiliates (including the official name(s), emblem(s) or trophies of any competition or event organised by, or under the auspices of, FIFA);

11.3 The provisions of this clause shall survive expiry or earlier termination (for any reason whatsoever) of this agreement and shall continue to have full legal force and effect without limit in time.

11.4 Notwithstanding the above, FIFA may provide the DO with branded material or the right to use certain marks for specifically defined purposes in order to facilitate the work of the DO. Such right can be withdrawn by FIFA at any time and at FIFA's sole discretion.

11.5 Without prejudice to the above, the DO may not make any announcement or press release of whatever nature in relation to this agreement and/or the services, the FIFA Goal programme, the FIFA Financial Assistance Programme or any other matter related to FIFA or any other substitute of FIFA, without the prior written consent of FIFA which may be granted or withheld at FIFA's discretion. Notwithstanding the above, the DO will be entitled to quote the existence of this agreement in order to satisfy the listing rules of any stock exchange with whom the DO may be listed and/or to the extent needed in order to provide the required information to the DO shareholders, auditors and other professional advisers and to comply with any applicable law, authority, financial or accounting rules and obligations. Furthermore, the DO shall be entitled to reference FIFA as a client in documents and presentations internally and to potential customers of the DO, provided that (i) all references to FIFA will not exceed the dimensions of references made to other clients in such documents and presentations of the DO; (ii) such documents and presentations are not publicly available; and (iii) the DO complies with all reasonable requests of FIFA as notified in writing to the DO relating to the nature and content of such references. Therefore, the DO must inform FIFA of it's intentions beforehand.

## 12 Transfer of rights and waiver

12.1 Any work products created under this agreement, particularly those protected by intellectual property law, shall be the exclusive property of FIFA. The DO waives all rights with respect to work products, particularly rights of use or exploitation for his own purposes.

12.2 The DO hereby undertakes to transfer, and herewith transfers to FIFA's sole ownership, all user rights, copyright, design and other intellectual property rights, as well as electronic data, arising in connection with the performance of the agreement. Upon concluding this agreement, the DO consents to the transfer of all above-named user rights, copyright, design and other intellectual property rights.

12.3 The DO herewith transfers to FIFA all design rights arising in connection with this agreement, with the result that FIFA acquires the DO's legal status as designer and the right to deposit and register the rights in its own name. The DO has no personality rights as a designer.

12.4 The DO herewith assigns to FIFA, within the meaning of a full assignment without material limitations and without restrictions of time or location, all copyright arising in connection with this agreement. He waives his personality rights and the exploitation thereof, in respect of which FIFA has sole entitlement, but no obligation to exercise.

12.5 The DO waives the right to register or have registered any logo or other device developed in connection with this agreement as a trademark. This right belongs to FIFA.

12.6 Where a declaration of intent by the DO is necessary to enable FIFA to enter an intellectual property right in a register in Switzerland or abroad, he hereby undertakes to issue such a declaration.

12.7 The above-mentioned transfers of rights and waivers on the part of the DO include the sole right of FIFA to copy, publicise, modify, deposit or register in Switzerland or abroad and to transfer, exploit, sell, license or destroy, in its own name, the copyright, designs, other intellectual property rights and electronic data without compensating the DO. The DO waives all mandatory or *in rem* retention, registration, user, application or transfer rights with respect to such rights and data. The DO has no entitlement to compensation further to that set out in clause 3 above for such transfers and waivers.

12.8 In the event of bankruptcy on the part of the DO, FIFA shall have the right, upon payment of compensation to the bankrupt's estate in accordance with clause 3 above, to acquire all work products created under this agreement.

## 13 Penalty

In the event of a breach of this agreement, the DO shall owe FIFA a penalty in the amount of USD 50,000 for every breach. Payment of the penalty shall not release the DO from the performance of his duties under this agreement. This clause is without prejudice to the right of FIFA to claim further damages. FIFA is further entitled to demand the remedy of the breach.

## 14 Further provisions and anti-corruption clause

14.1 The parties expressly declare that they do not intend to create any employment contract relationship nor any company law relationship by way of this agreement. The DO expressly waives for himself, for his employees (if any), for his dependents, heirs and legal representatives any and all claims to receive any benefit under FIFA's benefit plans or programs, including but not limited to vacation, attendance bonus, pre-retirement leave, optional leave, pension and annuity. FIFA will not make any deduction from the service fee for any income taxes nor for social securities, unless required to do so by a governmental regulation The conclusion of this agreement does not entitle either of the parties to conclude further agreements. The DO in particular is entitled to refuse mandates from FIFA without stating the reasons for doing so.

14.2 This agreement contains the entire understanding between the parties relating to the subject matter hereof and supersedes all prior oral and written representations, understandings, terms and conditions and other agreements relating thereto. Each Appendix hereto shall form an integral part of this agreement.

14.3 If FIFA does not exercise individual rights under this agreement, this may not be interpreted as a waiver on the part of FIFA with respect to these or other rights.

14.4 The rights and duties under this agreement and the agreement as a whole may not be transferred to third parties without the express and prior consent of the other party.

14.5 The DO undertakes to comply with all applicable national and international provisions as well as to the FIFA Code of Ethics, particularly those concerning the prohibition of women's and child labour and anti-corruption and anti-money-laundering laws.

14.6 Additional agreements and modifications to this agreement must be in writing in order to be valid. If individual provisions of this agreement should be or become invalid, null or void, this shall not affect the remaining provisions of the agreement. The parties shall replace any invalid, null or void provision with a provision that best reflects the economic objective of the agreement and the intention of the parties.

14.7 The parties acknowledge that giving and taking bribes can lead to criminal proceedings in accordance with art. 4a of the Swiss Federal Law on Unfair Competition and art. 102 of the Swiss Criminal Code.

14.8 This agreement is issued in duplicate. Each party shall receive an original copy.

14.9 This agreement is subject to substantive Swiss law (to the exclusion of references to laws of a foreign country, particularly to the exclusion of the Swiss Federal Act on Private International Law).

14.10 Any dispute, controversy or claim arising out of or in relation to this contract, including the validity, invalidity, breach or termination thereof, shall be settled by arbitration in accordance with the Swiss Rules of International Arbitration of the Swiss Chambers of Commerce in force on the date when the notice of arbitration is submitted in accordance with these rules. The number of arbitrators shall be three. The seat of the arbitration shall be in Zurich. The arbitral proceedings shall be conducted in English.

For FIFA:

Place/date Zurich
2 1 DEC 2012

_____
Jérôme Valcke
Secretary General

_____
Markus Kattner
Deputy Secretary General

For the Development Officer:

Place/date

Managua 17 Diciembre 2012

_____
Julio Rocha Lopez

FIFA Legal
Contract Approved

By: _____ Hoo

Date: 19.12.12

11