UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
JULIO ROCHA,

                Plaintiff,

                                        16 CV 02327 (RJD) (RML)

      - against -

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, and AXIS SPECIALTY EUROPE
SE,

                Defendants.
------------------------------------------------------------

## DECLARATION OF PROF. DR. ANTON K. SCHNYDER, LL.M. IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

I, Professor Doctor Anton K. Schnyder, LL.M., declare:

      1.     I am Full Professor of Private and Commercial Law, Private International and Civil Procedure Law, and Comparative Law at the Law Faculty at the University of Zurich, Switzerland. I have held this position since 2003. From 1993 to 2003, I served as a Full Professor of Private Law at the University of Basle, Switzerland. Among other functions I am a former Chairman of the Federal Appeal Commission supervising private insurance in Switzerland, which heard appeals on matters of Swiss insurance regulation; I have served and I am serving as an arbitrator and chairman in arbitration proceedings dealing with international matters. My curriculum vitae is attached hereto as Exhibit 1.

      2.     I have published extensively on Swiss Private International Law, as well as on Swiss Insurance Law, and am one of the editors of the leading Swiss legal treatises on these topics known as the Basler Commentaries. A list of my publications is attached as Exhibit 2 hereto.

3. I have served as an expert witness in various legal proceedings in the United States involving matters of Swiss law, including issues pertaining to choice of law and choice of jurisdiction, including: (a) *Weiss v. La Suisse Societe d'Assurances sur la Vie*, Case No. 97-cv-1352 (S.D.N.Y.); (b) *Shahram v. Bank Julius Baer & Co., Ltd.*, Index No. 600277/04, Supreme Court of New York, New York County; (c) *Maremont Corp. v. ACE Prop. & Cas. Ins. Co.*, Case No. 12-cv-01379 (D. Del.). I have also testified as an expert in many Swiss state court proceedings as well as in arbitration courts in Switzerland. However, those expert opinions are, according to Swiss law and practice, not publicly available and neither the identity of the parties nor their substance may be disclosed to third parties.

4. I am being compensated for my time at an hourly rate of CHF 650 (Swiss francs).

5. I have been asked to provide my opinion on whether, under Swiss law, the forum selection and choice of law clauses in Primary Directors and Officers Legal Liability Insurance Policy No. LI14133 18000 (the "Policy"), effective December 30, 2014 through December 30, 2015 and issued by Certain Underwriters at Lloyd's London to the Federation Internationale de Football Association ("FIFA"), are enforceable against Plaintiff Julio Rocha ("Plaintiff"). I conclude that the choice of law and forum selection clauses are enforceable against the Plaintiff.

In connection with my opinion herein, I reviewed the following documents:

   a. The Complaint of Julio Rocha, filed May 9, 2016;
   b. The Policy;
   c. The decision of the District Court for the Eastern District of New York in the matter of *Li v. Certain Underwriters at Lloyd's, London et al.*, Case No. 15-cv-6099 (RJD).

6. The Policy, at § 9, provides that:

> [T]he provisions contained in the Insurance Contract Law (VVG) shall apply to this insurance. For any disputes arising under this insurance relationship, a Swiss place of Jurisdiction and the application of Swiss Law shall be deemed to be agreed.

The reference to "VVG" is to the Swiss Federal Law on the Insurance Contract of 1908, which is known as the "VVG" due to its German name, *Versicherungsvertragsgesetz*. The VVG deals with most issues typically arising between the parties to an insurance contract, such as the right of the policyholder to bind a third party beneficiary to the policy terms. There is no provision in the VVG that prevents the application of a choice of forum or choice of law clause, nor does the VVG (directly) govern the validity of such clauses.

7. With respect to the Policy's Swiss choice of law clause, this clause is valid and enforceable against the Plaintiff. Section 1 of Article 116 of the Swiss Private International Law Act ("PILA"), which governs international contracts such as the Policy, reads as follows: *"The contract is subject to the law chosen by the parties."* The only exception to Section 1 of Article 116 of PILA involves so-called "consumer contracts" under Article 120 of PILA. The D&O Policy issued to FIFA is not characterized as a consumer contract under Swiss law, and the exception therefore does not apply.

8. In order to determine its jurisdiction over a case involving an international contract such as the Policy at issue here, a Swiss court would look to PILA unless there was an overriding treaty such as the Convention on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters of October 30, 2007 (the "Lugano Convention"). The Lugano Convention does, in fact, apply here.

9. The Lugano Convention is an international treaty governing rules of jurisdiction, which applies to those countries that have agreed to be bound by its terms. (For the sake of convenience I shall refer to those countries bound by the Lugano Convention as "Contracting

3

States".) Contracting States include the members of the European Union, Norway, and Switzerland. Neither Nicaragua, of which the Plaintiff is a citizen, nor the United States, where Plaintiff has brought suit, are Contracting States.

10. FIFA is headquartered in Switzerland, while Lloyd's Underwriters are headquartered in England with a branch office in Zurich, Switzerland. FIFA and Underwriters are therefore both domiciled in Lugano Convention Contracting States, and the jurisdictional rules of the Lugano Convention apply to the choice of forum clause contained in the Policy.

11. Section 3, Articles 8-14 of the Lugano Convention specifically address jurisdiction in matters relating to insurance. In general, under Article 9 of the Lugano Convention, an insurer domiciled in a Contracting State may be sued: (1) in the courts of its home state; (2) in the place of the plaintiff policyholder, insured, or beneficiary's domicile if that domicile is also a Contracting State; or (3) in a Contracting State where a co-insurer has been sued.

12. However, Article 13 of the Convention provides that parties may issue contracts which do not apply these general jurisdictional rules where the insurance contract governs particular types of risks. Included among those risks, under Article 14, are "all large risks." The term "large risks" is defined in Article 13(27) of the "EU Directive 2009/138/EC of 2009 On the Taking Up and Pursuit of the Business of Insurance and Reinsurance" (the definition is very similar to the one set forth in Swiss insurance legislation). Under the EU Directive, a policyholder is a "large risk" where it fulfills at least two of the following criteria: (1) a balance sheet sum of € 6.2 million; (2) net turnover of € 12.8 million; (3) 250 employees. FIFA clearly meets the definition of "large risk" under all three criteria. According to FIFA's published 2014 financial report, the first four pages of which are attached as Exhibit 3, its balance sheet sum as

4

at 31 December 2014 was USD 2.9 million and its revenues for the years 2011-2014 exceeded USD 5.7 billion. Hence FIFA is clearly a "large risk" for purposes of the Lugano Convention.

13. Article 23 of the Lugano Convention further provides that where

> parties, one or more of whom is domiciled in a State bound by this Convention, have agreed [in writing] that a court or the courts of a State bound by this Convention are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction. *Such jurisdiction shall be exclusive unless the parties have agreed otherwise.* [Emphasis added].

14. Thus, the Lugano Convention expressly authorizes FIFA and Underwriters to designate in the Policy their own choice of jurisdiction, such designation being enforceable against all persons claiming rights under the Policy. The choice of jurisdiction is expressly permitted by Article 13 No. 5 in connection with Article 14 No. 5 of the Convention pertaining to "large risks" such as FIFA.

15. Under the terms of the Policy, and under Swiss law, the choice of law and forum selection clauses in the contract are therefore valid and enforceable, both as between Underwriters and FIFA, and as against the Plaintiff.

16. There is no binding Swiss law stating that a third-party beneficiary, such as the Plaintiff, may escape the enforceability of a choice of forum clause in an insurance contract. There are likewise no exceptions within the Lugano Convention itself, or in any of the case law interpreting its application, that would permit a plaintiff who is not domiciled in a Contracting State, and who has not brought suit in a Contracting State, to escape the enforcement of an otherwise valid forum selection clause.

17. In its decision in *Li v. Underwriters*, Case No. 15-cv-6099 (RJD), this Court discussed the European Court of Justice (ECJ) decisions in *Société financière et industrielle du Peloux (SFIP) v. AXA Belgium et al., ECJ Case No. C-112/03, ECR I-307 (2005)* and *Group Josi*

5

*Reinsurance Company SA v. Universal General Insurance Co.*, ECJ Case No. C-4128/98, ECJ I-5940 (2000), attached hereto as Exhibits 4 and 5. The *SFIP* case involved a plaintiff domiciled in a Contracting State, while *Group Josi* involved a plaintiff domiciled outside a Contracting State who was suing a defendant within the Contracting State of that defendant's domicile. The case at bar is distinct from both of these scenarios, and *SFIP* and *Group Josi* are therefore inapt. Nevertheless, this Court apparently relied on those cases in determining that the Plaintiff in *Li* could not be bound by the Policy's forum selection clause. I disagree with the Court's conclusion, which, with all due respect, is incorrect and does not reflect how a Swiss court would address the validity of the forum selection clause.

18. The *SFIP* Court dealt *only* with beneficiaries domiciled in Contracting States, and not with persons, like Plaintiff, domiciled outside the Contracting States. At the end of its ruling the *SFIP* Court states: "*A jurisdiction clause [...] cannot be relied on against a beneficiary under that contract who has not expressly subscribed to that clause and is domiciled in a Contracting State other than that of the policy-holder and the insurer.*" [Emphasis added.] Thus, there are two conditions that must be met for the *SFIP* ruling to apply to a third-party beneficiary's claim: (1) the beneficiary must be domiciled in a Contracting State, and (2) the beneficiary did not subscribe to the choice of forum clause.

19. As to condition (1), the *SFIP* holding makes clear that the Lugano Convention's particular provisions in favor of the "weaker party" grant special places of jurisdiction for the benefit of policyholders, beneficiaries and injured persons only under the condition that they bring an action in another Contracting State. The Court refers explicitly on several occasions to these States: see *SFIP* decision at ¶ 29, 34, 35, 39. Moreover, the ECJ makes clear that it is dealing solely with the question of jurisdiction within the European Union, including at ¶ 28:

*"As a preliminary point, it should be borne in mind that the Brussels Convention must be interpreted having regard both to its scheme and objectives and to its relationship with the Treaty [of the EU]"*. As a domiciliary of a non-Contracting State, Plaintiff does not fall into the category of protected persons defined by *SFIP*.

20. As to condition (2), under Swiss substantive law Plaintiff has agreed to the terms of the Policy, including its choice of forum clause, by virtue of making a claim thereunder. This case, unlike *SFIP*, involves Directors & Officers liability insurance. Since the rights and obligations of the parties to the insurance contract are governed by Swiss substantive law, Articles 16 and 17 of the VVG are relevant with respect to FIFA's right to bind Plaintiff to the choice of law and forum clause (an issue which is not specifically addressed in either Lugano Convention or PILA, but remains solely a question of the national law governing the insurance policy in question). These provisions of the VVG are applicable to insurance purchased for the account of third parties, as in the case of D&O insurance taken out by the company.

21. In this case, the Policy was purchased by FIFA not only for itself but also for the account of the other insured persons. In such a situation the policyholder (FIFA) negotiates the contract terms on behalf of and for the account of the insured third parties. The insured third party affirms the insurance contract terms and conditions at the latest when it makes a claim under the policy negotiated on its behalf by the policyholder. The Swiss Federal Tribunal has stated (BGer, Decision of 10 July 2006, 5C.31/2006, Consideration 2.1) in regard to Article 17 Para. 1 VVG (in free translation): *"The consent of the insured third party is required in order that the third party may acquire the rights and obligations under the contract and become entitled to claim in case of an insured event. He can give consent before or after the insured*

*event, and indeed implicitly by making an insurance claim against the insurer."* A copy of this decision of the highest Swiss court is attached as Exhibit 6.

22. Professor Helmut Heiss, a leading expert on Swiss, European and international insurance law whose opinion is highly respected by the Swiss courts, also discussed the rights of third party beneficiaries in the recently published Commentary to the Brussels I[bis] Regulation (editors U. Magnus and P. Mankowski, Köln 2016), note 14 to Article 15 (which is identical to Article 13 of the Lugano Convention). Professor Heiss explains that:

*"The right, on which the claim of the plaintiff third party beneficiary is based, was created by the parties to the contract. It is commonly held in substantive insurance law that the insurer and the policyholder are free to limit the right of the beneficiary or to burden the third party beneficiary with warranties. It is held in international insurance contract law that a choice of law clause agreed upon by the insurer and the policyholder is binding on the third party beneficiary. Finally, an arbitration clause binds the beneficiary of a contract. As a consequence, an agreement on jurisdiction should equally bind the third party beneficiary."* Exhibit 7 at 432. Both the Swiss courts and Swiss legal experts therefore agree that valid choice of law clauses in contracts of insurance are binding upon third party beneficiaries to those policies.

23. There is another important distinction between the instant matter and *SFIP*. The *SFIP* case was decided prior to the inception of Article 14 of the Lugano Convention, which contains the particular "large risk" exception that applies here and pursuant to which FIFA and Underwriters were empowered to designate their choice of forum. As Prof. Heiss observed, *"The only exception [regarding the forum actoris for mass insurance based on Art. 11 and 9 respectively] is the insurance of large and special risks, where party autonomy is granted by Art. 15 [13] point 5 in connection with Art. 16 [14]."* See Exhibit 7, note 15 to Article 15 at 433.

8

Professor Heiss's analysis of the large risk exception confirms that parties contracting to insure risks that fit the large risk description, such as FIFA, are excused from the usual jurisdictional rules of the Brussels and Lugano Conventions, and are permitted to contractually designate their selected forum. Because Article 14 was enacted only after the *SFIP* decision, the ECJ did not have occasion in that case to consider the impact of the large risk exception and its explicit allowance of binding forum selection clauses in contracts like the Policy.

24. *Group Josi*, like *SFIP*, is easily distinguishable from the case at bar. *Group Josi* stands for the general proposition that a plaintiff outside a Contracting State may avail itself of the protections of the (old) Brussels Convention, upon which the Lugano Convention was modelled, where it has sued a domiciliary defendant in a court of a Contracting State. That is of course not the situation in the case under consideration here, where Plaintiff is suing in the non-Contracting United States.

25. The *Group Josi* case, it should be stressed, did not involve a choice of forum clause or a D&O policy, and hence its relevance to this dispute is at best peripheral. The ECJ first concluded that the rules of the Convention, in particular Article 2 with its principle place of jurisdiction at the domicile of the defendant (*actor sequitur forum rei*; see inter alia ¶ 35 of the judgment), do not rely, in general, on the place of domicile of the plaintiff. It held that the suit by the non-domiciliary plaintiff brought against the domiciliary defendant before a court in a Contracting State fell under the jurisdictional rules of the Convention.

26. If anything, the *Group Josi* case supports the proposition that the forum selection clause entered into under Articles 13 and 14 of the Lugano Convention and made exclusive under Article 23 thereof is binding and enforceable against the Plaintiff in this case; under *Group Josi*, the rules of the Convention, which make the Policy's choice of forum clause binding,

9

would apply to Plaintiff if he had filed suit in a court of a Contracting State. However, there is nothing in the *Group Josi* case suggesting that a non-Contracting State domiciliary plaintiff is entitled to rely on the rules of the Brussels or Lugano Conventions to escape the application of a forum selection clause when he proceeds against a Contracting State domiciliary defendant in a court sitting outside of a Contracting State, as here. Like any international convention, the Lugano Convention is only applicable within its territory and hence only applies in the courts of its Contracting States.

27. Moreover I am unaware of any other precedent of any courts sitting in any Contracting State subject to the Brussels or Lugano Conventions which would support the Court's decision in the *Li* case.

28. The only exception cited by the Court was rendered by another court sitting outside of the territory of the Conventions: the *Baxter* case, attached as Exhibit 8. For the reasons explained above, it is clear that a Swiss court would not adopt the reasoning or conclusions of the Court in the *Baxter* case.

29. First of all, the *Baxter* Court also did not properly distinguish the ECJ's decision in *SFIP* as explained above. Secondly the Court dealt primarily (and incorrectly) with the "large risks" provision of the Convention without giving due consideration to the freedom of contract regarding the rights of third party beneficiaries under Articles 9 (1) (b) and 11 (1) (b) of the Lugano Convention.

30. Consequently, the Swiss courts would not apply *SFIP* or *Group Josi* to allow Plaintiff to escape application of the forum selection clause, even if they would be obliged to take into account the decisions of the ECJ to the Brussels and the Lugano Convention.

31. Moreover, even if the Court were to apply the PILA to the jurisdiction clause in this case directly due to Plaintiff's lack of domicile within the territory of the Lugano Convention, the outcome would be the same. The clause would be valid based on Article 5 of the PILA, which makes forum selection clauses in international contracts (other than consumer contracts) enforceable. Since there is no doubt that, under Swiss law, one is not confronted with a consumer contract in this case, based on the Lugano Convention as well as Article 5 PILA, the choice of forum clause is valid.

32. For the above reasons, I conclude that the choice of law and forum selection clause in the Policy is enforceable against the Plaintiff in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 14, 2016.

*[signature]*

PROF. DR. ANTON K. SCHNYDER

**Official Certification**

Seen for authentication of the foregoing signature, affixed in our presence by

Mr. **Prof. Dr. Anton K. SCHNYDER**, born 29th November 1952, Swiss citizen of Thalwil ZH, residing at Höschgasse 36, 8008 Zürich,
personally known to us.

Zürich, 14th July 2016
BK no. 1244
Fee CHF 20.00

NOTARIAT FLUNTERN-ZÜRICH

J. Morger, Notary Public

11

## APOSTILLE
(Convention de la Haye du 5 octobre 1961)

1. Land: Schweizerische Eidgenossenschaft, Kanton Zürich
   Country: Swiss Confederation, Canton of Zürich
   Diese öffentliche Urkunde / This public document

2. ist unterschrieben von
   has been signed by    Jürg Morger

3. in seiner Eigenschaft als
   acting in the capacity of    Notary Public

4. sie ist versehen mit dem Stempel/Siegel des (der) — bears the stamp/seal of
   Notariat Fluntern — Zürich Kt. Zürich

   Bestätigt / Certified
5. In / at 8090 Zürich / Zurich    6. am / the   14.07.2016

7. durch die Staatskanzlei des Kantons Zürich
   by Chancery of State of the Canton of Zurich

8. unter Nr. / under N°    1052691/2016

9. Stempel/Siegel, Stamp/seal    10. Unterschrift / Signature

S. Overkott