# Ex. 6

Tribunale federale
Tribunal federal

{T 1/2}
5C.31/2006 /bie

Urteil vom 10. Juli 2006
II. Zivilabteilung

Besetzung
Bundesrichter Raselli, Präsident,
Bundesrichter Meyer, Bundesrichter Marazzi,
Gerichtsschreiber von Roten.

Parteien
Gerling Allgemeine Versicherungs-AG,
Klägerin und Berufungsklägerin,
vertreten durch Advokat Prof. Dr. Pascal Simonius,

gegen

National Versicherung,
Beklagte und Berufungsbeklagte,
vertreten durch Advokat Dr. Philipp Dischler.

Gegenstand
Versicherungsvertrag,

Berufung gegen das Urteil des Appellationsgerichts
des Kantons Basel-Stadt vom 24. August 2005.

Sachverhalt:
A.
Ende der Neunzigerjahre liess die Messe Basel ihre Halle 1 erneuern. Totalunternehmerin war die Arbeitsgemeinschaft der Firmen Preiswerk & Cie AG und Karl Steiner Generalunternehmung AG (abgekürzt: APS). Als Subunternehmerinnen bzw. Subplanerinnen befassten sich die Firmen Ernst Basler + Partner AG und Gruner AG mit Ingenieurarbeiten. Das Projekt sah unter anderem den Bau von Treppenhäusern vor. Bei deren Erstellung kam es offenbar infolge von Konstruktionsmängeln zu Mehrkosten und anschliessend zu Diskussionen zwischen der APS und den beiden Ingenieurfirmen darüber, wer für den Bauschaden einzustehen habe.

Im Rahmen eines Mediationsverfahrens schlossen die APS und die beiden Ingenieurfirmen am 12. Januar 2000 einen Vergleich. Die Ingenieurfirmen verpflichteten sich darin, der APS solidarisch 1.934 Mio. Franken zu bezahlen. Neben dem Mediator und den Firmen waren bei den Verhandlungen auch Vertreter der Gerling Allgemeine Versicherungs-AG, der National Versicherung und der Zürich Versicherung anwesend.

Die Gerling Allgemeine Versicherungs-AG ist die Haftpflichtversicherung der beiden Ingenieurfirmen für Bautenschaden bis zum Betrag von 15 Mio. Franken. Sie deckte am 31. Januar 2000 den von den Ingenieurfirmen anerkannten Schaden. Nach Bezahlung des vergleichsweise festgesetzten Betrags liess sie sich allfällige Ansprüche der Ingenieurfirmen gegen die National Versicherung und die Zürich Versicherung abtreten. Die National Versicherung ist die Haftpflichtversicherung der Totalunternehmerin APS, und zwar auf Grund einer so genannten Bauplatzpolice, an der die Zürich Versicherung beteiligt ist.
B.
Gemäss ihrem Inhaltsverzeichnis vereinigt die Bauplatzpolice eine Vielzahl verschiedener Versicherungsarten. Mit dem Titel "Versicherungstechnische Zusammenfassung" wird das Vereinbarte in einer Übersicht dargestellt (Ziff. 1). Geregelt werden die Bauwesen- / Montageversicherung (Ziff. 3), die Besucherunfallversicherung (Ziff. 4), die Betriebs- / Berufshaftpflichtversicherung (Ziff. 5) und die (später gestrichene) Baugarantieversicherung (Ziff. 6). Der Regelung über die einzelnen Versicherungen ist unter "Besondere Bedingungen" ein "Allgemeiner Teil" vorangestellt (Ziff. 2). Darin findet sich eine Ziff. 2.6 mit folgendem Wortlaut:
"Andere Versicherungsverträge / Ersatzansprüche gegenüber Dritten

Bestehen für Personen, Sachen oder Gefahren, die durch den vorliegenden Vertrag gedeckt sind, andere Versicherungsverträge, so gehen diese dem vorliegenden Vertrag voran. Lehnt der "andere Versicherer" seine Haftung ganz oder teilweise ab oder kann die Entschädigungsleistung des "anderen Versicherers" nicht erlangt werden, so leistet die National im Rahmen dieses Vertrages Entschädigung. Der Versicherungsnehmer tritt ihr die Rechte ab, welche ihm gegenüber dem "anderen Versicherer" oder sonstigen Dritten zustehen."
Für die Betriebs- / Berufshaftpflichtversicherung ist in Ziff. 5.1 unter anderem vorgesehen was folgt:
"Versichertes Risiko

Versichert ist im Rahmen der vertraglichen Bestimmungen die der Arbeitsgemeinschaft "APS" [...] aus der

Ausführung der Arbeiten (inkl. Bauleitung) [...] erwachsende Haftpflicht als Ergänzung zu den von den Mitgliedern der Arbeitsgemeinschaft "APS" separat abgeschlossenen Betriebshaftpflichtversicherungen mit einer Versicherungssumme von je Fr. 5'000'000.--.

Im Rahmen der Vertragsbestimmungen sind zusätzlich versichert alle von der Arbeitsgemeinschaft "APS" mit der Planung und Ausführung von Arbeiten schriftlich mit Werkvertrag beauftragten Subunternehmer und Subplaner, welche gemäss den Werkverträgen ebenfalls über separate Betriebshaftpflichtversicherungen mit einer Versicherungssumme von je Fr. 5'000'000.-- (bzw. Fr. 1'000'000.-- für Schäden und Mängel an Bauten und Anlagen sowie Vermögensschäden) verfügen. [...]"
In Ziff. 5.3 der Betriebs-/Berufshaftpflichtversicherung wird Folgendes geregelt:
"Versicherungssumme [Nummerierung beigefügt]
1. Die Versicherungssumme beträgt

Fr. 5'000'000.--

pro Ereignis für alle Personen-, Sach- und Vermögensschäden sowie Schadenverhütungskosten zusammen als Ergänzung zu den von den Mitgliedern der Arbeitsgemeinschaft "APS" sowie zu den von ihnen mit der Ausführung von Arbeiten beauftragten Subunternehmern und Subplanern separat abgeschlossenen Betriebshaftpflichtversicherungen. Bei Personen-, Sach- und Vermögensschäden sowie Schadenverhütungskosten haben diese, bzw. deren Versicherer pro Ereignis den Schaden bis zu einer Höhe von Fr. 5'000'000.-- zu übernehmen. Versichert ist im Rahmen der Vertragsbestimmungen somit der den Schadenbetrag von Fr. 5'000'000.-- übersteigende Teil.
2. Im Rahmen der Versicherungssumme für Personen- Sach- und Vermögensschäden sowie Schadenverhütungskosten zusammen betragen die Leistungen der Gesellschaft für Schäden gemäss Ziff. 5.2.3.2 hievor (Schäden und Mängel an Bauten und Anlagen) sowie für Vermögensschäden gemäss Art. 48 Ziff. 1 lit. B AVB pro Ereignis

Fr. 1'000'000.--

als Ergänzung zu den von der Arbeitsgemeinschaft "APS" mit der Ausführung von Arbeiten beauftragten Subunternehmern und Subplanern separat abgeschlossenen Betriebshaftpflichtversicherungen. Bei Schäden und Mängeln an Bauten und Anlagen sowie bei Vermögensschäden haben diese, bzw. deren Versicherer pro Ereignis den Schaden bis zu einer Höhe von Fr. 1'000'000.-- zu übernehmen. Versichert ist im Rahmen der Vertragsbestimmungen somit der den Schadenbetrag von Fr. 1'000'000.-- übersteigende Teil.
3. Falls die Versicherungssumme der jeweiligen separat abgeschlossenen Betriebshaftpflichtversicherungen ausgeschöpft ist, übernimmt der vorliegende Vertrag im Rahmen seiner Bedingungen, jedoch unter Berücksichtigung eines Selbstbehaltes pro Ereignis gemäss Ziff. 5.4.2 hienach, die Funktion der separat abgeschlossenen Betriebshaftpflichtversicherung.
4. Geht der Deckungsumfang der vorliegenden Versicherung weiter als derjenige der separat abgeschlossenen Betriebshaftpflichtversicherungen, so besteht für einen durch letztere nicht gedeckten Schaden Deckung im Rahmen der vorliegenden Versicherung.
5. [Anzeigepflicht des Versicherungsnehmers]
6. Werden die separat abgeschlossenen Betriebshaftpflichtversicherungen aufgehoben, so gilt die in diesen Verträgen vereinbarte Versicherungssumme als Selbstbehalt zur vorliegenden Versicherung."
C.
Am 15./16. Juni 2001 stellte die Gerling Allgemeine Versicherungs-AG (fortan: Klägerin) beim Zivilgericht Basel-Stadt das Begehren, die National Versicherung (hiernach: Beklagte) zur Zahlung von Fr. 652'588.-- zuzüglich Zins zu verurteilen. Die Beklagte schloss auf Abweisung. Strittig war vorab die Auslegung der Bauplatzpolice und dabei die Frage, ob eine Doppelversicherung vorliege, so dass der 1 Mio. Franken übersteigende Bauschaden von Klägerin und Beklagter anteilsmässig zu decken wäre, oder eine Subsidiärversicherung mit der Folge, dass die Klägerin den gesamten Schaden allein zu tragen hätte. Das Zivilgericht hiess das Begehren im Betrag von Fr. 629'012.50 nebst Zins gut, während das Appellationsgericht des Kantons Basel-Stadt die Klage abwies (Urteile vom 7. November 2003 und vom 24. August 2005).
D.
Mit eidgenössischer Berufung beantragt die Klägerin dem Bundesgericht zur Hauptsache, die Beklagte zur Zahlung von Fr. 629'012.50 nebst Zins zu 5 % seit 31. März 2000 zu verurteilen. Das Appellationsgericht hat auf Gegenbemerkungen verzichtet. Eine Berufungsantwort ist nicht eingeholt worden.
E.
Mit Urteil vom heutigen Tag hat die II. Zivilabteilung des Bundesgerichts die gegen das nämliche Urteil gleichzeitig erhobene staatsrechtliche Beschwerde der Klägerin abgewiesen, soweit darauf eingetreten werden konnte (5P.33/2006).

Das Bundesgericht zieht in Erwägung:
1.
Streitig ist die Auslegung der vorstehend wiedergegebenen Klauseln der Bauplatzpolice. Gemäss Art. 18 Abs. 1 OR bestimmt sich der Inhalt des Vertrags nach dem übereinstimmenden wirklichen Willen der Parteien. Nur wenn eine tatsächliche Willensübereinstimmung unbewiesen bleibt, sind zur Ermittlung des mutmasslichen Willens der Parteien deren Erklärungen auf Grund des Vertrauensprinzips so auszulegen, wie sie nach ihrem Wortlaut und Zusammenhang sowie nach den gesamten Umständen verstanden werden durften und mussten (**BGE 132 III 268** E. 2.3.2 S. 274 f.). Die Grundsätze gelten auch für die Auslegung von Versicherungsverträgen (**BGE 119 II 368** E. 4b S. 372; **122 III 118** E. 2a S. 121). Einen übereinstimmenden wirklichen Willen der Vertragsparteien - der APS einerseits

und der Beklagten andererseits - hat das Appellationsgericht nicht festgestellt (vgl. E. 4.1 hiernach und E. 3 des Beschwerdeurteils). Seine Auslegung nach dem Vertrauensgrundsatz kann im Berufungsverfahren als Rechtsfrage frei überprüft werden (BGE 132 III 268 E. 2.3.2 S. 275).

2.
Das Appellationsgericht hat die massgebenden Ziff. 5.1 und 5.3 der Bauplatzpolice dahin gehend ausgelegt, es liege eine Versicherung für fremde Rechnung im Sinne der Art. 16 f. des Bundesgesetzes über den Versicherungsvertrag (VVG, SR 221.229.1) vor. Die APS als Versicherungsnehmerin habe bei der Beklagten die Haftpflicht auch der beiden Ingenieurfirmen versichert, und zwar für Schaden, der - je nach Kategorie - den Betrag von 5 bzw. 1 Mio. Franken übersteige (E. 3.2 S. 6 ff.). Das Appellationsgericht ist weiter davon ausgegangen, in Ziff. 5.3 der Bauplatzpolice sei der hier eingetretene Fall nicht geregelt, dass für einen Schaden von mehr als 5 bzw. 1 Mio. Franken, den die Ingenieurfirmen zu verantworten hätten, die Beklagte als Fremdversicherung der Ingenieurfirmen und die Klägerin als deren Eigenversicherung zugleich voll hafteten (E. 5.2 und 5.3 S. 11 ff. des angefochtenen Urteils).

2.1 Aus dem Wortlaut der Bauplatzpolice folgt, dass die APS als Totalunternehmerin neben ihrer eigenen auch die Haftpflicht ihrer Subunternehmer und Subplaner und damit der beiden Ingenieurfirmen versichert hat. Aus Ziff. 5.1 und 5.3 der Bauplatzpolice ergibt sich, dass die Betriebs- und Berufshaftpflichtversicherung bei der Beklagten "als Ergänzung" zu den Betriebshaftpflichtversicherungen hinzutreten soll, die die Subunternehmer und Subplaner separat abschliessen müssen. Die "Versicherungstechnische Zusammenfassung" bestätigt, dass es sich um eine "Betriebs- und Berufshaftpflichtversicherung der APS inkl. Subunternehmer und sämtl. projektbezogenen Planer" handelt (Ziff. 1.4 und 1.6.6 der Bauplatzpolice). Es liegt eine Versicherung für fremde Rechnung im Sinne der Art. 16 f. VVG vor (vgl. zum Begriff: Hasenböhler, in: Kommentar zum Bundesgesetz über den Versicherungsvertrag, Basel 2001, N. 2 ff. zu Art. 16 VVG). Die Versicherung der Haftpflicht von Subunternehmern durch den Totalunternehmer soll in Bausachen offenbar nicht die Regel sein (vgl. Trümpy/Hürlimann, Die Betriebshaftpflichtversicherung für das Baugewerbe, BR 1999 S. 83 ff., S. 85). Sie ist rechtlich aber nicht ausgeschlossen. Der Versicherungsvertrag hängt dabei nicht von der Zustimmung des versicherten Dritten ab. Sein Abschluss erfolgt ausschliesslich zwischen dem Versicherungsnehmer und dem Versicherer. Die Zustimmung des Dritten ist lediglich vorausgesetzt, damit der Dritte die Rechte und Pflichten aus dem Vertrag erwirbt und im Versicherungsfall Anspruchsberechtigter wird. Er kann die Zustimmung vor oder nach dem Versicherungsfall erteilen, und zwar auch stillschweigend, indem er den Versicherungsanspruch gegenüber dem Versicherer geltend macht (vgl. Maurer, Schweizerisches Privatversicherungsrecht, 3.A. Bern 1995, S. 324 ff.). Eine Beteiligung des versicherten Dritten an den Prämienzahlungen ist - abweichende Vereinbarung vorbehalten - nicht vorausgesetzt (Hasenböhler, a.a.O., N. 24 zu Art. 18 VVG). Dass die Ingenieurfirmen die von der APS abgeschlossene Versicherung genehmigt haben, ist in tatsächlicher Hinsicht erstellt. Sie haben die Ansprüche daraus vorprozessual geltend gemacht und alsdann an die Klägerin abgetreten, die sie schliesslich gegenüber der Beklagten eingeklagt hat.

2.2 Versicherungsdeckung der Beklagten besteht nur für Schaden ab 5 bzw. 1 Mio. Franken. Auch diesbezüglich lässt der Wortlaut der Bauplatzpolice keine Fragen offen. Versichert ist im Rahmen der Vertragsbestimmungen der den Schadenbetrag von 5 bzw. 1 Mio. Franken übersteigende Teil (Ziff. 5.3 Abs. 1 und 2). Bis zu diesen Beträgen bestehen separate Betriebshaftpflichtversicherungen, zu deren Abschluss sich die mitversicherten Subunternehmer und Subplaner werkvertraglich verpflichtet haben. Vergleichbare Beschränkungen der Versicherungsdeckung finden sich auch bei den anderen Versicherungsarten (z.B. die Subsidiärdeckung in der Sachversicherung für Bauinventar gemäss Ziff. 3.2.7.5.1 der Bauplatzpolice). Die Beklagte wird somit erst ab einem Schadenbetrag von 5 bzw. 1 Mio. Franken leistungspflichtig. Insoweit ist ihre Versicherungsleistung subsidiär gegenüber den Leistungen der separat abgeschlossenen Betriebshaftpflichtversicherungen der Subunternehmer und Subplaner.

2.3 Im Unterschied zur soeben erläuterten Beschränkung der Versicherungsdeckung wird in Ziff. 5 der Bauplatzpolice die Frage nicht geregelt, in welchem Verhältnis die Leistungspflichten der Haftpflichtversicherer stehen, wenn für Schaden von mehr als 5 bzw. 1 Mio. Franken sowohl bei der Beklagten als auch bei einer separat abgeschlossenen Betriebshaftpflichtversicherung wie der Klägerin Deckung besteht. Konkret geht es um einen Schaden an Bauten und Anlagen von rund 1.9 Mio. Franken. Davon hat die Klägerin, die die Haftpflicht der Ingenieurfirmen für Schäden bis zum Betrag von 15 Mio. Franken versichert, vorweg 1 Mio. Franken zu decken (vgl. E. 2.2 soeben). Für den Restschaden von rund Fr. 900'000.-- besteht die Versicherungsdeckung bei der Klägerin und der Beklagten.

Der Abs. 2 von Ziff. 5.3 der Bauplatzpolice, der den Leistungsrahmen der Beklagten umschreibt ("der den Schadenbetrag von Fr. 1'000'000.-- übersteigende Teil"), könnte von seinem Wortlaut her als Doppelversicherung ausgelegt werden (vgl. Art. 53 VVG) mit der Folge, dass Klägerin und Beklagte den Restschaden verhältnismässig zu tragen hätten (vgl. Art. 71 Abs. 1 VVG). Zweifel daran wecken indessen die folgenden Abs. 3 und 4 von Ziff. 5.3 der Bauplatzpolice. Dabei steht nicht so sehr der Abs. 3 im Vordergrund, wo die Versicherungsdeckung durch die Beklagte für den Sonderfall geregelt wird, dass die separaten Betriebshaftpflichtversicherungen der Subunternehmer und Subplaner - zu ergänzen: bereits wegen anderer Schadenfälle - "ausgeschöpft" sind. Allgemeiner ist in Abs. 4 vorgesehen, dass für einen durch die separat abgeschlossenen Betriebshaftpflichtversicherungen nicht gedeckten Schaden Deckung der Beklagten besteht, wenn der Deckungsumfang der Beklagten weiter als derjenige der Betriebshaftpflichtversicherungen. Daraus könnte das Vorliegen einer bloss subsidiären Leistungspflicht der Beklagten abgeleitet werden. Der Schluss erscheint allerdings als nicht ganz eindeutig, zumal Anhaltspunkte dafür bestehen, dass die Abs. 3 und 4 versicherungstechnisch zusammenhängen könnten, werden sie doch beide in der Bestimmung über das sog. "drop down" erwähnt (vgl. E. 5.2.2 S. 12 des angefochtenen Urteils).

Der Auslegung des Appellationsgerichts ist insgesamt zu folgen, dass Ziff. 5 der Bauplatzpolice die Streitfrage nach der Koordination der Versicherungsleistungen in dem 1 Mio. Franken übersteigenden Schadenbetrag nicht beantwortet, d.h. weder eine Doppelversicherung noch eine subsidiäre Versicherung begründet oder ausschliesst (vgl. dazu auch S. 15 ff. der Berufungsschrift).

3.
Das Appellationsgericht hat die Antwort auf die durch Ziff. 5 nicht geregelte Frage in Ziff. 2.6 der Bauplatzpolice

gefunden und darin eine eigentliche Subsidiaritätsklausel gesehen (E. 5.4 und 5.5 S. 14 ff. des angefochtenen Urteils). Ziff. 2.6 regelt den Fall, dass für Personen, Sachen oder Gefahren, die durch die Bauplatzpolice gedeckt sind, andere Versicherungsverträge bestehen. Nach Satz 1 gehen diese anderen Versicherungsverträge der Bauplatzpolice voran. In Satz 2 ist bestimmt, dass die Beklagte im Rahmen dieses Vertrags Entschädigung leistet, wenn der andere Versicherer seine Haftung ganz oder teilweise ablehnt oder die Entschädigungsleistung des anderen Versicherers nicht erbracht werden kann. Satz 3 verpflichtet den Versicherungsnehmer, der Beklagten die Rechte abzutreten, die ihm gegenüber dem anderen Versicherer oder sonstigen Dritten zustehen.
3.1 Das Appellationsgericht ist nicht von einer Vertragslücke ausgegangen, die vorab nach dispositivem Gesetzesrecht zu füllen wäre (vgl. **BGE 129 V 145** E. 3.1 S. 147 f.; BGE B 61/05 vom 28. April 2006, E. 4.3). Es hat den Versicherungsvertrag ganzheitlich ausgelegt und damit das systematische Element berücksichtigt, dem bei der Auslegung breit angelegter allgemeiner Versicherungsbestimmungen erhebliches Gewicht zukommt (**BGE 122 III 118** E. 2c S. 122).

Die Bauplatzpolice ist offenbar eine neuere Erscheinung im Bauversicherungswesen. Sie umfasst - wie im vorliegenden Beispiel - eine Vielzahl von Versicherungen, die auch je für sich abgeschlossen werden können, und bezweckt damit, die versicherungsrechtlichen Verhältnisse zwischen den Baubeteiligten zu vereinfachen (vgl. Huber/Schwendener, Der Generalunternehmervertrag, 2.A. Zürich 2005, N. 409 S. 110 f.). Aus der Zusammenfassung mehrerer Versicherungsarten in einem einzigen Vertrag ergibt sich nicht bloss das Bedürfnis, dem Vertrag eine Übersicht voranzustellen (in Ziff. 1: "Versicherungstechnische Zusammenfassung"), sondern auch die eigentliche Notwendigkeit, allfällige Koordinationsprobleme in einem allgemeinen, grundsätzlich für alle Versicherungsarten geltenden Teil (Ziff. 2 der Bauplatzpolice) gleichsam aufzufangen.

Die gegenteilige Behauptung der Klägerin, Ziff. 2.6 beziehe sich nur auf Schadenversicherungen (S. 20 f. der Berufungsschrift), überzeugt nicht. Es geht nicht bloss um Schäden, sondern schlechthin um "Gefahren, die durch den vorliegenden Vertrag gedeckt sind" (Satz 1), und auch nicht bloss um verweigerte Entschädigungsleistungen, sondern auch darum, dass der andere Versicherer seine "Haftung" (Satz 2) ablehnt. Ein nur eingeschränkter Geltungsbereich, wie ihn die Klägerin behauptet, findet im Wortlaut der Vertragsbestimmung somit keine Stütze. Die Ziff. 2.6 der Bauplatzpolice mit dem Titel "Andere Versicherungsverträge / Ersatzansprüche gegenüber Dritten" gilt auf Grund ihres Wortlauts und ihrer Stellung im Gesamtvertrag vielmehr für alle erfassten Versicherungsarten.
3.2 Von ihrem Wortlaut her begründet Ziff. 2.6 die Subsidiarität der Leistungen aus der Bauplatzpolice, wenn Versicherungsrisiken gleichzeitig anderweitig gedeckt sind. Satz 1 stellt diesen Grundsatz auf ("andere Versicherungsverträge ... gehen ... dem vorliegenden Vertrag voran"). Dem widerspricht Satz 2 nicht. Danach sollen Deckungslücken vermieden werden. Die Beklagte erbringt ihre Versicherungsleistungen selbst dann, wenn ein anderer Versicherer an sich leisten müsste, dessen Leistungen aber aus irgendwelchen Gründen ausbleiben. Darauf bezogen fordert Satz 3, dass der Versicherungsnehmer der Beklagten seine Rechte abtritt, die ihm gegenüber dem anderen Versicherer oder sonstigen Dritten zustehen. Mit Blick auf diese Abtretungsverpflichtung, die nach ihrem Wortlaut nur den "Versicherungsnehmer" (Satz 3) trifft, stellt sich die Frage, ob mit "andere Versicherungsverträge" (Satz 1) bzw. "andere Versicherer" (Satz 2) auch nur diejenigen des Versicherungsnehmers selbst gemeint sind (so die Klägerin auf S. 21 ff. der Berufungsschrift) oder auch diejenigen der mitversicherten Dritten, die durch Genehmigung des Vertrags daraus berechtigt und verpflichtet worden sind (so das Appellationsgericht in E. 5.5.4 S. 17 f. des angefochtenen Urteils). Da die Frage auf Grund des Wortlauts allein nicht beantwortet werden kann, ist ergänzend die Interessenlage der Parteien im Zeitpunkt des Vertragsabschlusses zu berücksichtigen (**BGE 128 III 265** E. 3a S. 267). Im Rahmen objektivierter Auslegung darf zudem nicht angenommen werden, die Vertragsparteien hätten eine unangemessene Lösung gewollt (**BGE 126 III 119** E. 2c S. 121).
Die APS als Versicherungsnehmerin hat in ihrer Bauplatzpolice nicht bloss die Betriebs- und Berufshaftpflicht der Subunternehmer und Subplaner mitversichert (E. 2 hiervor). Mitversichert sind vielmehr auch in der "Bauwesen- / Montageversicherung" alle am Bau beteiligten Personen, einschliesslich Subunternehmer (Ziff. 3.1.3), und in der "Besucherunfallversicherung" die "Kunden / Besucher", d.h. die Teilnehmer an geführten Rundgängen (Ziff. 4.2 der Bauplatzpolice). Die Prämienlast für die versicherten Dritten trägt die APS hingegen allein. Diesbezüglich ist zu beachten, dass bei der Betriebs- und Berufshaftpflichtversicherung der Umfang der Prämienlast auf Grund der sog. Überschussbeteiligung von der Schadenhäufigkeit abhängt. Die Beklagte vergütet danach der APS 40 % des Überschusses, wobei als Überschuss 80 % der eingenommenen Prämie abzüglich Verwaltungskosten und Aufwendungen in Schadenfällen gelten (Ziff. 5.6 der Bauplatzpolice i.V.m. Art. 20 der Allgemeinen Bedingungen für die Betriebs-Haftpflichtversicherung). Es ist zwar anzunehmen, dass die APS eigene Interessen daran gehabt hat, den Versicherungsschutz auf beigezogene Subunternehmer und Subplaner auszudehnen (z.B. für die Bauwesenversicherung: Huber/Schwendener, a.a.O., N. 388 S. 106). Ihren Interessen kann aber bei objektiver Betrachtungsweise nicht entsprochen haben, mit ihren Prämien die bereits durch andere Versicherungen abgedeckten Risiken Dritter versichern zu lassen. Es erscheint vielmehr als sachgerecht, Dritte nur insoweit in den Versicherungsschutz miteinzubeziehen, als diese nicht Leistungen aus ihren eigenen Versicherungen erhalten.

Das Ergebnis der appellationsgerichtlichen Auslegung nach dem Vertrauensgrundsatz, Ziff. 2.6 der Bauplatzpolice sei als eigentliche Subsidiaritätsklausel zu qualifizieren, kann insgesamt nicht beanstandet werden. Die Subsidiarität bezieht sich nicht bloss auf andere Versicherungsverträge der APS als Versicherungsnehmerin, sondern auch auf Versicherungsverträge mitversicherter Dritter, die gegenüber der Beklagten Ansprüche geltend machen. Ob die mitversicherten Dritten auch dem Begriff "Versicherungsnehmer" zu unterstellen sind, kann bei diesem Ergebnis dahingestellt bleiben. Als Anspruchsberechtigte (E. 2.1 hiervor) müssen sie sich zumindest die Subsidiarität der Leistungen der Beklagten gegenüber den Leistungen aus ihren eigenen Versicherungen entgegenhalten lassen. Mehr oder anderes ist im vorliegenden Prozess nicht zu entscheiden.
3.3 Die weiteren Einwände der Klägerin im Zusammenhang mit der Auslegung von Ziff. 2.6 der Bauplatzpolice erweisen sich als unbegründet.

Entgegen der Darstellung der Klägerin (S. 18 ff. der Berufungsschrift) hat das Appellationsgericht die Interessenlage der APS im Sinne des soeben Dargelegten richtig beurteilt. Dass die APS ein eigenes Interesse gehabt hat, die Haftpflicht ihrer Subunternehmer und Subplaner bei der Beklagten zu versichern, ist unbestritten, schliesst aber ihr Interesse auch daran nicht aus, dass die Subunternehmer und Subplaner zuerst die Leistungen ihrer eigenen Versicherungen einfordern und nur subsidiär die Leistungen der Beklagten beanspruchen können. Dieses Interesse ergibt sich ohne weiteres aus der vertraglichen Regelung über die Prämienzahlung. Ein Widerspruch zur Beweislastverteilung nach Art. 8 ZGB ist deshalb weder ersichtlich noch dargetan. Belanglos für die Auslegung ist sodann, ob die Vertragsparteien nach Treu und Glauben davon ausgehen durften und mussten, dass mitversicherte Subunternehmer und Subplaner über eigene Haftpflichtversicherungen verfügten. Entscheidend ist vielmehr, dass die Vertragsparteien mit Ziff. 2.6 der Bauplatzpolice geeignete Vorkehren für alle Eventualitäten getroffen haben.

Schliesslich sind keine Anhaltspunkte dafür ersichtlich, dass Ziff. 2.6 der Bauplatzpolice nicht vom Konsens der Vertragsparteien getragen gewesen sein könnte, wie die Klägerin das heute plötzlich behauptet (S. 27 f. der Berufungsschrift). Es dürfte sich dabei ohnehin um ein neues Vorbringen handeln, das unzulässig ist, selbst wenn es sich um ein echtes Novum handeln sollte (Art. 55 Abs. 1 lit. c OG; **BGE 126 III 353** E. 2b/aa S. 359; **132 III 71** E. 1.3.2 S. 77). Die ferner angerufene Unklarheitsregel (S. 30 f. der Berufungsschrift) darf erst bei Versagen aller anderen Auslegungsmittel herangezogen werden (**BGE 122 III 118** E. 2a S. 121 und E. 2d S. 124), was hier nicht der Fall ist. Auf Grund des Wortlauts der Ziff. 2.6 der Bauplatzpolice und deren Stellung im Vertragsgefüge sowie ergänzend mit Blick auf die Interessenlage beim Vertragsabschluss und die Angemessenheit der Lösung durfte das Appellationsgericht die strittige Vertragsbestimmung vielmehr dahin gehend auslegen, dass die Leistungen der Beklagten für Subunternehmer und Subplaner gegenüber den Leistungen aus Versicherungsverträgen, die diese mitversicherten Dritten selber abgeschlossen haben, nachgehen und insoweit subsidiär sind.

4.
Zur Hauptsache wendet die Klägerin ein, die Beklagte und sie hätten die Schadensliquidation vorprozessual erörtert und seien von einer Doppelversicherung ausgegangen. In ihrer Korrespondenz sei die authentische Interpretation der Bauplatzpolice durch die Beklagte oder eine den Versicherungsvertrag ergänzende klarstellende Vereinbarung zu erblicken. Daran sei die Beklagte gebunden, so dass sie im Prozess nicht mehr die Subsidiarität ihrer Versicherungsleistungen geltend machen könne (S. 24 ff. der Berufungsschrift).

4.1 Das Verhalten der Vertragsparteien nach Vertragsschluss kann Rückschlüsse auf deren Willenslage im Zeitpunkt des Vertragsschlusses gestatten (vgl. Wiegand, Basler Kommentar, 2003, N. 29 zu Art. 18 OR). Stimmt das nachvertragliche Verhalten der Parteien überein, kann darin die - von der Klägerin angesprochene - authentische Interpretation durch die Vertragspartner selbst gesehen werden (Kramer, Berner Kommentar, 1986, N. 28 zu Art. 18 OR). Parteien des Versicherungsvertrags sind nun aber die APS und die Beklagte gewesen und nicht die Beklagte und die Klägerin. Da die Würdigung des nachträglichen Verhaltens den wirklichen Parteiwillen im Zeitpunkt des Vertragsschlusses ergibt (vgl. **BGE 107 II 417** E. 6 S. 418), ist es schon rein begrifflich ausgeschlossen, dass die Korrespondenz mit der Klägerin, die am Vertragsschluss nicht beteiligt gewesen ist und erst später den Vertrag genehmigt hat, als authentische Interpretation gelten könnte. Die zwischen der Klägerin und der Beklagten ausgetauschte Korrespondenz gibt somit lediglich die Sicht der einen Vertragspartei wieder, der Beklagten nämlich.

Selbst wenn die andere Vertragspartei, die APS, von dieser Korrespondenz Kenntnis erhalten und der einseitigen Interpretation der Beklagten nicht widersprochen haben sollte, wie das die Klägerin behauptet, könnte daraus nicht geschlossen werden, die APS teile die Auffassung der Beklagten, die Bauplatzpolice sei eine Doppelversicherung. Blosse Passivität hat nicht die Bedeutung einer Zustimmung (Winiger, Commentaire romand, 2003, N. 35 zu Art. 18 OR; allgemein: **BGE 123 III 53** E. 5a S. 59; **129 III 476** E. 1.4 S. 478). Gegenteiliges oder gar eine Genehmigung der Interpretation kann die Klägerin auch nicht aus dem Vergleich zwischen der Beklagten und der APS vom 1. Februar 2000 ableiten. Zur Bereinigung des Schadenfalls sollen die Vertragsparteien darin eine Entschädigung vereinbart haben, die die Beklagte angeblich auf Grund ihrer Interpretation der Bauplatzpolice als Doppelversicherung berechnet hat. Abgesehen davon, dass entsprechende Tatsachenfeststellungen im angefochtenen Urteil fehlen, behauptet die Klägerin selber nicht, im besagten Vergleich sei von einer Doppelversicherung die Rede oder werde die in der Korrespondenz geäusserte Auffassung der Beklagten wiedergegeben. Es kann ergänzt werden (Art. 64 Abs. 2 OG), dass der Vergleich in dieser Richtung keine klaren Aufschlüsse erteilt (act. 6/12). Die Unterzeichnung des Vergleichs durch die APS darf deshalb rechtlich nicht als Genehmigung qualifiziert werden. Deren Wirksamkeit setzte nämlich die Kenntnis dessen voraus, was genehmigt werden soll (z.B. für Art. 38 Abs. 1 OR: BGE 35 II 608 E. 5 S. 615; **124 III 355** E. 5 S. 360 ff.).

Der Einwand der Klägerin, in der Korrespondenz sei die authentische Interpretation der Bauplatzpolice zu erblicken, ist somit unbegründet. Was die Beklagte dazu vorprozessual geschrieben und erklärt hat, ist lediglich eine persönliche Meinungsäusserung.

4.2 Nach Auffassung der Klägerin kann sich die Beklagte nicht auf die in Ziff. 2.6 der Bauplatzpolice enthaltene Subsidiaritätsklausel berufen, weil die vorprozessuale Korrespondenz eine den Versicherungsvertrag ergänzende klarstellende Vereinbarung bedeute. An diese Vereinbarung sei die Beklagte gebunden.

Da eine tatsächliche Willenseinigung der Parteien nicht festgestellt ist, muss ermittelt werden, wie die Parteien die in ihrer Korrespondenz gemachten Willensäusserungen nach Treu und Glauben verstehen durften und mussten (**BGE 116 II 695** E. 2a S. 696). Das Zustandekommen der behaupteten vertragsergänzenden Vereinbarung setzt die Einigung über sämtliche (objektiv und subjektiv) wesentlichen Vertragspunkte voraus (**BGE 127 III 248** E. 3d S. 254; **110 II 287** E. 2b S. 291). Was die Parteien als wesentlich betrachtet haben, lässt sich entweder auf Grund tatsächlicher Feststellungen über die Auffassung der Parteien oder, falls es an solchen Feststellungen fehlt, nach der Verkehrsauffassung oder der Lage der Dinge entscheiden (BGE 71 II 267 E. 3c S. 270; **97 II 53** E. 3 S. 55).

Tatsachenfeststellungen über den Inhalt der ausgetauschten Korrespondenz fehlen im angefochtenen Urteil. Selbst

auf der Grundlage der Angaben der Klägerin könnte ihre Darstellung von einer vertragsergänzenden Vereinbarung nicht gutgeheissen werden. Wie sie in ihrer Berufungsschrift belegt, hat die Beklagte eine Doppelversicherung behauptet und eine Aufteilung des Schadens im Verhältnis der Versicherungssummen geltend gemacht. Nach anfänglichem Bestreiten und anschliessender Kenntnisnahme dieses Standpunkts hat die Klägerin erstmals im Schreiben vom 31. März 2000 einen Fall der Doppelversicherung ausdrücklich anerkannt, eine Aufteilung des Schadens im Verhältnis der Versicherungssummen aber abgelehnt und eine Aufteilung anhand des konkret von den Versicherungen insgesamt zu deckenden Betrags gefordert. Strittig ist in der Folge der Teilungsmodus geblieben. Auf Grund des Briefwechsels durfte und musste die Klägerin davon ausgehen, dass für die Beklagte von Beginn an nicht bloss das Vorliegen einer Doppelversicherung wesentlich gewesen ist, sondern auch die Art der Aufteilung des Schadens im Verhältnis der Versicherungssummen. Über letzteren (wesentlichen) Punkt haben sich die Parteien indessen bis am Schluss nicht einigen können, so dass von einer den Versicherungsvertrag ergänzenden Vereinbarung, wie sie die Klägerin behauptet, nicht ausgegangen werden kann. Was die Parteien einander vorprozessual geschrieben und erklärt haben, sind lediglich persönliche Meinungsäusserungen.
4.3 Weder die behauptete authentische Interpretation (E. 4.1) noch die angeblich den Versicherungsvertrag ergänzende klarstellende Vereinbarung (E. 4.2 soeben) konnten die Beklagte daran hindern, sich im Prozess auf Ziff. 2.6 der Bauplatzpolice zu berufen. Weshalb sie vorprozessual diese Klausel nicht angerufen und eine andere Meinung vertreten hat, ist rechtlich belanglos, solange die Veränderung ihres Standpunkts nicht als rechtsmissbräuchlich betrachtet werden muss. Einen allgemeingültigen Grundsatz der Gebundenheit an früheres eigenes Handeln gibt es indessen nicht. Vielmehr ist es im Prinzip jedermann gestattet, sein Verhalten und seine Meinung aufgrund besserer Belehrung im Laufe der Zeit zu ändern. Ein von der Rechtsordnung verpöntes venire contra factum proprium liegt erst dann vor, wenn durch das frühere Verhalten bei einem Partner ein schutzwürdiges Vertrauen begründet worden ist, das diesen zu Handlungen veranlasst hat, die ihm nunmehr, angesichts der neuen Situation, zum Schaden gereichen (**BGE 106 II 320** E. 3a S. 323 f.; **125 III 257** E. 2a S. 259). Dass die Klägerin auf Grund der früheren Meinungsäusserung der Beklagten derartige Dispositionen getroffen hätte, ist weder festgestellt noch dargetan. Sie hat den Schaden gedeckt und decken müssen, weil die Ingenieurfirmen als ihre Versicherungsnehmerinnen Verantwortlichkeit und Schaden anerkannt haben. Der Einwand der Klägerin, die Beklagte sei an ihre vorprozessual geäusserte Meinung gebunden, erweist sich damit als unbegründet. Ob sich die Beklagte vorprozessual in einem rechtserheblichen Irrtum befunden hat (vgl. **BGE 127 V 301** E. 3c S. 307 f.), wie das Appellationsgericht das angenommen hat (E. 5.5.2 S. 17 des angefochtenen Urteils), kann deshalb dahingestellt bleiben (vgl. E. 2 des Beschwerdeurteils). Blosse Erwägungen bedeuten keine Beschwer (**BGE 130 III 321** E. 6 S. 328; **129 III 320** E. 5.1 S. 323).
5.
Aus den dargelegten Gründen muss die Berufung abgewiesen werden, soweit darauf einzutreten ist. Auf die Frage, wie der Schaden zu verteilen wäre, wenn eine Doppelversicherung vorläge (S. 32 ff. der Berufungsschrift), ist beim vorliegenden Ergebnis nicht mehr einzugehen. Die Klägerin wird kostenpflichtig (Art. 156 Abs. 1 OG).

Demnach erkennt das Bundesgericht:
1.
Die Berufung wird abgewiesen, soweit darauf einzutreten ist.
2.
Die Gerichtsgebühr von Fr. 9'000.-- wird der Klägerin auferlegt.
3.
Dieses Urteil wird den Parteien und dem Appellationsgericht des Kantons Basel-Stadt schriftlich mitgeteilt.
Lausanne, 10. Juli 2006
Im Namen der II. Zivilabteilung
des Schweizerischen Bundesgerichts
Der Präsident: Der Gerichtsschreiber: