**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------- X

JULIO ROCHA,                                        :

              Plaintiff,                       :     16-CV-02327 (RJD) (RML)

      -against-                                :

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, and AXIS SPECIALTY EUROPE     :
SE;

              Defendants.

-------------------------------------- X


## DECLARATION OF PROFESSOR RONALD A. BRAND IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

I, Professor Ronald A. Brand, declare as follows:

    1.      I reside in Pittsburgh, Pennsylvania and am a citizen of the United States.

    2.      As more fully detailed in my enclosed Curriculum Vitae (attached as Exhibit 1), I

have been a full-time professor at the University of Pittsburgh School of Law since 1982 and

currently hold the titles of Chancellor Mark A. Nordenberg University Professor and John E.

Murray Faculty Scholar.  I am Academic Director of the Center for International Legal

Education.  In addition to maintaining a full-time teaching schedule focused on international and

comparative law, I have been actively involved in the international legal community for more

than thirty years.  I regularly speak at seminars and have published over 100 books, articles and

chapters related to international legal issues, particularly as related to international dispute

resolution.  Among other work for the U.S. government, I served from 1993 through 2005 as a

Member of the U.S. Delegation to the Special Commission of the Hague Conference on Private International Law which resulted in the conclusion of the Hague Choice of Court Convention.  In 2011, I presented lectures on private international law at the Hague Academy of International Law, focusing on issues of jurisdiction and choice of court.  I received the 2011 Leonard J. Theberge Award for private international law from the ABA Section of International Law.

3.      My current professional activities include serving as: a Member of the U.S. Delegation to the Hague Conference on Private International Law Special Commission which is negotiating a Convention on the Recognition and Enforcement of Judgments in Civil and Commercial Matters; an Invited Expert Observer for the United Nations Commission on International Trade Law; a Member of the Board of Directors of the American Branch of the International Law Association; and a Member of the Editorial Advisory Board of The Journal of Private International Law.

4.      In addition to my academic and public work, I have worked extensively with parties in the private sector on issues concerning, among other matters, choice of law and choice of court provisions under U.S. and European legal systems.

5.      Through the course of my work in private international law, I have spent a considerable amount of time in Europe.  I have a strong basic understanding of the private international law rules in Europe.  In 1989-90, as a Fulbright Scholar, I taught at the Vrije Universiteit Brussel in Brussels, Belgium, and did research on EU law and dispute resolution.  In 2011, I was awarded an Honorary Doctorate of Laws from the University of Augsburg in Germany.  I have worked with private international law experts from Switzerland in treaty negotiations at the Hague Conference on Private International Law since 1993, including more than a decade of negotiations that led to the conclusion of the 2005 Hague Convention on Choice

of Court Agreements.  With a colleague at the U.S. Department of Justice, Paul Herrup, I have

published the only book to date on the 2005 Hague Convention on Choice of Court Agreements.

I believe I am qualified to address the issues addressed in this Declaration.

6.      In 2012, I provided a declaration for the U.S. District Court for the Northern

District of Illinois on matters nearly identical to those which I address in this Declaration.  In that

declaration, I provided an opinion regarding the applicability under German law of a choice of

court provision in an insurance contract governed by the Brussels Convention and Brussels I

Regulation to a co-insured who was not a signatory to the insurance contract.  In its decision, the

court relied heavily on my declaration in denying a motion to dismiss that was based on a choice

of court clause selecting German courts.  *Baxter Int'l Inc. v. AXA Versicherung AG*, 908 F. Supp.

2d 920 (N.D. Ill. 2012) ("*Baxter*").  The relevant issues there were nearly identical to those in the

current matter.  A copy of the *Baxter* decision is attached as Exhibit 2.

7.      Similarly, in 2015 and 2016, I provided a declaration and a Report for the U.S.

District Court for the Eastern District of New York on matters identical to those which I address

in this Declaration.  In those documents, I provided an opinion regarding the applicability under

Swiss law of the very choice of court provision in the insurance contract which is the subject of

consideration in this matter to another co-insured who was not a signatory to the insurance

contract.  In its decision, the court relied heavily on my declarations in denying a motion to

dismiss that was based on a choice of court clause selecting Swiss courts.  *Li v. Certain*

*Underwriters at Lloyd's, London*, ___ F. Supp. 3d ___, No. 15 cv 06099 (RJD) (JO), 2016 WL

1706125 (E.D.N.Y. Apr. 27, 2016) ("*Li*").  The relevant issues there were identical to those in

the current matter, and involved the same insurance policy and choice of court provision that are

involved in this matter.  A copy of the *Li* decision is attached as Exhibit 3.

## I.   INTRODUCTION

This expert report is organized into three sections.  First, I detail and outline my professional qualifications and expertise as a scholar of international law and choice of court principles.  Second, I present my opinion on whether, under applicable Swiss law, an insured who is neither a signatory to nor named in the directors and officers insurance policy issued by Defendants to Fédération Internationale de Football Association ("FIFA") falls within the scope of the choice of court agreement ("COCA") contained in that policy.  I conclude that, under applicable Swiss law, an insured who is neither a signatory to nor specifically named in the Policy does not fall within the scope of the COCA contained in that policy.  Third, I state whether that conclusion is affected in any way by the matters discussed in the July 14, 2016 Declaration of Prof. Dr. Anton K. Schnyder, who was retained by the Defendants in the above-captioned matter.  It is not.

## II.   OPINION

### A.   SUMMARY OF OPINION

8.   I have been asked by counsel for Plaintiff, Julio Rocha, to render an opinion on whether, under applicable Swiss law, an insured who is neither a signatory to nor named in the directors and officers insurance policy (the "Policy") issued by Defendants to FIFA falls within the scope of the COCA contained in that policy.[1]

9.   I have reviewed the following documents provided by Plaintiffs' counsel:

- The Complaint filed in the United States District Court for the Eastern District of New York, Civil Action No. 16-cv-2327, in JULIO ROCHA, Plaintiff v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, and AXIS SPECIALTY EUROPE SE; Defendants;

- The Policy referenced above;

---

[1]   I hereby declare that I have received compensation in the form of a fixed fee of $7500 to prepare this report.

- The April 27, 2016 Memorandum and Order decision of Judge Dearie in *Li v. Certain Underwriters at Lloyd's, London*, No. 15 cv 06099 (RJD) (JO);

- Parts III-V of the Defendants' Motion to Dismiss, dated July 15, 2016; and,

- The Declaration of Prof. Dr. Anton K. Schnyder, LL.M. in Support of Defendants' Motion to Dismiss, Dated July 14, 2016.

10.     My conclusion, discussed in more detail below, is that, under applicable Swiss law, insureds such as Julio Rocha who are neither signatories to nor specifically named in the Policy do not fall within the scope of the choice of court provision contained in that policy. This is the position already taken by the Federal District Court for the Eastern District of New York in the Li matter. There is no reason for a different result in applying the same contract provisions to another insured.

**B.     DISCUSSION**

      **1.     Background**

11.     My understanding, based on a review of the documents noted above, is that the Policy was issued to be effective from 30 December 2014 to 30 December 2015. FIFA is identified as the "Insured" on the "Schedule" accompanying the Policy. Julio Rocha's name does not appear on the Schedule or anywhere else in the policy, and I am informed that he was neither a signatory to the Policy nor to any document relating to its purchase. Further, I am informed that Julio Rocha did not separately and expressly consent to the COCA at any time.

12.     I am informed that FIFA is domiciled in Switzerland, Lloyd's is domiciled in the United Kingdom, and AXIS Specialty Europe SE is domiciled in Ireland. Rocha was a citizen of Nicaragua.

13.     The COCA is set forth in clause 9 of the Policy, and provides as follows: "For any disputes arising under this insurance relationship, a Swiss place of Jurisdiction and the application of Swiss Law shall be deemed to be agreed."

2.    **Swiss Law on COCAs**

a.    <u>**The Lugano Convention and Jurisdiction in Insurance Cases**</u>

14.    I agree with Prof. Dr. Anton K. Schnyder that the Lugano Convention applies. See Schyder Declaration at ¶ 8.

15.    Switzerland is a Contracting Party to the Lugano Convention of 16 September 1988, as amended in 2007.[2]  When applicable, the Lugano Convention provides the exclusive set of jurisdictional rules in the courts of the Contracting States.  Thus, when the Convention applies, it provides the relevant law of Switzerland for purposes of considering issues of jurisdiction and the recognition and enforcement of judgments, including the effectiveness of COCAs.

16.    Like U.S. law on jurisdiction, the Lugano Convention provides both a rule of general jurisdiction (the defendant's domicile, Article 2) and rules of specific jurisdiction (referred to as "special jurisdiction," beginning in Article 5).  Particular rules are established for certain categories of cases, including disputes involving consumer contracts, insurance contracts and employment contracts.

17.    Section 3 of Title II of the Lugano Convention (Articles 8 – 14) sets forth the various places where jurisdiction is proper in matters relating to insurance.  The basic thrust of this entire section is to provide for jurisdiction in the courts of the state of the insured's domicile and to protect against COCAs designed for the sole benefit of the insurer.  Thus, Article 12 provides that an insurer may sue an insured only in that insured's domicile.  Accordingly, the

---

[2]   The official title to the Lugano Convention is the "Convention on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters," done at Lugano on September 16, 1988, and amended in 2007.  Official Journal of the European Union L 339/3, Dec. 21, 2007.  A copy of the Lugano Convention is attached as Exhibit 4.

Lugano Convention would generally prohibit Defendants from suing a non-Swiss insured in Switzerland.

18.     Similarly protective of the insured's right to litigate in the courts of his domicile, Article 9(1)(b) specifies that "[a]n insurer domiciled in a State bound by the Convention may be sued: … in another State bound by this Convention, in an action brought by the policyholder, the insured or a beneficiary, in the courts for the place where the plaintiff is domiciled."  Article 10 further provides that the insured (but not the insurer) may also initiate suit in the place where the harmful event occurred.  It is my understanding that the place of the harmful event in this case would be New York.  Thus it would be wholly consistent with the Lugano Convention rules to bring an action against the insurer in New York in this matter.

19.     Article 13 of the Lugano Convention sets forth the limited circumstances in which parties to an insurance policy may enter into a COCA that deviates from the jurisdictional bases otherwise authorized in Section 3.  Article 13 lists these exceptions (i.e., circumstances in which a COCA in an insurance contract may be valid):

> Article 13
>
> The provisions of this Section may be departed from only by an agreement:
>
> (1) which is entered into after the dispute has arisen, or
>
> (2) which allows the policyholder, the insured or a beneficiary to bring proceedings in courts other than those indicated in this Section, or
>
> (3) which is concluded between a policyholder and an insurer, both of whom are at the time of conclusion of the contract domiciled or habitually resident in the same State bound by this Convention, and which has the effect of conferring jurisdiction on the courts of that State even if the harmful event were to occur abroad, provided that such an agreement is not contrary to the law of that State, or
>
> (4) which is concluded with a policyholder who is not domiciled in a State bound by this Convention, except in so far as the insurance is compulsory or relates to immovable property in a State bound by this Convention, or

Case 1:16-cv-02327-RJD-RML   Document 35   Filed 08/12/16   Page 8 of 23 PageID #: 1389


(5) which relates to a contract of insurance in so far as it covers one or more of the risks set out in Article 14.

20.     Effectively, therefore, Article 13 does not permit a choice of court clause that would either reduce the jurisdictional options of the insured or increase the jurisdictional options of the insurer unless one of the exceptions set forth in 13(3), 13(4) or 13(5) is applicable.  It is important to note, however, that this limitation on the COCA to direct parties does not in any way under the Lugano Convention result in the removal of the benefits of policy coverage for the insured party who has not signed the policy in which the choice of court clause is included.  The intent is simply to protect the weaker party from the imposition of a choice of court clause dictated by the insurer.

21.     It is my opinion that none of the exceptions in Article 13 applies in this matter. Thus, the provisions of the Lugano Convention do not permit the enforcement of the COCA against Mr. Rocha.

22.     Article 13(1) of the Lugano Convention does not permit enforcement of the COCA against Mr. Rocha because it is my understanding that the dispute between Mr. Rocha and the insurers arose after FIFA and the insurers signed the Policy.

23.     Article 13(2) of the Lugano Convention does not permit enforcement of the COCA against Mr. Rocha.  Article 13(2) permits the parties to increase a policyholder's or other insured's jurisdictional options, not reduce them as the Policy's COCA attempts to do.

24.     Article 13(3) of the Lugano Convention does not permit enforcement of the COCA against Mr. Rocha.  While under Article 13(3) of the Lugano Convention, if both the policyholder and the insurer were domiciled in Switzerland, they would be allowed to enter into a COCA choosing the courts of Switzerland.  In the current matter, this exception to the invalidity of the COCA does not apply.  The policyholder (FIFA) and the insurers (Defendants)

are not domiciled in Switzerland.  Thus, the Lugano Convention rule that prohibits the use of a

COCA in an insurance contract to confer jurisdiction on a court is without exception.  And, as

explained in greater detail below, even if all parties were domiciled in the same Lugano

Contracting States, the ECJ -- in decisions on the Brussels I Convention and Brussels I

Regulation, which apply to the Lugano Convention -- has clearly and consistently held that

choice of court provisions in insurance contracts are not applicable as against non-signatory

insureds.

25.     Article 13(4) of the Lugano Convention does not permit enforcement of the

COCA against Mr. Rocha.  That provision applies only if the policyholder (here, FIFA) is not

domiciled in a Lugano Convention Contracting State.  FIFA, however, is domiciled in a

Contracting State (Switzerland).

26.     Finally, Article 13(5) of the Lugano Convention does not permit enforcement of

the COCA against Mr. Rocha.[3]

> a.     The large risk provisions of the Lugano Convention and the
>        Brussels I Regulation were added in order to prevent large
>        corporations, and insurers in reinsurance arrangements, from
>        taking advantage of rules against imposed choice of court
>        provisions that are designed to take advantage of weaker parties
>        such as co-insureds.
>
> b.     Article 13(5) is subject to the same limitations mentioned above
>        with respect to Article 13(3), and discussed in greater detail below.

**b.     Even where a choice of court clause is valid against the policyholder,
        it does not apply to co-insureds in circumstances such as those
        presented here**

27.     The Lugano Convention is based on the earlier Brussels I Convention, which

applied among the Member States of the European Community (now European Union).  The

Brussels I Convention has become an internal regulation of the European Union, now known as

---

[3]     Prof. Dr. Anton K. Schnyder's conclusion that Article 13(5) applies is erroneous.

the Brussels I Regulation, which was originally enacted in 2001 and was "Recast" in 2012, with the resulting amendments becoming effective on January 10, 2015.[4]  Protocol 2 of the Lugano Convention provides that, in interpreting its provisions, regard is to be given to the interpretation of the Brussels I Convention and Brussels I Regulation by the European Court of Justice ("ECJ"), now referred to as the Court of Justice of the European Union ("CJEU").

28.     In interpreting the Brussels I Convention, the ECJ has held that, even where a choice of court clause is valid against the policyholder, it does not apply to co-insureds in circumstances such as those presented here.

29.     In Société Financière et Industrielle du Peloux v. Axa Belgium, et al., ECJ Case No. C-112/03, ECR I-3707 (2005) ("*SFIP*"), the insurer argued that a choice of court clause was applicable against a co-insured that had been added to the policy after the issuance of the policy. (A copy of the *SFIP* case is attached as Exhibit 6.)  The choice of court clause was otherwise valid as between the insurer and the policyholder because it met the exception of Article 12 of the Brussels Convention (the equivalent of Article 13 of the Lugano Convention), which allows such clauses between parties domiciled in the same state. Nonetheless, the ECJ held that the clause did not apply to a co-insured that had not specifically agreed to that jurisdiction provision. In so holding, the Court repeatedly emphasized the importance of protecting the insured's right to sue in its own domicile and of not allowing COCAs to be interpreted for the sole benefit of the insurer.  (*SFIP* ¶¶ 28–44.)  It also noted that "derogations from the jurisdictional rules in matters of insurance must be interpreted strictly."  (*SFIP* ¶ 31.)

---

[4]     The official title of the Brussels I (Recast) Regulation is "Regulation (EU) No 1215/2012 of the European Parliament and of the Council of 12 December 2012 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters (recast)."  Official Journal of the European Union L 351/1, December 20, 2012.  A copy of the Brussels I (Recast) Regulation is attached as Exhibit 5.

30.     There are three important aspects of the ECJ's holding in the *SFIP* case, each of which is applicable in this case.

31.     The first is its confirmation of the requirement of consent to the COCA by the party against whom application of the agreement is sought.  (*SFIP* ¶ 43.)  This is consistent with the doctrine of separability, which is well-settled in international and European law.5  The doctrine of separability provides that choice-of-forum clauses, whether selecting courts or arbitration, are separable from the rest of the contract for purposes of determining party consent to the clause.  This means that parties must separately consent to such clauses (due to the importance of the rights being waived), and that if such clauses are found to be invalid, that does not affect the validity of the rest of the contract.6

> a.     The ECJ's confirmation of the consent requirement in *SFIP* is also consistent with general European law confirming the importance of knowing and adequate consent to COCAs.  THE ECJ has explained that a consent requirement must be "strictly construed," and it "must be clearly and precisely demonstrated" by the party seeking application of the choice of court clause that the clause "was in fact the subject of a consensus between the parties." Estasis Salotti di Colzani Aimo et Gianmario Colzani v Rüwa Polstereimaschinen GmbH., ECJ Case No. 24-76, ECR 1831 (1976) at ¶ 7.  (A copy of the Estasis Salotti case is attached as Exhibit 8).  Thus, a choice of court clause will be binding on a non-signatory only when the party seeking its application demonstrates that the non-signatory succeeded by operation of law to the rights and obligations of the signatory or that the non-signatory "actually accepted the choice of court clause relied on against him."  Coreck Maritime GmbH v Handelsveem BV and Others, ECJ Case No. C-387/98, ECR I-9337 (2000) ¶¶ 23, 26–27.  (A copy of the Coreck Maritime case is attached as Exhibit 9).

> b.     Therefore, even if the policyholder here (FIFA), met any of the exceptions in Article 13 of the Lugano Convention, that would still

---

5       *See, e.g.*, *Deutsche Bank AG & ORS v. Asia Pacific Broadband Wireless Communications Inc. & ANR*, [2008] EWCA Civ. 1091 (U.K. Court of Appeal) (allowing, under Article 23 of the Brussels I Regulation, a party to amend its complaint to allege the failure to conclude the underlying contract while at the same time relying on that contract's exclusive choice of forum clause).  A copy of the *Deutsche Bank* case is attached as Exhibit 7.

6       *See id*.

not give the policyholder the right to waive on behalf of the co-insured (Julio Rocha) the protections that the Lugano Convention affords to insureds.  The question presented to the court in *SFIP* was whether a COCA which applied against the original insurer and policyholder included within its scope of coverage an insured who was not a signatory to the agreement.  The Court held that it did not.  Thus, the Lugano Convention protects such an insured person both by keeping the benefits of the policy available to him and by preventing him from being subject to COCAs to which he is not directly a party.

32.     The second important aspect of the ECJ's holding in the *SFIP* case is its plain and clear affirmation that Section 3 of the Brussels I Regulation (which is repeated virtually verbatim in Section 3 of the Lugano Convention) was intended to protect insureds.  Thus, the ECJ made it abundantly clear that an insured must be permitted to file suit in the courts of its own country, must not be discouraged from suing by being compelled to file suit in the courts of the insurer's domicile, and that COCAs must not be interpreted for the sole benefit of the insurer.  (*SFIP*  ¶¶ 30, 33, 38–41.)

a.     The principle behind all of Section 3 of Title II of the Lugano Convention is that weaker parties in insurance contract relationships should be protected.  In *SFIP*, the ECJ made clear that "a jurisdiction clause based on Article 12(3) of the Convention [the equivalent of Article 13(3) of the Lugano Convention] cannot in any event be accepted as enforceable against a beneficiary unless it does not undermine the aim of protecting the economically weakest party."  (*SFIP* at ¶ 38.)  The ECJ added:

The result of [a more limited] interpretation [of the protection of insureds] would be to accept a conferral of jurisdiction for the benefit of the insurer and to disregard the aim of protecting the economically weakest party, in this case the beneficiary, who must be entitled to bring proceedings and defend himself before the courts of his own domicile.

Id. ¶ 40.

b.     Multiple factors may result in one party being weaker than another in such a relationship.  The *SFIP* case makes clear that the status of co-insured necessarily distinguishes a party as a weaker party

covered by the protective principle underlying Section 3.  This is true even if, as in *SFIP*, the co-insured is a corporate subsidiary of a large, multi-national corporation.  This makes sense because co-insureds typically do not have a seat at the policy negotiation table.  Rather, they are brought into the insurance relationship without the opportunity to negotiate its terms.

c.  The ECJ confirmed this point in *Group Josi Reinsurance Company SA v. Universal General Insurance Company,* ECJ Case C-412/98, ECR 1-5940, ¶ 64 (2000) ("*Group Josi*"), in which it explained that Section 3 of the Brussels Convention (and by extension, Section 3 of the Lugano Convention), "afford[s] the insured a wider range of jurisdiction than that available to the insurer" and "exclud[es] any possibility of a clause conferring jurisdiction for the benefit of the insurer[.]"  (A copy of the *Group Josi* decision is attached as Exhibit 10.)  The Court explained that these rules "reflect an underlying concern to protect the insured, who in most cases is faced with a predetermined contract the clauses of which are no longer negotiable and is the weaker party economically." *Id.*

d.  The position of the ECJ in respect to choice of court provisions in insurance contracts is consistent with its position regarding the application of choice of court provisions to weaker parties generally.  This is reflected in its decision in *Refcomp SpA v. Axa Corporate Solutions Assurance SA,* ECJ Case C-543/10, Feb 7, 2013 ("*Refcomp SpA*"), in which  the Court determined:

> Article 23 of [the Brussels I Regulation] must be interpreted as meaning that a jurisdiction clause agreed in the contract concluded between the manufacturer of goods and the buyer thereof cannot be relied on against a sub-buyer who, in the course of a succession of contracts transferring ownership concluded between parties established in different Member States, purchased the goods and wishes to bring an action for damages against the manufacturer, *unless it is established that that third party has actually consented to that clause under the conditions laid down in that article*.

*Refcomp SpA,* at ¶ 41 (emphasis added).  (A copy of the *Refcomp SpA* case is attached as Exhibit 11).

33.  The third important aspect of the *SFIP* holding is that it in no way provided that the benefits of the policy would be denied to a party that was not bound by the COCA between

the insurer and the policyholder.  The ECJ in no way indicated that the protection of weaker

parties from certain types of COCAs would carry with it any loss of the protections provided in

the remainder of the policy agreement.  Such a conclusion would again violate the doctrine of

separability discussed above in paragraph 28.  The applicability of the substantive insurance

provisions of the contract is to be determined entirely separately from the applicability or validity

of the COCA.

34.     Under the analysis of the ECJ and the logic of Chapter 3 of Title II of the Lugano

Convention, Julio Rocha is a weaker party in the relationship with Defendants and did not

explicitly consent to the terms of the COCA.  The principles behind Section 3, as applied by the

ECJ in the *SFIP* case, thus prevent the application of the COCA to Mr. Rocha.

35.     This conclusion applies even if the policyholder here (FIFA) met the large risk

exception of Article 13(5) and 14(5) of the Lugano Convention.  Nothing in those provisions

gives the policyholder (FIFA) the right to waive on behalf of Mr. Rocha the protections that the

Lugano Convention affords to Mr. Rocha.  These provisions are subject to the same limitations

discussed by the ECJ in *SFIP* with respect to the common domicile provision in Article 12(3) of

the Brussels Convention (and Article 13(3) of the Lugano Convention).  The ECJ has made clear

that the application of the exceptions to the general jurisdiction provisions must be consistent

with their purpose.  Indeed, in the *SFIP* case, the ECJ held that, even where an exception existed

which would make a COCA in an insurance contract enforceable as against both the insurer and

the policyholder who were signatories to that contract, it would not make that COCA applicable

to a non-signatory beneficiary under the same contract.  In other words, the question presented to

the Court in *SFIP* was whether an otherwise valid jurisdiction provision could be enforced

against an insured who was not a signatory to the agreement.  The Court held unequivocally that

it could not.  That conclusion applies with equal force to the "large risk" provisions in Articles 13(5) and 14(5) of the Lugano Convention.

### c.  The Lugano Convention Applies to Individuals Who Are Not Domiciled in a Contracting State

36.  It is also important to understand that the Lugano Convention applies to individuals who are not domiciled in an EU Member State.

37.  The question of whether the rules of the Brussels Convention, and by extension the Lugano Convention, apply to disputes involving insurance contracts when the plaintiff is not domiciled in a Contracting State was clearly answered by the ECJ in *Group Josi*.  There the ECJ held that the jurisdictional rules of the Brussels Convention:

> [are] applicable where the defendant has its domicile or seat in a Contracting State, even if the plaintiff is domiciled in a non-member country.  It would be otherwise only in exceptional cases where an express provision of that convention provides that the application of the rule of jurisdiction which it sets out is dependent on the plaintiff's domicile being in a Contracting State.

*Group Josi* (Exhibit 10 hereto) at 1-5963 ¶ 1.  Notably, even though the *Group Josi* decision involved a contract of reinsurance, the analysis took into account all aspects of the special jurisdiction rules of the Brussels Convention, including express reference to Brussels Convention rules dealing with matters ranging from maintenance creditors under Article 5(2), to "the party deemed to be weaker than the other party" in insurance contracts under Articles 8 and 14.  *Id*. at 1-5953 ¶ 39.  In particular, the Court noted that the principal Brussels Convention rule on choice of court provisions (Article 23 of the Lugano Convention) provides for the application of the Convention to the choice of court provision so long as "one of the parties is domiciled in a Contracting State," stating that "it also follows from that provision that the rule of jurisdiction set out therein is applicable if the defendant is domiciled in a Contracting State, even if the plaintiff is domiciled in a non-member country."  *Id*. at 1-5954 ¶¶ 41-42.

38.     Thus, the jurisprudence of the ECJ is clear not only that a non-signatory beneficiary of an insurance contract is not bound by a choice of court provision in that contract (*SFIP*), but also that such a rule, as a principle of the Brussels Convention (and by extension the Lugano Convention) applies even when a plaintiff is from a non-Member State (*Group Josi*).

39.     The positions of the ECJ that (a) COCAs in insurance contracts are not applicable as against non-signatory insureds, and (b) such rules regarding insurance apply as well when the plaintiff is from a non-Contracting State, are both clearly established and regularly followed as part of the jurisprudence of the ECJ regarding protective rules of jurisdiction applicable when weaker parties are involved.

### C.     CONCLUSION

40.     Accordingly, it is my opinion that under applicable Swiss law, an insured such as Mr. Rocha, who is neither a signatory to nor specifically named in the Policy, does not fall within the scope of the COCA contained in that policy.

## III.     RESPONSE TO THE DECLARATION OF ANTON K. SCHNYDER

41.     Importantly, the Schnyder Declaration states that "[t]he Lugano Convention does, in fact, apply here," (Schnyder Declaration, ¶ 8) and that the "rules of the Lugano Convention apply to the choice of forum clause contained in the Policy."  Schnyder Declaration, ¶ 10.  Thus, we begin in substantial agreement on the applicable law.

42.     First, it is important to note that the purpose of the Schnyder Declaration is to convince the Court in this matter to reject its decision in the case of *Eduardo Li v. Certain Underwriters at Lloyd's, London, and Axis Specialty Europe*, 1:15-CV-06099 (RJD-JO), and come to exactly the opposite legal result regarding Julio Rocha, on incredibly similar facts. Nothing in the Schnyder Declaration causes me to change anything stated in my Report in the *Li*

matter.  Thus, this report addresses the same issue I addressed in Li.  I have several points of fundamental disagreement with Professor Schnyder's interpretation of the Lugano Convention as it applies to Mr.Rocha.  These points boil down to what I find to be two premises of his opinion, one broad and the other narrow.

a.   His broad premise is that the Lugano Convention does not apply when a party to litigation is not domiciled in a Contracting State to the Convention.

b.   His narrow premise is that the ruling announced by the ECJ in *SFIP* – which holds that an insurance contract beneficiary is not bound by a choice of forum clause in that contract unless that beneficiary has signed the choice of forum clause – does not apply if the beneficiary is not domiciled in a Contracting State to the Convention.

43.   These premises are unfounded and are contrary to both the language of the Lugano Convention and the jurisprudence of the ECJ.

## A.  AREAS OF AGREEMENT

Professor Schnyder and I agree on the following points:

(1) "The Lugano Convention does, in fact, apply here."  Schnyder Declaration, ¶ 8.

(2) "[T]he jurisdictional rules of the Lugano Convention apply to the choice of forum clause contained in the Policy."  Schnyder Declaration, ¶ 10.

## B.  AREAS OF DISAGREEMENT

44.   Professor Schnyder's general premise is belied by the language of the Lugano Convention, which he cites.  As he notes in paragraph 13 of his Declaration, the basic Lugano Convention provision on COCAs is Article 23.  This is the starting point for analysis of any COCA under the Lugano Convention, and provides as follows:

If the parties, one or more of whom is domiciled in a State bound by this Convention, have agreed that a court or the courts of a State bound by this Convention are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or

those courts shall have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise. Such an agreement conferring jurisdiction shall be either:

      a.      in writing or evidenced in writing;

      . . . . .

45.      Article 23 has two important elements that are glossed over in Professor Schnyder's Declaration.

      a.      First, it requires only that *one* of the parties involved be domiciled in a "State bound by this Convention." Thus, by its own terms, it applies to parties who are not domiciled in a Lugano Convention Contracting State, when they are a party to a choice of court convention with a party who is domiciled in a Contracting State. Professor Schnyder's entire analysis is based on the assumption that the Lugano Convention rules cannot apply to a party not domiciled in a Contracting State. By the Convention's own express terms – and in particular its terms regarding the matter of the effectiveness of COCAs – that simply is not the case. Moreover, as discussed in paragraphs 39-42, above, the ECJ specifically rejected this limited application of the Convention in its *Group Josi* opinion, when it stated that the jurisdictional rules of the Brussels Convention (and by extension the Lugano Convention), are "applicable where the defendant has its domicile or seat in a Contracting State, even if the plaintiff is domiciled in a non-member country." *Group Josi* (Exhibit 10 hereto) at 1-5963 ¶ 1.

      b.      Second, in order for a party to be bound by a COCA, that party must "have agreed . . . in writing" to that COCA. That simply has not occurred in the case of Julio Rocha. Because that is the starting point for any COCA to be effective, the ECJ has clearly held in the *SFIP* decision that a party cannot be bound by a COCA to which it has not agreed in writing. As the discussion of the *SFIP* case, above, indicates, no other provision of the Lugano Convention changes this clear result. This is not a difficult result to understand given the language of Article 23. Very simply stated, Julio Rocha is not a "party" to a COCA under Article 23.

46.      Accordingly, Professor Schnyder's general premise fails.

47.      Even if his general premise was successful however, in paragraph 18 of Professor Schnyder's Declaration, he quotes the language which states the rule of the *SFIP* case as follows:

"A jurisdiction clause . . . cannot be relied on against a beneficiary under that contract who has not expressly subscribed to that clause and is domiciled in a Contracting State other than that of the policy-holder and the insurer."  (*SFIP* at I-3746, Schnyder emphases omitted).   Professor Schnyder reads this statement to set forth "two conditions that must be met for the *SFIP* ruling to apply to a third-party beneficiary's claim: (1) the beneficiary must be domiciled in a Contracting State, and (2) the beneficiary did not subscribe to the choice of forum clause."  (Schnyder Declaration, ¶ 18).  I agree with his statement of the second condition, but not the first.

48.     By stating its holding as applying to a beneficiary "domiciled in a Contracting State," the Court in *SFIP* was doing no more than accurately describing the party to that litigation.  It is correct that in *SFIP* the beneficiary was domiciled in a Contracting State.  But this then raises the question of whether the use of the term "Contracting" before "State" in declaring the outcome of the case was a requirement of the rule being stated or merely an accurate description of the party to the litigation.  There is nothing in the language of the decision to indicate that the use of the "Contracting State" was anything more than part of an accurate description of the party to the case.  Moreover, the language of Article 23 of the Lugano Convention, discussed above, makes clear that the Convention rules on choice of court *do apply* when a party is domiciled in a state which is not a Contracting State, and thus makes Professor Schnyder's narrow premise contrary to the most basic rule on choice of court found in the Convention.  Nothing in Section 3 of Chapter II of the Lugano Convention (the rules dealing with insurance) changes the fundamental rule of Article 23 that the rules on COCA are applicable so long as one party to the alleged agreement is from a Contracting State.

49.     Professor Schnyder cites paragraphs 29, 34, 35, and 39 of the *SFIP* decision as also referring to the beneficiary there as being domiciled in a Contracting State other than the

State of domicile of either the insurer or the policy-holder.  Schnyder Declaration, ¶ 19.  But in each of those paragraphs, the use of "Contracting" before the word "State" simply describes the specific party in that case.  Nothing in any of these paragraphs provides any indication by the Court that the rule later stated is *limited* to a beneficiary from a Contracting State.  Moreover, the same Court's decision in *Group Josi* (already discussed above in consideration of Professor Schnyder's broad premise) clearly contradicts such an interpretation.

50.    The remainder of Professor Schnyder's Declaration either deals with issues already covered in my discussion above, and considered by this Court in the *Li* case, or raise issues that simply do not change what I find to be the fallacy of his two premises on which his entire Declaration is based.  Nonetheless, I will briefly address some of those matters in the event that the Court might find any of them to raise significant issues.

51.    In his paragraphs 20 and 21, Professor Schnyder indicates that "Swiss substantive law" allows a non-subscribing beneficiary to be bound by a COCA between an insurer and the policy holder.  Because Professor Schnyder has already agreed that the issue in question is governed by the Lugano Convention (see Schnyder Declaration, ¶¶ 8, 10), and not other Swiss substantive law, and because the position he takes in paragraphs 20 and 21 is in contradiction to the requirement of the *SFIP* case which he admits in paragraph 18 of his Declaration ("the beneficiary did not subscribe to the choice of forum clause"), I find no need to address this contention.

52.    In his paragraph 22, Professor Schnyder quotes from Professor Heiss's most recent review of Article 15 of the Lugano Convention in BRUSSELS IBIS REGULATION (Peter Mankowski & Ulrich Magnus, eds. 2016).  The language quoted follows other statements that include: "In general, agreements to the detriment of third parties have no effect on them," and

"Such agreements do not bind the third party."  The quotation Professor Schnyder then uses appears not to be a declaration of the meaning of Article 15 of the Brussels I (Recast) Regulation – or by extension the Lugano Convention – but rather Professor Heiss's statement that he thinks the Brussels I Regulation actually adopts the wrong policy position on the matter.  This is indicated by the final statement in the quoted language which propounds that "an agreement on jurisdiction *should* equally bind the third party beneficiary."  (emphasis added).  There is no statement in that commentary that such an agreement *does* bind a third party beneficiary under the Lugano Convention, and there is no discussion in the paragraph by Professor Heiss, from which the Schnyder quote is taken, of the decision in the *SFIP* case, in which the ECJ decided the matter clearly contrary to what Professor Heiss states "should" be the result.

53.    Professor Schnyder confuses the relationship between rules of jurisdiction in the courts of Contracting States and rules on the validity of COCAs when a party to the agreements is domiciled in a Contracting State, both of which are found in the Lugano Convention.  As noted above, unlike most of the provisions on jurisdiction, Article 23 on COCAs clearly states that it applies to agreements between a party from a Contracting State and a party from a non-Contracting State.  Of course, a court in the United States would not apply the Lugano Convention in order to determine whether the U.S. court has jurisdiction – it obviously must apply its own rules of jurisdiction.  But that has nothing to do with the application of the Lugano Convention as the applicable Swiss law in order to determine the substantive validity of a COCA.  The choice of law clause was selected by the insurer, not by Mr. Rocha.  To now argue that the law chosen by the insurer should not apply because it would be detrimental to the insurer simply does not make sense – and simply would not be fair.

54.     Professor Schnyder seems to make the same mistake of confusing U.S. law on jurisdiction with Swiss substantive law on the validity of a COCA in his paragraph 26, where he again concludes that the Lugano Convention does not apply to the latter question, despite his earlier explicit statement in paragraph 10 that the "rules of the Lugano Convention apply to the choice of forum clause contained in the Policy."  The same is true in paragraphs 27-29.  Obviously, neither a Federal District Court in New York, nor a Federal District Court in Illinois would apply the Lugano Convention to determine its own jurisdiction.  However, if the relevant contract requires that either of those courts apply Swiss law to determine the validity of a COCA, then that court must apply the Lugano Convention (as Professor Schnyder has agreed in his paragraphs 8 and 10).

55.     Finally, in paragraphs 27-29 of his Declaration, Professor Schnyder finds this Court's reliance in *Li* upon the decision in the *Baxter* case from the Northern District of Illinois to be somehow inappropriate, suggesting that he is "unaware of any other precedent of any courts sitting in any Contracting State subject to the Brussels or Lugano Conventions which would support the Court's decision in the *Li* case.  Schnyder Declaration, ¶ 27.  First, it was entirely appropriate for this Court in *Li* to consider the *Baxter* decision as persuasive authority because the *Baxter* court was addressing the same question this Court was asked to address in *Li* – which is the same question being addressed here regarding Julio Rocha.  Obviously, no court in a Contracting State would face the same question of the application of the Lugano Convention rules on validity of a COCA *in the courts of a non-Contracting State to a plaintiff from a non-Contracting State*.  Thus, there is good reason why no such precedent exists in the courts of a Contracting State.  The remaining arguments raised by Professor Schnyder in Paragraph 29 of

his Declaration (regarding the application of the *SFIP* case and "large risk" considerations) have been addressed above in paragraphs 27-38 and paragraphs 25, 38, and 39, respectively.

## C. CONCLUSION

For the above reasons, and in full consideration of the Schnyder Declaration, it remains my opinion that, under applicable Swiss law, an insured who is neither a signatory to nor specifically named in the Policy does not fall within the scope of the COCA contained in that policy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on August 5, 2016, in Pittsburgh Pennsylvania.

Ronald A. Brand