# EXHIBIT 7

**Deutsche Bank AG & Ors v. Asia Pacific Broadband Wireless Communications Inc & Anr**
Case No: A3/2008/1179
Court of Appeal (Civil Division)
13 October 2008

[2008] EWCA Civ 1091

2008 WL 4125435

Before: The Right Honourable Lord Justice Laws The Right Honourable Lord Justice Keene and The Right Honourable Lord Justice Longmore
Date: 13/10/2008

On Appeal from High Court Queen's Bench Division Commercial Court The Honourable Mr Justice Flaux
2007 Folio 577
Hearing date: 30th July 2008

Representation
• Mr Stephen Moriarty QC , Mr Derrick Dale & Ms Louise Merrett (instructed by Allen & Overy LLP ) for the Appellant.
• Mr Christopher Butcher QC and Mr Adrian Briggs (instructed by Davis & Co ) for the Respondent.

Judgment
Lord Justice Longmore:

Facts

1  The issue in this appeal is whether an exclusive jurisdiction clause, which covers any dispute as to the existence or validity of the contract, covers not merely claims advanced on the basis that the contract is a valid and subsisting contract but also alternative claims advanced on the basis (asserted by the defendant but denied by the claimant) that the contract is of no effect.

2  The claims in the present case are primarily for repayment of monies advanced by various lenders (the claimants being those lenders or their successors in title and otherwise known as "the Finance Parties") under a Credit Agreement dated 31st March 2006. Under that agreement the claimants made available a credit facility of some US$210 million to the first defendant ("APBW"), a telecommunications company in Taiwan which operated a mobile phone network. The loan was ostensibly to finance the purchase by APBW of equipment from another Taiwanese company, Huawei. The second defendant, which is the parent company of APBW, guaranteed the loan and became a co-obligor with APBW under the Credit Agreement. At the time the Agreement was made, both defendants were companies in the Rebar Group controlled by the Wang family. Mr Wang Ling-Tai was the Chairman of APBW. In December 2006 he and other members of his family were indicted for fraud in Taiwan. From February 2007 both defendant companies have been under new management.

3  Clause 34 of the Credit Agreement provided that the Agreement was governed by English law. Clause 35 was an exclusive jurisdiction clause in the following terms:

> Enforcement
>
> Jurisdiction
> (a)  The English courts have exclusive jurisdiction to settle any dispute in connection with any Finance Document.
>
> (b)  The English courts are the most appropriate and convenient courts to settle any such dispute in connection with any Finance Document. Each Obligor agrees not to argue to the contrary and waives objection to those courts

on the grounds of inconvenient forum or otherwise in relation to proceedings in connection with any Finance Document.

(c)  This clause is for the benefit of the Finance Parties only. To the extent allowed by law, a Finance Party may take:

(i)  proceedings in any other court; and

(ii)  concurrent proceedings in any number of jurisdictions.

(d)  References in this Clause to a dispute in connection with a Finance Document includes any dispute as to the existence, validity or termination of that Finance Document."

This is as wide a jurisdiction clause as is readily conceivable.

4  The credit facility was duly provided to APBW, which then made withdrawals under it and paid interest due on sums so withdrawn until about December 2006. No further payments of interest after that date were made and on 9th March 2007 the first claimant, Deutsche Bank AG, as Facility Agent on its own behalf and on behalf of the other lenders, declared various events of default and made formal demand for sums outstanding against both defendants. After various monies had been paid out of escrow accounts, the sums outstanding were equivalent to some US$175 million. The defendants did not pay any part of the sums outstanding and on 30th April 2007 the present proceedings were begun in the Commercial Court in London. The Claim Form (supported by a statement of truth signed by the claimants' solicitors) stated that the Court had jurisdiction on the basis that the defendants were parties to an agreement conferring jurisdiction to which Article 23 of the Judgments Regulation 44/2001 applied. That was, of course, a reference to Clause 35 of the Credit Agreement.

5  The Claim Form was served on the defendants pursuant to Clause 35.2 of the Credit Agreement by service on Law Debenture Corporate Services Limited, being the agent for service within the jurisdiction appointed by the defendants. At that stage no objection was raised as to the jurisdiction of the English Courts. It is perhaps difficult to see how there could have been any such objection.

6  After several extensions of time, the defence was served on 14th September 2007. It is a lengthy document but in essence it contends that the Credit Agreement is void because the members of the Wang family who were the Chairmen of the defendant companies and who signed the Credit Agreement and other documents on behalf of the companies did not have the authority of the companies to enter into the Credit Agreement on their behalf. In particular it is said

• i)  there was no or no effective board resolution of the first defendant to authorise the transaction contemplated and/or evidenced by the various agreements;
• ii)  alternatively, if there was an effective board resolution, the agreements were not authorised because they were not in the best interests of the defendants.
  It is also said that the loan was entered into in order to conceal (or assist in concealing) misappropriations of about US$800 million of company money made by members of the Wang family.

7  The essence of the defendants' case is, therefore, that the transaction involving the Credit Agreement was entered into by the Wang family as part of a large scale fraud perpetrated by them upon the defendant companies, including the extraction of large sums of money which the credit facility transaction was designed to conceal. It is said that the supposed board resolutions of the defendant companies were created by the Wang family entirely for their own interest

and in reality board meetings were not held, the family having had complete disregard for the principles of corporate governance. Furthermore, it is the defendants' case that Deutsche Bank knew or ought to have known (i) of the bad reputation of the Wang family in Taiwan and (ii) that this transaction was not in the best interests of the defendant companies and apparently, not therefore enforceable.

8  The claimants served a detailed and lengthy reply which raised two alternative claims for the first time. At a Case Management Conference on 14th November 2007, Flaux J ordered that the claimants should serve any proposed amendment to the Claim Form and Particulars of Claim to raise these alternative claims by 19th November 2007 and that, by 3rd December 2007, the defendants through their solicitors should indicate whether the amendments were accepted or whether the defendants disputed the Court's jurisdiction in relation to the alternative claims. On 13th December 2007, the defendants' solicitors wrote indicating that jurisdiction was indeed disputed. That gave rise to a contested application for permission to amend to plead the alternative claims which Flaux J in due course refused on the grounds that the court had no jurisdiction to determine them, [2008] EWHC 918 Comm, [2008] 2 Lloyds Rep. 177 . Hence this appeal.

9  The two alternative claims set out in the draft amended particulars of claim are:-

- i)  The contention that if the Credit Agreement is void (as the defendants allege but the claimants deny) the monies paid out pursuant to it were paid under a mistake of fact and/or law and/or for a consideration which wholly failed. Accordingly, the claimants claim repayment of the money lent together with interest on the basis that the defendants would be unjustly enriched if they retained the amounts drawn down under the Credit Agreement. This claim can be categorised as a restitutionary claim.
- ii)  The contention that if (as the defendants contend) the Credit Agreement is void because there was no board meeting of the first defendant authorising Mr Wang as its chairman to enter the Credit Agreement, then Mr Wang made misrepresentations to the claimants that such a meeting had taken place, misrepresentations for which the first defendant is said to be liable to the claimants.

10  It will be seen that both the restitution claim and the misrepresentation claim are true alternatives to the primary claim in contract already before the court. These alternative claims only arise if the defendants establish that the Credit Agreement is void for want of authority on one or other of the grounds alleged in the defence. Unless the defendants' case succeeds on one or other basis, the alternative claims are unnecessary because, on that hypothesis, the claimants will succeed on their primary claim in contract.

11  It is now common ground between the parties that the new claims fall within the terms of the exclusive jurisdiction clause contained in the Credit Agreement. What is in dispute is whether the English Court has jurisdiction to try them.

Background to Submissions

12  It is accepted by both parties that, because the first claimant is domiciled in a Member State of the European Union, the right to rely on the jurisdiction clause depends on the terms of Article 23 (1) of the Judgments Regulation ("the Regulation") which provides as follows:

> "If the parties, one or more of whom is domiciled in a Member State, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction. Such jurisdiction shall be

exclusive unless the parties have agreed otherwise. Such an agreement conferring jurisdiction shall be either:

(a) in writing or evidenced in writing;

(b) in a form which accords with the practices which the parties have established between themselves; or

(c) in international trade or commerce, in a form which accords with a usage of which the parties are or ought to have been aware and which in such trade or commerce is widely known to, and regularly observed by, parties to contracts of this type involved in the particular trade or commerce concerned."

13  Article 23 forms part of Section 7 *of* Chapter II of the Regulation, dealing with Jurisdiction. The general provisions in Section 1 of Chapter II include the general rule of jurisdiction that a defendant shall be sued in the courts of his domicile. Article 3 then provides that a defendant domiciled in a Member State may be sued elsewhere only by virtue of the rules set out in Sections 2 – 7 of the Chapter. Section 2 deals with Special Jurisdiction (such as under Article 5 ) and Sections 3 – 6 with jurisdiction under various types of contract. Section 7 is headed "Prorogation of Jurisdiction" and in Article 23 deals with consensual agreements relating to jurisdiction. These provisions are relevant, as a matter of English law, because the claimant bank is itself incorporated and domiciled in a Member State and is thus subject to the Regulation.

14  In the present case, unless jurisdiction in respect of the alternative claims can be founded upon the jurisdiction clause, the English court has no jurisdiction over the defendants in respect of those claims. Although the claimants pursued a case of waiver by the defendants of any objection to the jurisdiction of the English Courts, the judge held that that alternative basis for jurisdiction was hopeless. I would agree with the Judge that the mere submission to the jurisdiction in relation to the primary claim cannot constitute a submission in relation to the alternative claims. In the present case, jurisdiction is either to be derived from the jurisdiction clause or not at all.

15  In Estasis Salotti di Colzani Aimo et Gianmario Colzani v RUWA Polstereimaschinen GmbH (Case 24/76) [1976] ECR 1831, 1841 the European Court of Justice said in relation to Article 17 which was the predecessor of Article 23 :-

"In view of the consequences that such an option may have on the position of parties to the action, the requirements set out in article 17 governing the validity of clauses conferring jurisdiction must be strictly construed.

By making such validity subject to the existence of an 'agreement' between the parties, article 17 imposes on the court before which the matter is brought the duty of examining, first, whether the clause conferring jurisdiction upon it was in fact the subject of a consensus between the parties, which must be clearly and precisely demonstrated.

The purpose of the formal requirements imposed by Article 17 is to ensure that the consensus between the parties is in fact established."

It was therefore held that a jurisdiction clause contained in general conditions on the reverse of the contractual document, on which the parties' signatures appeared, was not the subject of consensus in the absence of a reference on the front of the document to the fact that there were general conditions on the back.

16  Since the question whether the court has jurisdiction always arises on an interlocutory basis before trial, it is recognised that it is possible that a trial may falsify the basis on which jurisdiction has been assumed. For that reason it has been held in England that any fact and matter on which the assumption of jurisdiction by the court depends has to be shown to exist by reference to the test of a "good arguable case". This test was used and explained by Waller LJ in Canada Trust v Stoltenburg [1998] 1 WLR 547 , 555 and approved in connection with Article 23 by Lord Rodger of Earlsferry, delivering the advice of the Privy Council in Bols Distilleries v Superior Yacht Services [2007] 1 WLR 12 at para. 28:-

> "Their Lordships would respectfully join …
>
> in endorsing the approach in the judgment of Waller LJ. Despite the submissions of counsel for the defendants to the contrary, it appears to the Board that, if the standard of "a good arguable case" is properly understood and applied, there is no risk that the effectiveness of the Regulation will be impaired. The rule is that the court must be satisfied, or as satisfied as it can be having regard to the limitations which an interlocutory process imposes, that factors exist which allow the court to take jurisdiction. In practice, what amounts to a "good arguable case" depends on what requires to be shown in any particular situation in order to establish jurisdiction. In the present case, as the law of the Court of Justice emphasises, in order to establish that the usual rule in article 2(1) is ousted by article 23(1), the claimants must demonstrate "clearly and precisely" that the clause conferring jurisdiction on the court was in fact the subject of consensus between the parties. So, applying the "good arguable case" standard, the claimants must show that they have a much better argument than the defendants that, on the material available at present, the requirements of form in article 23(1) are met and that it can be established, clearly and precisely, that the clause conferring jurisdiction on the court was the subject of consensus between the parties."

17  The judge cited this passage as well as some of the relevant principles set out by Lewison J in paragraph 30 of his recent judgment in Knorr-Bremse Systems v Haldex Brake Products [2008] EWHC 156 (Patents).

> "vi)  If there has been no succession, the court seised must ascertain whether the person against whom the jurisdiction clause is invoked actually accepted the jurisdiction clause relied on against him;
>
> vii)  The court must decide this question by reference to the requirements laid down in the first paragraph of article 23 of the Judgments Regulation , which is also a matter of the law of the Regulation, rather than the national law applicable to the substantive provisions of the contract;
>
> viii)  The formal requirements of that paragraph are strict;
>
> ix)  It is for the party relying on the jurisdiction clause to demonstrate clearly and precisely that the formal requirements are met;
>
> x)  The scope of a valid jurisdiction clause, in the sense of delimiting the disputes that fall within it, is a question of the national law governing the contract."

The Submissions

18  Mr Moriarty QC submitted that the claimants have clearly and precisely demonstrated that clause 23 has been the subject of consensus because all the external indicia of consensus are in place in the present case; the contract was signed by Mr Wang on behalf of the first defendant with the relevant corporate and personal chops (a chop is a Taiwanese equivalent to a seal); there were similarly signed board minutes of the first defendant approving the

transaction, the presence of which was a condition precedent to the Credit Agreement and detailed representations were made in the Credit Agreement as to the authority of Mr Wang to enter the transaction. He submitted that these were all compelling factors pointing to consensus. The defendants could only challenge that analysis by resort to national law which set out the circumstances in which a contract would be void for want of authority. This was, however, precisely the dispute which the parties had agreed should be resolved by the neutral English Court. It was further agreed by implication that whatever the result of the dispute it was for the English Court to consider what the appropriate remedy would be. The amendments were made to enable the agreed court to give full and effective relief.

19  Mr Moriarty also had a number of fall back arguments if his primary argument did not find favour with the Court. He submitted that the defendants' pleaded case did not go so far as to establish that, even if Mr Wang had no authority to enter the Credit Agreement, he did not have authority to enter a jurisdiction agreement. Alternatively, he submitted that even if the court had no jurisdiction over the misrepresentation claim (because it was predicated upon the whole Credit Agreement being void, including the jurisdiction clause), the same was not true of the restitution claim. That claim might well succeed not just where the Credit Agreement was void for want of authority but where it was said not to be in the best interests of the defendants, an alternative line of defence which has nothing to do with consent to the jurisdiction clause.

20  Mr Butcher QC on behalf of the defendants submitted that the issue as to consensus between the parties of the jurisdiction clause could not be viewed in isolation from the claims and disputes in relation to which the clause was being prayed in aid. He submitted that the Court could and should make no assumption (let alone any decision) as to whether the test derived from paragraph 28 of Bols Distilleries would have been satisfied in relation to the primary claim in contract as that issue was not and never had been before the Court.

21  Even if the Court were inclined to look at that issue, he submitted that on the material before the Court now (including the defence and response to the request for further information) the claimants could not show that they had much the better of the argument that there was consensus to the jurisdiction clause. He emphasised the strictness of the approach of the European Court of Justice to Article 23 , in circumstances where Article 23 involved a derogation from the general rule of jurisdiction. He referred to the fact that what was required was that the defendant had "really consented to the clause" (paragraph 9 of the judgment in Salotti [1976] ECR 1831 ). He also relied upon the reference to Article 23 being recognition of the "independent will of the parties" in paragraph 14 of the judgment in Coreck Maritime [2000] ECR 1-9937 . He submitted that "real consent" or "independent will" could not be clearly and precisely demonstrated where the defendants' whole case was that the Credit Agreement was unauthorised and part of a wide scale fraud on the companies.

22  Mr Butcher submitted in the alternative that, even if the claimants could show a good arguable case as to the validity of the jurisdiction clause in relation to their primary contractual claim, they could not use that to found jurisdiction for an alternative claim which was predicated upon the whole Credit Agreement being void. He challenged the suggestion that the defendants had not pleaded that there was no authority to enter into the jurisdiction clause where the pleaded case was that the whole transaction was unauthorised. The fact that Mr Wang might have had authority to enter a jurisdiction agreement in a contract within the normal business of the first defendant of the rental of mobile phones was nothing to the point. The issue was whether the claimants could demonstrate that he had authority to enter the particular jurisdiction clause in the Credit Agreement the purpose of which clause was to resolve any disputes in connection with that Agreement. The claimants simply had no material at all from which they could demonstrate that this jurisdiction clause was somehow authorised.

Discussion

23  One starts with the proposition that if a claimant wishes to rely on a jurisdiction clause pursuant to Article 23 , he must demonstrate clearly and precisely that the clause was the subject of a consensus between the parties. If that is in dispute the claimant must show that on the available material the requirements of form in Article 23(1) are met and that the clause was the subject of consensus. The formal requirements of Article 23 are met in this case inasmuch as the agreement confirming jurisdiction is itself in writing and contained in a written agreement. That agreement has been signed or 'chopped' by all the parties. In those circumstances it is clear that consensus was reached on the clause. It is not a case, such as Bols Distilleries was, in which, although there was a written jurisdiction clause, there was no final agreement reached between the parties at all. It seems to me, therefore, that the formal requirements of Article 23 are met subject to the argument that the Taiwanese signatories had no authority to conclude the Credit Agreement.

24  The next proposition is that a jurisdiction clause, like an arbitration clause, is a separable agreement from the agreement as a whole. This is uncontroversial both as a matter of domestic law (see Mackender v Feldia [1967] 2 QB 590 and Fiona Trust v Privalov [2008] 1 Lloyds Rep 254; [2007] Bus. L.R. 1719 ) and as a matter of European law (see Benincasa v Dentalkit SRL [1997] ECR 1-3767 and Briggs, Civil Jurisdiction and Judgments (4th ed. 2005) para. 2 105 esp. at page 131). It follows that disputes about the validity of the contract must, on the face of it, be resolved pursuant to the terms of the clause and, indeed, the last sentence of the clause expressly so provides. It is only if the jurisdiction clause is itself under some specific attack that a question can arise whether it is right to invoke the jurisdiction clause. Examples of this might be fraud or duress alleged in relation specifically to the jurisdiction clause. Another example might be if the signatures to the agreement were alleged to be forgeries, although no authority has so far so stated. Even in such a case someone has to decide whether the signatures were in fact forged. It might well be thought that a mere allegation to that effect could not have the effect of rendering a jurisdiction clause inapplicable.

25  The importance of this concept of separability is that it shows that it cannot be the case that every claim made on the basis that a contract is void or has never come into existence must fall outside the terms of a jurisdiction clause expressed as widely as that in the present case. If for example, a prepayment has been made pursuant to a supposed building contract which is subsequently held to be void or never to have existed, the court so holding (by virtue of the exclusive jurisdiction clause) must, in my view, be able to order the return of the payment made. It would be absurd if that court had to decline all further jurisdiction and require the claimant to go, for that purpose, to the courts of the defendant's domicile. Similarly, if the English court in the present case proceeds to hold that insufficient notice was given of the Board meeting at which it was resolved that the defendants should enter the Credit Agreement, and that for that reason the agreement was unauthorised and must be treated as not binding on the defendants, it would again be little short of absurd that the English court could not order the return of the capital actually borrowed if it was otherwise right to do so. If that were the case, the court agreed by the parties for the resolution of their dispute could not give full and effective relief; that would be contrary to the doctrine of separability. That these propositions are uncontroversial as a matter of English law is shown by Caterpillar Finances v SNC Passion [2004] 2 Lloyds Rep 99 , 103 para 16 where Cooke J held that a claim for the return of the principal (if the contract was invalid) was a claim in connection with the loan agreement "since without that agreement no sum would have been advanced at all".

26  The judge accepted these propositions as a matter of construction of the agreement in paras 43-46 of his judgment but decided against the claimants because they had not established "a good arguable case as to the validity of the jurisdiction clause". By this he meant that the claimants had not been able to establish that the clause was "really agreed" because the defendants were plausibly asserting that the agreement had been signed without authority. That is, however, the very conclusion that the doctrine of separability is designed to avoid. If, of course, (on analysis) it appears, as it did in Bols Distilleries that no agreement was concluded because the parties were still in the realms of negotiation then one can see that there was no agreement about anything (including any jurisdiction clause which might well have been agreed as part of any concluded agreement). But that is not the present case where an agreement was undoubtedly concluded but the only question is whether it was an authorised agreement. By virtue of the separability principle there can be little doubt that the English court has jurisdiction to determine that question; once that conclusion is reached it must, to my view, also have jurisdiction to determine the consequences of any such decision.

27  In paras 17 and 18 of Fiona Trust Lord Hoffmann drew a distinction between cases of "no authority whatever" (e.g. an agreement signed by the office cleaner) and cases of "excess of authority" [2008] 1 Lloyds at pages 257 - 258 .

> "17. … If a party alleges that someone who purported to sign as agent on his behalf had no authority whatever to conclude any agreement on his behalf, that is an attack on both the main agreement and the arbitration agreement.
>
> 18.  On the other hand, if (as in this case) the allegation is that the agent exceeded his authority by entering into a main agreement in terms which were not authorised or for improper reasons, that is not necessarily an attack on the arbitration agreement. It would have to be shown that whatever the terms of the main agreement or the reasons for which the agent concluded it, he would have had no authority to enter into an arbitration agreement."

The present case falls more naturally within the second category than the first, since there can be no doubt that, in general terms, the Chairman of a company has authority to enter into loan agreements on the company's behalf. As a matter of English law, therefore, there can be little doubt that the alternative claims would be covered by the jurisdiction clause.

28  In coming to his conclusion the judge was heavily influenced by the authorities of the European Court requiring "real consent" ( Salotti para 9) and a demonstration of "independent will" ( Coreck Maritime 2000 ECR 1 – 9937 ). He said that in the light of those authorities the European Court would not consider the requisite consensus to be established merely by showing an agreement signed by an agent whose authority to do so was denied. This, in my view, is to read too much into these authorities. There is no indication in Article 23 itself that jurisdiction clauses should be restricted in their ambit, as opposed to the undoubted requirement that they be strictly proved to exist. The Article does not even require that any such agreement must be in writing or evidenced in writing since it can be in a form which accords with the parties' own established practices or in a form widely known to and regularly observed by parties to contracts of the relevant type if it is a contract made in international trade or commerce. In this context the relatively broad construction given to this last possibility in MSG v Gravieres Rhenanes case C-106/96 [1997] ECR 1-911 may be noted. The most that can be said is that Article 23 is comparatively restrictive so far as concerns contracts which are not (or not evidenced) in writing. No doubt the purpose of that comparative restriction is to ensure that such clauses (if not in writing) are not relied on if there is, in fact, no true consensus between the parties.

29  But I do not read the authorities as laying down any requirement that such clauses are not to apply if there is a (plausible) allegation that the contracts, in which such clause are contained, are vitiated by mistake, misrepresentation, illegality, lack of authority or lack of capacity. That would be to deny the concept of separability which is as much part of European law as English law. Separability was indeed a doctrine in many European jurisdictions well before it was acknowledged in English law, see Harbour v Kansa [1993] 1 QB 701 especially per Leggatt LJ. Benincasa is a case in which jurisdiction was assumed under Article 5 by the courts of the place of performance despite allegations of illegality, fraud and misrepresentation. Effer v Kantner [1982] ECR 825 was a similar case in which the (plausible) allegation was that there was no contract with the claimant at all but rather with a third party. It is difficult to think that a different answer would have been given by the European Court in either case if there had been a written jurisdiction clause and Article 23 (rather than Article 5 ) was being relied on.

30  Salotti [1976] ECR 1831 was the case in which the European Court held that the court hearing the case had to determine whether the clause conferring jurisdiction was in fact the subject of consensus "which must be clearly and precisely demonstrated" and also held that the purpose of the Article's formal requirements was to ensure that that consensus was in fact established. That is authority for the proposition that if the formal requirements are established (e.g. that the clause is in writing) that will be enough to ensure that consensus is established for the purpose of enabling the case to be determined. It is no support for a proposition that a plausible contention of lack of authority renders the clause inapplicable. The use of the phrase "independent will of the parties" in Coreck Maritime v Henderson BV [2000] ECR 1 – 9337 , 9371 para. 14 was not intended to express any different concept but was only used to support the conclusion that a jurisdiction clause in a bill of lading was an expression of that independent will (and would bind the receiver of the cargo) even though the clause did not itself identify the agreed court but merely provided that it was to be the court of the country where the carrier had his principal place of business.

31  In paras 31-34 of his judgment, the judge appears to contemplate that there might be sufficient consensus between the parties that the primary dispute as to authority can be resolved by the English court but not sufficient consensus that the court should determine alternative claims "predicated upon the agreement containing the jurisdiction clause being unauthorised and void". To my mind this is a curious conclusion. To require separate consensuses for separate claims is an artificial concept which is most unlikely to accord with contracting parties' intentions and is unlikely to have commended itself to the framers of the Regulation.

32  Mr Butcher relied on Kleinwort Benson Ltd v Glasgow City Council [1999] 1 AC 153 as showing that restitutionary claims are different from contractual claims for the purpose of Article 5 of the Regulation and submitted that the same position applied under Article 23 . In that case the House of Lords held that a claim for return of money paid pursuant to an *ultra vires* swap contract could not be brought in England pursuant to the domestic equivalent of Article 5 of the Regulation which entitled a claimant to sue "in matters relating to a contract, in the courts for the place of performance of the obligation in question". If there was no contract there could be no place of performance of the contractual obligation and the claim had to be brought in the defendants domicile (Scotland). That was a very different case. Here the question is whether there was a jurisdiction agreement and, if so, what claims come within that agreement. As a matter of English law there was such an agreement and the alternative claims come within the agreement. The fact that the terms of Article 23 of the Regulation have to be (and can be seen to have been) complied with should make no difference.

Conclusion

33  For my part, therefore, I would decline Mr Butcher's invitation not to make any decision whether the primary claim falls within the jurisdiction clause. I would decide that that claim is within the jurisdiction clause which is itself within Article 23 of the Regulation. It must follow from this that, both as a matter of construction of the clause and as a matter of European law, the alternative claims also come within the terms of Article 23 and that the English court has jurisdiction to resolve those claims or, at the very least, that there is a good arguable case to that effect.

34  I would allow this appeal and allow the proposed amendments accordingly.

Lord Justice Keene:

35  I agree.

Lord Justice Laws:

36  I also agree.