# EXHIBIT 10

JUDGMENT OF THE COURT (Sixth Chamber)

13 July 2000 *

In Case C-412/98,

REFERENCE to the Court under the Protocol of 3 June 1971 on the interpretation by the Court of Justice of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters by the Cour d'Appel, Versailles, France, for a preliminary ruling in the proceedings pending before that court between

**Group Josi Reinsurance Company SA**

and

**Universal General Insurance Company (UGIC),**

on the interpretation of the provisions of Title II of the Convention of 27 September 1968, cited above (OJ 1972 L 299, p. 32), as amended by the Convention of 9 October 1978 on the Accession of the Kingdom of Denmark, Ireland and the United Kingdom of Great Britain and Northern Ireland (OJ 1978 L 304, p. 1; amended version of the Convention at p. 77), by the Convention of 25 October 1982 on the Accession of the Hellenic Republic (OJ 1982 L 388, p. 1) and by the Convention of 26 May 1989 on the Accession of the Kingdom of Spain and the Portuguese Republic (OJ 1989 L 285, p. 1),

* Language of the case: French.

I - 5940

THE COURT (Sixth Chamber),

composed of: J.C. Moitinho de Almeida, President of the Chamber, R. Schintgen (Rapporteur), J.-P. Puissochet, G. Hirsch and F. Macken, Judges,

Advocate General: N. Fennelly,
Registrar: D. Louterman-Hubeau, Principal Administrator,

after considering the written observations submitted on behalf of:

— Group Josi Reinsurance Company SA, by C. Bouckaert, of the Paris Bar,

— Universal General Insurance Company (UGIC), by B. Mettetal, of the Paris Bar,

— the French Government, by K. Rispal-Bellanger, Head of Subdirectorate in the Legal Affairs Directorate of the Ministry of Foreign Affairs, and R. Loosli-Surrans, Chargé de Mission in the same directorate, acting as Agents,

— the United Kingdom Government, by R. Magrill, of the Treasury Solicitor's Department, acting as Agent, assisted by D. Lloyd Jones, Barrister,

— the Commission of the European Communities, by J.L. Iglesias Buhigues, Legal Adviser, and A.X. Lewis, of its Legal Service, acting as Agents,

having regard to the Report for the Hearing,

after hearing the oral observations of the French Government and the Commission at the hearing on 10 February 2000,

after hearing the Opinion of the Advocate General at the sitting on 9 March 2000,

gives the following

## Judgment

1    By judgment of 5 November 1998, received at the Court on 19 November 1998, the Cour d'Appel (Court of Appeal), Versailles, referred to the Court for a preliminary ruling under the Protocol of 3 June 1971 on the interpretation by the Court of Justice of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters two questions on the interpretation of the provisions of Title II of that convention (OJ 1972 L 299, p. 32), as amended by the Convention of 9 October 1978 on the Accession of the Kingdom of Denmark, Ireland and the United Kingdom of Great Britain and Northern Ireland (OJ 1978 L 304, p. 1; amended version of the Convention at p. 77), by the Convention of 25 October 1982 on the Accession of the Hellenic

Republic (OJ 1982 L 388, p. 1) and by the Convention of 26 May 1989 on the Accession of the Kingdom of Spain and the Portuguese Republic (OJ 1989 L 285, p. 1) (hereinafter 'the Convention').

2   Those questions were raised in proceedings between Universal General Insurance Company ('UGIC'), in liquidation, an insurance company incorporated under Canadian law, having its registered office in Vancouver, Canada, and Group Josi Reinsurance Company SA ('Group Josi'), a reinsurance company incorporated under Belgian law, having its registered office in Brussels, concerning a sum of money claimed by UGIC from Group Josi in its capacity as party to a reinsurance contract.

**The Convention**

3   The rules of jurisdiction laid down by the Convention are to be found in Title II thereof, which contains Articles 2 to 24.

4   Article 2 of the Convention, which forms part of Section 1, entitled 'General provisions', of Title II, states:

'Subject to the provisions of this convention, persons domiciled in a Contracting State shall, whatever their nationality, be sued in the courts of that State.

I - 5943

JUDGMENT OF 13. 7. 2000 — CASE C-412/98

Persons who are not nationals of the State in which they are domiciled shall be governed by the rules of jurisdiction applicable to nationals of that State.'

5   The first paragraph of Article 3 of the Convention, which is part of the same section, provides:

'Persons domiciled in a Contracting State may be sued in the courts of another Contracting State only by virtue of the rules set out in Sections 2 to 6 of this title.'

6   The second paragraph of Article 3 of the Convention prohibits a plaintiff from relying on special rules of jurisdiction in force in the Contracting States which are based, in particular, on the nationality of the parties and on the plaintiff's domicile or residence.

7   Article 4, which also forms part of Section 1 of Title II of the Convention, states:

'If the defendant is not domiciled in a Contracting State, the jurisdiction of the courts of each Contracting State shall, subject to the provisions of Article 16, be determined by the law of that State.

I - 5944

As against such a defendant, any person domiciled in a Contracting State may, whatever his nationality, avail himself in that State of the rules of jurisdiction there in force, and in particular those specified in the second paragraph of Article 3, in the same way as the nationals of that State.'

8    In Sections 2 to 6 of Title II, the Convention lays down rules of special or exclusive jurisdiction.

9    Thus, under Article 5, which is part of Section 2, entitled 'Special jurisdiction', of Title II of the Convention:

'A person domiciled in a Contracting State may, in another Contracting State, be sued:

1.   in matters relating to a contract, in the courts for the place of performance of the obligation in question; ...

2.   in matters relating to maintenance, in the courts for the place where the maintenance creditor is domiciled or habitually resident ...

...,'

10    Articles 7 to 12a constitute Section 3, entitled 'Jurisdiction in matters relating to insurance', of Title II of the Convention.

11    Article 7 of the Convention states:

'In matters relating to insurance, jurisdiction shall be determined by this section ...'

12    Article 8 of the Convention provides:

'An insurer domiciled in a Contracting State may be sued:

1.  in the courts of the State where he is domiciled, or

2.  in another Contracting State, in the courts for the place where the policy-holder is domiciled, or

I - 5946

3.  if he is a co-insurer, in the courts of a Contracting State in which proceedings are brought against the leading insurer.

An insurer who is not domiciled in a Contracting State but has a branch, agency or other establishment in one of the Contracting States shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that State.'

13  Section 4 of Title II of the Convention contains rules of jurisdiction over consumer contracts.

14  The first paragraph of Article 14, which is part of that section, states:

'A consumer may bring proceedings against the other party to a contract either in the courts of the Contracting State in which that party is domiciled or in the courts of the Contracting State in which he is himself domiciled.'

15  Article 16, which constitutes Section 5 of Title II of the Convention, lays down certain rules of exclusive jurisdiction and states that they are to apply 'regardless of domicile'.

16   Under the first paragraph of Article 17, which is part of Section 6, entitled 'Prorogation of jurisdiction', of Title II of the Convention:

'If the parties, one or more of whom is domiciled in a Contracting State, have agreed that a court or the courts of a Contracting State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have exclusive jurisdiction. ...'

17   Article 18, which also forms part of Section 6, states:

'Apart from jurisdiction derived from other provisions of this convention, a court of a Contracting State before whom a defendant enters an appearance shall have jurisdiction. This rule shall not apply where appearance was entered solely to contest the jurisdiction, or where another court has exclusive jurisdiction by virtue of Article 16.'

**The main proceedings**

18   It is apparent from the documents in the case in the main proceedings that UGIC instructed its broker, Euromepa, a company incorporated under French law, having its registered office in France, to procure a reinsurance contract with effect from 1 April 1990 in relation to a portfolio of comprehensive home-occupiers' insurance polices based in Canada.

19   By fax dated 27 March 1990, Euromepa offered Group Josi a share in that reinsurance contract, stating that 'the main reinsurers are Union Ruck with 24% and Agrippina Ruck with 20%'.

20   By fax of 6 April 1990, Group Josi agreed to acquire a 7.5% share.

21   On 28 March 1990, Union Ruck had told Euromepa that it did not intend to retain its share after 31 May 1990 and, by letter of 30 March 1990, Agrippina Ruck had informed the same broker that it would reduce its share to 10% with effect from 1 June 1990, the reason for those withdrawals being changes in economic policy imposed by the American-based parent companies of those insurance undertakings.

22   On 25 February 1991, Euromepa sent Group Josi first a statement of account showing a debit balance and then a final calculation showing that Group Josi owed CAD 54 679.34 in respect of its share in the reinsurance transaction.

23   By letter of 5 March 1991, Group Josi refused to pay that amount, essentially on the ground that it had been induced to enter into the reinsurance contract by the provision of information which subsequently turned out to be false.

24   In those circumstances, on 6 July 1994, UGIC brought proceedings against Group Josi before the Tribunal de Commerce (Commercial Court), Nanterre, France.

25   Group Josi argued that that court lacked jurisdiction since the Tribunal de Commerce, Brussels, within whose territorial jurisdiction it has its registered office, had jurisdiction, and it relied, first, on the Convention and, second, in the event of the general law being found to apply, on Article 1247 of the French Code Civil (Civil Code).

I - 5949

26    By judgment of 27 July 1995, the Tribunal de Commerce, Nanterre, held that it had jurisdiction on the ground that UGIC is a company incorporated under Canadian law without a place of business in the Community and that the objection of lack of jurisdiction raised on the basis of the Convention cannot be applied to it. On the substance, the court ordered Group Josi to pay the sum claimed by UGIC, plus statutory interest as from 6 July 1994.

27    Group Josi subsequently appealed against that judgment before the Cour d'Appel, Versailles.

28    In support of its appeal, Group Josi submitted that the Convention applies to any dispute in which a connecting factor with the Convention is apparent. In the present case, the Convention should apply. The main connecting factor is that specified in the first paragraph of Article 2 of the Convention, namely the defendant's domicile. Since Group Josi has its registered office in Brussels and no subsidiary place of business in France, it can, in accordance with that provision, be sued only in a Belgian court. In addition, Group Josi relied on Article 5(1) of the Convention, arguing in this respect that the obligation in question, being payment of a contractual debt, was, in the absence of any stipulation to the contrary in the reinsurance contract, to be performed in the debtor's place of domicile, namely Brussels.

29    UGIC, on the other hand, contended that the rules of jurisdiction established by the Convention can apply only if the plaintiff is also domiciled in a Contracting State. Since UGIC is a company incorporated under Canadian law with no subsidiary place of business in a Contracting State, the Convention is not applicable in the present case.

30    The Cour d'Appel observed, first, that, although a dispute may be regarded as sufficiently integrated into the European Community to justify jurisdiction being vested in the courts of a Contracting State where, as in the present case, the defendant is domiciled in a Contracting State, it is a different question whether

I - 5950

the specific rules of that convention can be used against a plaintiff domiciled in a non-Contracting State, which would necessarily entail extending Community law to non-member countries.

31 Second, the Cour d'Appel noted that Article 7 of the Convention simply refers to matters relating to 'insurance' without specifying further, so that the question arises whether reinsurance falls within the scope of the autonomous system of jurisdiction established by Articles 7 to 12a of the Convention. In this respect, it might be considered that the purpose of those articles is to protect the insured as the weak party to the insurance contract and that there is no such characteristic in matters of reinsurance, but, on the other hand, the text of the Convention does not contain any exclusion on that point.

**The questions referred for preliminary ruling**

32 Taking the view that, in those circumstances, the resolution of the dispute required an interpretation of the Convention, the Cour d'Appel, Versailles, decided to stay proceedings and to refer the following two questions to the Court for a preliminary ruling:

'1. Does the Brussels Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters apply not only to "intra-Community" disputes but also to disputes which are "integrated into the Community"? More particularly, can a defendant established in a Contracting State rely on the specific rules on jurisdiction set out in that convention against a plaintiff domiciled in Canada?

I - 5951

2. Do the rules on jurisdiction specific to matters relating to insurance set out in Article 7 et seq. of the Brussels Convention apply to matters relating to reinsurance?'

**The first question**

33   By its first question, the national court essentially seeks to ascertain whether the rules of jurisdiction laid down by the Convention apply where the defendant has its domicile or seat in a Contracting State, even if the plaintiff is domiciled in a non-member country.

34   In order to answer that question, it is important to state at the outset that the system of common rules on conferment of jurisdiction established in Title II of the Convention is based on the general rule, set out in the first paragraph of Article 2, that persons domiciled in a Contracting State are to be sued in the courts of that State, irrespective of the nationality of the parties.

35   That jurisdictional rule is a general principle, which expresses the maxim *actor sequitur forum rei*, because it makes it easier, in principle, for a defendant to defend himself (see, to that effect, Case C-26/91 *Handte* v *Traitements Mécano-chimiques des Surfaces* [1992] ECR I-3967, paragraph 14; see also the Jenard Report on the Brussels Convention (OJ 1979 C 59, p. 1, 18)).

36   It is only by way of derogation from that fundamental principle, that the courts of the Contracting State in which the defendant has its domicile or seat are to have

I - 5952

jurisdiction, that the Convention provides, under the first paragraph of Article 3 thereof, for the cases, exhaustively listed in Sections 2 to 6 of Title II, in which a defendant domiciled or established in a Contracting State may, where the situation is covered by a rule of special jurisdiction, or must, where it is covered by a rule of exclusive jurisdiction or a prorogation of jurisdiction, be excluded from the jurisdiction of the courts of the State in which it is domiciled and sued in a court of another Contracting State.

3⁻   In that context, Sections 2 to 6 of Title II of the Convention include certain specific provisions which, for the purpose of determining which court has jurisdiction, depart from the general criterion of the domicile of the defendant by according, exceptionally, a certain influence to the domicile of the plaintiff.

38   Thus, first, in order to facilitate the proceedings brought by a maintenance creditor, Article 5(2) of the Convention gives that person the option to sue the defendant, in a Contracting State other than that of the defendant's domicile, in the courts for the place where the plaintiff is domiciled or habitually resident.

39   Similarly, also with the aim of protecting the party deemed to be weaker than the other party to the contract, point 2 of the first paragraph of Article 8 and the first paragraph of Article 14 of the Convention provide, respectively, that a holder of an insurance policy and a consumer have the right to bring proceedings against the other party to their contract in the courts of the Contracting State in which they are domiciled.

40   Although those rules of special jurisdiction give importance, exceptionally, to the plaintiff's domicile being in a Contracting State, they none the less constitute only an additional option for the plaintiff, alongside the forum of the courts of the



Contracting State where the defendant is domiciled, which constitutes the general rule underlying the Convention.

41    Second, Article 17 of the Convention provides for the exclusive jurisdiction of a court or the courts of a Contracting State chosen by the parties, so long as one of the parties is domiciled in a Contracting State.

42    That condition does not necessarily refer to the defendant's domicile, so that the place of the plaintiff's domicile may, where appropriate, be decisive. However, it also follows from that provision that the rule of jurisdiction set out therein is applicable if the defendant is domiciled in a Contracting State, even if the plaintiff is domiciled in a non-member country (see, to that effect, the Jenard Report, cited above, p. 38).

43    On the other hand, the other provisions in Sections 2 to 6 of Title II of the Convention do not attach any importance to the plaintiff's domicile.

44    Admittedly, under Article 18 of the Convention, the voluntary appearance of the defendant establishes the jurisdiction of a court of a Contracting State before which the plaintiff has brought proceedings, without the place of the defendant's domicile being relevant.

45    However, although the court seised must be that of a Contracting State, that provision does not further require that the plaintiff be domiciled in such a State.

46    The same conclusion can be drawn from Article 16 of the Convention, which states that the rules of exclusive jurisdiction which it lays down are to apply

without the domicile of the parties being taken into consideration. The fundamental reason for those rules of exclusive jurisdiction is the existence of a particularly close connection between the dispute and a Contracting State, irrespective of the domicile both of the defendant and of the plaintiff (as regards, more specifically, in proceedings having as their object tenancies of immovable property, the exclusive jurisdiction of the courts of the Contracting State in which the property is situated, see, in particular, Case C-8/98 *Dansommer* v *Götz* [2000] ECR I-393, paragraph 27).

47    In the light of the foregoing, the Court finds that it is only in quite exceptional cases that Title II of the Convention accords decisive importance, for the purpose of conferring jurisdiction, to the plaintiff's domicile being in a Contracting State. That is the case only if the plaintiff exercises the option open to him under Article 5(2), point 2 of the first paragraph of Article 8 and the first paragraph of Article 14 of the Convention, and also in matters relating to prorogation of jurisdiction under Article 17 of the Convention, solely where the defendant's domicile is not situated in a Contracting State.

48    None of those specific cases is applicable in the case in the main proceedings.

49    Furthermore, it is settled case-law that the rules of jurisdiction which derogate from the general principle, set out in the first paragraph of Article 2 of the Convention, that the courts of the Contracting State in which the defendant is domiciled or established are to have jurisdiction, cannot give rise to an interpretation going beyond the cases expressly envisaged by the Convention (see, in particular, *Handte*, paragraph 14; Case C-89/91 *Shearson Lehman Hutton* v *TVB* [1993] ECR I-139, paragraphs 15 and 16; Case C-269/95 *Benincasa* v *Dentalkit* [1997] ECR I-3767, paragraph 13; and Case C-51/97 *Réunion Européenne and Others* [1998] ECR I-6511, paragraph 16).

JUDGMENT OF 13. 1. 2006 — CASE C-412/98

50    In addition, as is already clear from the second paragraph of Article 3 of the Convention, which prohibits a plaintiff from invoking against a defendant domiciled in a Contracting State national rules of jurisdiction based, in particular, on the plaintiff's domicile or residence, the Convention appears clearly hostile towards the attribution of jurisdiction to the courts of the plaintiff's domicile (see Case C-220/88 *Dumez France and Tracoba* [1990] ECR I-49, paragraph 16; and *Shearson Lehman Hutton*, paragraph 17). It follows that the Convention must not be interpreted as meaning that, otherwise than in the cases expressly provided for, it recognises the jurisdiction of the courts of the plaintiff's domicile and therefore enables a plaintiff to determine the court with jurisdiction by his choice of domicile (see, to that effect, *Dumez France and Tracoba*, paragraph 19).

51    Article 4 of the Convention provides, admittedly, for a derogation from the rule laid down in the second paragraph of Article 3. Article 4 states that, if the defendant is not domiciled in a Contracting State, jurisdiction is to be determined by the law in force in each Contracting State, subject only to Article 16, which applies regardless of domicile, and that, as against such a defendant, a plaintiff domiciled in a Contracting State has the right to avail himself in that State of the special rules of jurisdiction there in force of which an illustrative list appears in the second paragraph of Article 3 of the Convention.

52    However, in so far as Article 4 of the Convention provides that the rules of jurisdiction laid down by the Convention are not applicable where the defendant is not domiciled in a Contracting State, it constitutes a confirmation of the fundamental principle set out in the first paragraph of Article 2 of the Convention.

53    In the light of all the foregoing, it must be concluded that the system of rules on conferment of jurisdiction established by the Convention is not usually based on the criterion of the plaintiff's domicile or seat.

54    Moreover, as is clear from the wording of the second paragraph of Article 2 and the second paragraph of Article 4 of the Convention, nor is that system based on the criterion of the nationality of the parties.

55    The Convention enshrines, on the other hand, the fundamental principle that the courts of the Contracting State in which the defendant is domiciled or established are to have jurisdiction.

56    As is clear from paragraph 47 above, it is only by way of exception to that general rule that the Convention includes certain specific provisions which, in clearly defined cases, accord an influence to the plaintiff's domicile.

57    It follows that, as a general rule, the place where the plaintiff is domiciled is not relevant for the purpose of applying the rules of jurisdiction laid down by the Convention, since that application is, in principle, dependent solely on the criterion of the defendant's domicile being in a Contracting State.

58    It would be otherwise only in exceptional cases where the Convention makes that application of the rules of jurisdiction expressly dependent on the plaintiff being domiciled in a Contracting State.

59    Consequently, the Convention does not, in principle, preclude the rules of jurisdiction which it sets out from applying to a dispute between a defendant domiciled in a Contracting State and a plaintiff domiciled in a non-member country.

60    As the Advocate General observed in paragraph 21 of his Opinion, it is thus fully in accordance with that finding that the Court has interpreted the rules of jurisdiction laid down by the Convention in cases where the plaintiff had his domicile or seat in a non-member country, although the provisions of the Convention in question did not establish any exception to the general principle that the courts of the Contracting State in which the defendant is domiciled are to have jurisdiction (see Case C-190/89 *Rich* [1991] ECR I-3855; and Case C-406/92 *The Tatry* [1994] ECR I-5439).

61    In those circumstances, the answer to the first question must be that Title II of the Convention is in principle applicable where the defendant has its domicile or seat in a Contracting State, even if the plaintiff is domiciled in a non-member country. It would be otherwise only in exceptional cases where an express provision of the Convention provides that the application of the rule of jurisdiction which it sets out is dependent on the plaintiff's domicile being in a Contracting State.

**The second question**

62    In this respect, it must be observed, first, that the rules of jurisdiction in matters relating to insurance, laid down in Section 3 of Title II of the Convention, apply expressly to certain specific types of insurance contracts, such as compulsory insurance, liability insurance, insurance of immovable property and marine and aviation insurance. Furthermore, point 3 of the first paragraph of Article 8 of the Convention expressly refers to co-insurance.

I - 5958

GROOUJSI 1609

63    On the other hand, reinsurance is not mentioned in any of the provisions of that section.

64    First, according to settled case-law, it is apparent from a consideration of the provisions of Section 3 of Title II of the Convention in the light of the documents leading to their enactment that, in affording the insured a wider range of jurisdiction than that available to the insurer and in excluding any possibility of a clause conferring jurisdiction for the benefit of the insurer, they reflect an underlying concern to protect the insured, who in most cases is faced with a predetermined contract the clauses of which are no longer negotiable and is the weaker party economically (Case 201/82 *Gerling and Others* v *Amministrazione del Tesoro dello Stato* [1983] ECR 2503, paragraph 17).

65    The role of protecting the party deemed to be economically weaker and less experienced in legal matters than the other party to the contract which is fulfilled by those provisions implies, however, that the application of the rules of special jurisdiction laid down to that end by the Convention should not be extended to persons for whom that protection is not justified (see, by analogy, in respect of Article 13 et seq. of the Convention in relation to jurisdiction over consumer contracts, *Shearson Lehmann Hutton*, paragraph 19).

66    No particular protection is justified as regards the relationship between a reinsured and his reinsurer. Both parties to the reinsurance contract are professionals in the insurance sector, neither of whom can be presumed to be in a weak position compared with the other party to the contract.

67    It is thus in accordance with both the letter and the spirit and purpose of the provisions in question to conclude that they do not apply to the relationship between a reinsured and his reinsurer in connection with a reinsurance contract.

I - 5959



68    That interpretation is confirmed by the system of rules of jurisdiction established by the Convention.

69    Thus Section 3 of Title II of the Convention includes rules which confer jurisdiction on courts other than those of the Contracting State in which the defendant is domiciled. In particular, point 2 of the first paragraph of Article 8 of the Convention provides that the courts for the place where the policy-holder is domiciled are to have jurisdiction.

70    As has already been noted in paragraph 49 above, it is settled case-law that the rules of jurisdiction which derogate from the general principle, laid down in the first paragraph of Article 2 of the Convention, that the courts of the Contracting State in which the defendant is domiciled are to have jurisdiction, cannot give rise to an interpretation going beyond the cases envisaged by the Convention.

71    That interpretation is all the more valid in the case of a rule of jurisdiction such as that laid down in point 2 of the first paragraph of Article 8 of the Convention, which enables the policy-holder to sue the defendant in the courts of the Contracting State in which the plaintiff is domiciled.

72    For the reasons more fully set out in paragraph 50 above, the framers of the Convention demonstrated their hostility towards the attribution of jurisdiction to the courts of the plaintiff's domicile otherwise than in the cases for which it expressly provides.

I - 5960

GROUP JOSI

73   It follows that Section 3 of Title II of the Convention may not be regarded as applying to the relationship between a reinsured and his reinsurer in connection with a reinsurance contract.

74   That interpretation is also supported by the Schlosser Report on the Convention of Accession of the Kingdom of Denmark, Ireland and the United Kingdom of Great Britain and Northern Ireland to the Brussels Convention (OJ 1979 C 59, p. 71, 117), according to which '[r]einsurance contracts cannot be equated with insurance contracts. Accordingly, Articles 7 to 12 do not apply to reinsurance contracts'.

75   However, as the Commission rightly pointed out, although the rules of special jurisdiction in matters relating to insurance do not refer to disputes between a reinsured and his reinsurer in connection with a reinsurance contract, such as that at issue in the main proceedings, they are, on the other hand, fully applicable where, under the law of a Contracting State, the policy-holder, the insured or the beneficiary of an insurance contract has the option to approach directly any reinsurer of the insurer in order to assert his rights under that contract as against that reinsurer, for example in the case of the bankruptcy or liquidation of the insurer. In such a situation, the plaintiff is in a weak position compared with the professional reinsurer, so that the objective of special protection inherent in Article 7 et seq. of the Convention justifies the application of the special rules which it lays down.

76   In the light of all the foregoing, the answer to the second question must be that the rules of special jurisdiction in matters relating to insurance set out in Articles 7 to 12a of the Convention do not cover disputes between a reinsurer and a reinsured in connection with a reinsurance contract.

I - 5961

JUDGMENT OF 13. 7. 2000 — CASE C-412/98

**Costs**

77    The costs incurred by the French and United Kingdom Governments and by the Commission, which have submitted observations to the Court, are not recoverable. Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court.

On those grounds,

THE COURT (Sixth Chamber),

in answer to the questions referred to it by the Cour d'Appel, Versailles, by judgment of 5 November 1998, hereby rules:

1.    Title II of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, as amended by the Convention of 9 October 1978 on the Accession of the Kingdom of Denmark, Ireland and the United Kingdom of Great Britain and Northern Ireland, by the Convention of 25 October 1982 on the Accession of the Hellenic Republic and by the Convention of 26 May 1989 on the Accession

of the Kingdom of Spain and the Portuguese Republic, is in principle applicable where the defendant has its domicile or seat in a Contracting State, even if the plaintiff is domiciled in a non-member country. It would be otherwise only in exceptional cases where an express provision of that convention provides that the application of the rule of jurisdiction which it sets out is dependent on the plaintiff's domicile being in a Contracting State.

2. The rules of special jurisdiction in matters relating to insurance set out in Articles 7 to 12a of that convention do not cover disputes between a reinsurer and a reinsured in connection with a reinsurance contract.

Moitinho de Almeida         Schintgen         Puissochet

Hirsch                 Macken

Delivered in open court in Luxembourg on 13 July 2000.

R. Grass                                        J.C. Moitinho de Almeida

Registrar                                        President of the Sixth Chamber

I - 5963