# EXHIBIT 11

JUDGMENT OF THE COURT (First Chamber)

7 February 2013 (*)

(Judicial cooperation in civil matters – Jurisdiction in civil and commercial matters – Regulation (EC) No 44/2001 – Interpretation of Article 23 – Jurisdiction clause in a contract concluded between the manufacturer and the initial buyer of goods – Contract forming part of a chain of contracts transferring ownership – Whether that clause may be relied on against the sub-buyer of the goods)

In Case C‑543/10,

REQUEST for a preliminary ruling under Article 267 TFEU, from the Cour de cassation (France), made by decision of 17 November 2010, received at the Court on 22 November 2010, in the proceedings

**Refcomp SpA**

v

**Axa Corporate Solutions Assurance SA,**

**Axa France IARD,**

**Emerson Network,**

**Climaveneta SpA,**

THE COURT (First Chamber),

composed of A. Tizzano, President of the Chamber, M. Ilešič, E. Levits, M. Safjan and M. Berger (Rapporteur), Judges,

Advocate General: N. Jääskinen,

Registrar: R. Şereş, Administrator,

having regard to the written procedure and further to the hearing on 3 May 2012,

after considering the observations submitted on behalf of:

–       Refcomp SpA, by P. Pedone and A. Musella, avocats,

–       Axa Corporate Solutions Assurance SA, by B. Soltner, avocat,

–       Emerson Network, by A. Bénabent, avocat,

–       the French Government, by G. de Bergues, B. Beaupère‑Manokha and N. Rouam, acting as Agents,

–       the German Government, by T. Henze and F. Wannek, acting as Agents,

–       the Spanish Government, by S. Centeno Huerta, acting as Agent,

– the European Commission, by A.-M. Rouchaud-Joët, acting as Agent,

after hearing the Opinion of the Advocate General at the sitting on 18 October 2012,

gives the following

## Judgment

1   This request for a preliminary ruling concerns the interpretation of Article 23 of Council Regulation (EC) No 44/2001 of 22 December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters (OJ 2001 L 12, p. 1) ('the Regulation').

2   The request has been made in proceedings between Refcomp SpA ('Refcomp') and Axa Corporate Solutions Assurance SA ('Axa Corporate'), Axa France IARD, Emerson Network, ('Emerson') and Climaveneta SpA ('Climaveneta') seeking to establish the liability of the applicant in the main proceedings as a manufacturer before the French courts while the later relies on a clause granting jurisdiction to the Italian courts.

### Legal context

3   As is clear from recital 2 in the preamble to the Regulation, its aim is 'to unify the rules of conflict of jurisdiction in civil and commercial matters'.

4   Recital 11 in the preamble to the Regulation states in particular that '[t]he rules of jurisdiction must be highly predictable and founded on the principle that jurisdiction is generally based on the defendant's domicile and jurisdiction must always be available on this ground save in a few well-defined situations in which the subject-matter of the litigation or the autonomy of the parties warrants a different linking factor'.

5   Article 5(1) of the Regulation, which appears in Section 2, entitled 'Special jurisdiction', in Chapter II, on jurisdiction, lays down a rule of special jurisdiction according to which, in matters relating to contract, a person domiciled in a Member State may be sued in another Member State in the courts for the place of performance of the obligation in question.

6   Article 23(1) of the Regulation, in Section 7 of Chapter II, entitled 'Prorogation of jurisdiction', provides:

'If the parties, one or more of whom is domiciled in a Member State, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise. Such an agreement conferring jurisdiction shall be either:

(a)   in writing or evidenced in writing; or

(b)   in a form which accords with practices which the parties have established between themselves; or

(c)   in international trade or commerce, in a form which accords with a usage of which the parties are or ought to have been aware and which in such trade or commerce is widely

known to, and regularly observed by, parties to contracts of the type involved in the particular trade or commerce concerned.'

**The dispute in the main proceedings and the questions referred for a preliminary ruling**

7    Doumer SNC ('Doumer'), a property developer, had renovation work carried out on a building complex in Courbevoie (France). That company is insured by Axa Corporate whose registered office is in Paris (France).

8    In the course of that work air−conditioning units were installed. Those units are equipped with compressors which were manufactured by Refcomp, whose registered office is in Italy, purchased from that company and fitted by Climaventa whose registered office is also in Italy, then sold to Doumer by the company Liebert to whose rights Emerson is now subrogated. Emerson, whose registered office is in France, is insured by Axa France IARD, which is also established in France.

9    As irregularities occurred in the air-conditioning system, an expert's report established that those failures were caused by a defect in the manufacturing of the compressors.

10   Subrogated to the rights of Doumer, to which it paid compensation, Axa Corporate sued the manufacturer Recomp, the fitter Climaveneta and the seller Emerson before the Tribunal de grande instance de Paris (Regional Court, Paris) seeking an order that they pay *in solidum* compensation for the damage suffered.

11   Refcomp challenged the jurisdiction of the Tribunal de grande instance de Paris, relying on a jurisdiction clause in favour of the Italian courts incorporated in the contract concluded between it and Climaveneta.

12   By order of 26 January 2007, the judge preparing the case for trial at the Tribunal de grande instance de Paris rejected the plea of lack of jurisdiction raised by Refcomp, which appealed against that decision.

13   By judgment of 19 December 2008, the Cour d'appel de Paris (Appeal Court, Paris) upheld the decision rejecting Refcomp's plea of lack of jurisdiction. It held that the jurisdiction clause agreed between the manufacturer and an intermediate seller cannot be relied on against the insurer subrogated to the rights of the sub−buyer on the ground, first, that the rules of special jurisdiction in matters relating to contract laid down by the Regulation do not apply to disputes between the sub-buyer of an item and the manufacturer as such disputes concern matters of tort, delict and quasi-delict and, second, that the clause concerned, agreed between the parties to the original contract, had not been accepted by the sub-buyer.

14   Refcomp appealed and the Cour de cassation (Court of Cassation) decided to stay the proceedings and to refer the following questions to the Court of Justice for a preliminary ruling:

'1.    Is a clause conferring jurisdiction which has been agreed, in a chain of contracts under Community law, between a manufacturer of goods and a buyer in accordance with Article 23 of [the] Regulation […] effective as against the sub-buyer and, if so, under what conditions?

2. Is the clause conferring jurisdiction effective as against the sub-buyer and its subrogated insurers even if Article 5(1) of [the] Regulation […] does not apply to the sub-buyer's action against the manufacturer, as the Court held in its judgment [in Case C‑26/91] *Handte* [1992] ECR I‑3967]?'

**Consideration of the questions referred**

*Preliminary observations*

15   In the formulation of its questions, the referring court indicates that they are part of a 'chain of contracts under Community law'. In order to define the scope of those questions and thus to provide a useful answer to them, it should be observed that such a concept must be understood, as is apparent from the file, as designating a succession of contracts transferring ownership which have been concluded between economic operators established in different Member States of the European Union.

16   As the Advocate General observed, in paragraph 22 of his Opinion, it is clear from the observations submitted to the Court that those questions relate to a rule in national law according to which, although the principle of privity of contract ordinarily applies in that contracts are binding only on the parties who have signed them, an exception to that principle is made where there is a transfer of ownership, ownership of the goods sold being transferred to all the subsequent purchasers together with all elements appurtenant to it. Among the ancillary elements is the right of the sub-buyer of the goods to claim compensation for harm resulting from the non-conformity of those goods from the direct seller and any of the intermediaries who have sold the goods or manufactured it.

17   In that context, as regards, firstly, whether Article 23 of the Regulation is applicable to the facts of the case in the main proceedings, it must be observed that, pursuant to Article 23(1), it is sufficient, in principle, that a party is domiciled in the Member State and that the clause gives jurisdiction to the court of a Member State, conditions which are satisfied in the present case. Furthermore, it is common ground that the legal relationship at issue in the main proceedings has an international character. Article 23 of the Regulation is therefore applicable to the facts of that case.

18   Secondly, as regards the interpretation to be given to the provisions of the Regulation referred to in the questions, it must be recalled first of all that, in so far as the Regulation replaces the Convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters (OJ 1978 L 304, p. 36), as amended by the successive accession conventions for the new Member States ('the Brussels Convention') in the relations between Member States, the interpretation provided by the Court in respect of the provisions of that convention is also valid for those of the regulation whenever the provisions of those instruments may be regarded as equivalent (see, in particular, Case C‑133/11 *Folien Fischer and Fofitec* [2012] ECR, paragraph 31).

19   That is the case as far as concerns the first paragraph of Article 17 of that convention and Article 23(1) of the Regulation, which are drafted in almost identical terms.

20   Such is also the case as regards the concept of 'matters relating to contract' within the meaning of Article 5(1) of the Regulation, since the amendments made to that provision concern only the linking factor adopted in order to determine the courts with jurisdiction as regards contracts for the sale of goods and those for the supply of services, leaving the substance of the rest of the corresponding provision of the Brussels Convention unchanged

(see, to that effect, Case C−533/07 *Falco Privatstiftung and Rabitsch* [2009] ECR I−3327, paragraphs 48 to 57).

21  As to the method of interpretation to be preferred with regard to those two provisions, the Court has stated, in the case of the first paragraph of Article 17 of the Brussels Convention, that, taking account of the objectives and the general scheme of that convention which are also those of the Regulation and in order to ensure the uniform application of that instrument, the concept of 'jurisdiction clause' referred to in that provision must be interpreted not as a simple reference to the national law of one or other of the States concerned but as an independent concept (see Case C−214/89 *Powell Duffryn* [1992] ECR I−1745, paragraphs 13 and 14).

22  On similar grounds, the Court held that the concept of 'matters relating to contract', within the meaning of Article 5(1) of the Brussels Convention must also be interpreted independently (see, in particular, *Handte*, paragraph 10 and the case−law cited).

23  It is in the light of those findings that it is appropriate to give the referring court the interpretation requested.

*The first question*

24  By its first question, the referring court wishes to know essentially whether Article 23 of the Regulation must be interpreted as meaning that a jurisdiction clause agreed in the contract concluded between the manufacturer of goods and the buyer thereof may be relied on against a third party sub-buyer who, in the course of a succession of contracts transferring ownership concluded between parties established in different Member States, has purchased those goods and wishes to bring an action for damages against the manufacturer.

25  In that connection, it must be stated that, as regards the conditions for the validity of a jurisdiction clause, Article 23(1) of the Regulation sets out in substance the formal requirements and mentions only one substantive condition relating to the subject-matter of the clause which must concern a particular legal relationship. Therefore, the wording of that provision does not indicate whether a jurisdiction clause may be transmitted, beyond the circle of the parties to a contract, to a third party, a party to a subsequent contract and successor, in whole or in part, to the rights and obligations of one of the parties to the initial contract.

26  However, Article 23(1) of the Regulation clearly indicates that its scope is limited to cases in which the parties have 'agreed' on a court. As appears from recital 11 in the preamble to the Regulation, it is that consensus between the parties which justifies the primacy granted, in the name of the principle of the freedom of choice, to the choice of a court other than that which may have had jurisdiction under the regulation.

27  The Court has also held, as regards the first paragraph of Article 17 of the Brussels Convention, that, by making the validity of a jurisdiction clause subject to the existence of an 'agreement' between the parties, that provision imposes on the court before which the matter is brought the duty of examining, first, whether the clause conferring jurisdiction upon it was in fact the subject of consensus between the parties (Case C−106/95 *MSG* [1997] ECR I−911, paragraph 15 and the case−law cited).

28  Therefore, Article 23(1) of the Regulation must be interpreted as meaning that, like the aim pursued by the first paragraph of Article 17 of the Brussels Convention, ensuring the real consent of the parties is one of the aims of that provision (see *MSG*, paragraph 17 and Case C−159/97 *Castelletti* [1999] ECR I−1597, paragraph 19).

29   It follows that the jurisdiction clause incorporated in a contract may, in principle, produce effects only in the relations between the parties who have given their agreement to the conclusion of that contract. In order for a third party to rely on the clause it is, in principle, necessary that the third party has given his consent to that effect.

30   It is true that the conditions and the forms under which a third party to the contract may be regarded as having given his consent to a jurisdiction clause may vary in accordance with the nature of the initial contract.

31   Thus, the Court has acknowledged that the shareholder who subscribes to the statutes of a company is deemed to give his consent to a jurisdiction clause therein, on the ground that subscribing creates a relationship between the shareholder and the company and between the shareholders themselves which must be regarded as contractual (see to that effect, *Powell Duffryn*, paragraphs 16 to 19).

32   However, that case-law cannot be transposed to the relationship between the sub−buyer of goods purchased from an intermediate seller and the manufacturer of those goods. In that connection, the Court has ruled to that effect that that relationship is not covered by 'matters relating to contract' within the meaning of Article 5(1) of the Brussels Convention. It held, in the context of an action for damages brought by the sub-buyer of goods against the manufacturer thereof that there is no contractual relationship between the sub-buyer and the manufacturer, because the latter has not undertaken any contractual obligation towards the former (*Handte*, paragraph 16).

33   Since, the sub-buyer and the manufacturer cannot be regarded, for the purposes of applying the Regulation, as being bound by a contractual link, it must be concluded that they cannot be regarded as having 'agreed', within the meaning of Article 23(1) thereof, to the court designated as having jurisdiction in the initial contract concluded between the manufacturer and the first buyer.

34   However, the Court also acknowledged that, in matters relating to maritime transport contracts, a jurisdiction clause incorporated in a bill of lading may be relied on against a third party to that contract if that clause has been adjudged valid between the carrier and the shipper and provided that, by virtue of the relevant national law, the third party, on acquiring the bill of lading, succeeded to the shipper's rights and obligations (see Case 71/83 *Russ* [1984] ECR 2417, paragraph 24; *Castelletti*, paragraph 41; and Case C−387/98 *Coreck* [2000] ECR I−9337, paragraphs 23 to 27).

35   The scope of that case-law must, however, be assessed by taking account of the very specific nature of bills of lading which, as the Advocate General explained in point 54 of his Opinion, is an instrument of international commerce intended to govern a relationship involving at least three persons, namely the maritime carrier, the consigner of the goods or shipper, and the recipient of the goods. Under most legal systems of the Member States which agree on this matter the bill of lading is a negotiable instrument which allows the owner to transfer the goods, en route, to a purchaser who becomes as bearer of the bill of lading, the consignee of the goods and the holder of all the rights and obligations of the shipper in relation to the carrier.

36   It is in the light of that relationship of substitution between the holder of the bill of lading and the shipper that the Court considered that, by the effect of the acquisition of the bill of lading the holder is bound by the agreement on jurisdiction (see, to that effect, *Russ*, paragraph 25). Conversely, where the relevant national law does not provide for such a relationship of substitution, the court hearing the case must ascertain whether that third party has actually accepted the jurisdiction clause (*Coreck*, paragraph 26).

37   In a chain of contracts transferring ownership, the relationship of succession between the initial buyer and the sub-buyer is not regarded as the transfer of a single contract or the transfer of all the rights and obligations for which it provides. In such a case, the contractual obligations of the parties may vary from contract to contract, so that the contractual rights which the sub-buyer can enforce against his immediate seller will not necessarily be the same as those which the manufacturer will have accepted in his relationship with the first buyer (*Handte*, paragraph 17).

38   Furthermore, the agreement of the national legal systems with respect to the effects of the transfer of the bill of lading to a third party is not found in relation to contracts transferring ownership, as regards to which it appears that the relationships between manufacturer and sub-buyer are perceived differently in the Member States (see, to that effect, *Handte*, paragraph 20).

39   In such circumstances, to refer the assessment as to whether the sub-buyer may rely on a jurisdiction clause incorporated in the initial contract between the manufacturer and the first buyer to national law, as Refcomp and the German and Spanish Governments have suggested, would give rise to different outcomes among the Member States liable to compromise the aim of unifying the rules of jurisdiction pursued by the Regulation, as is clear from recital 2 in the preamble thereto. Such a reference to national law would also be an element of uncertainty incompatible with the concern to ensure the predictability of jurisdiction which is, as stated in recital 11 in the preamble to the Regulation, one of its objectives.

40   Therefore, it is appropriate to revert to the general rule, set out in paragraph 21 of the present judgment, according to which the concept of 'jurisdiction clause' referred to in that provision must be interpreted as an independent concept, and to give full effect to the principle of freedom of choice on which Article 23(1) of the Regulation is based.

41   In the light of all of the foregoing considerations, the answer to the first question is that Article 23 of the Regulation must be interpreted as meaning that a jurisdiction clause agreed in the contract concluded between the manufacturer of goods and the buyer thereof cannot be relied on against a sub-buyer who, in the course of a succession of contracts transferring ownership concluded between parties established in different Member States, purchased the goods and wishes to bring an action for damages against the manufacturer, unless it is established that that third party has actually consented to that clause under the conditions laid down in that article.

   *The second question*

42   By its second question, the referring court asks essentially whether the non−contractual nature of the direct action granted by national law to the sub−buyer of goods against the manufacturer of those goods is capable of influencing the effects of the jurisdiction clause incorporated into the contract concluded upstream between the manufacturer and a buyer.

43   As the Advocate General observed in point 59 of his Opinion, it is clear from the wording of that question that it is referred mainly in order to cater for the eventuality that the first question is answered in the affirmative.

44   In the light of the answer given to the first question there is no need to answer the second question.

   **Costs**

45   Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

On those grounds, the Court (First Chamber) hereby rules:

**Article 23 of Council Regulation (EC) No 44/2001 of 22 December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters must be interpreted as meaning that a jurisdiction clause agreed in the contract concluded between the manufacturer of goods and the buyer thereof cannot be relied on against a sub-buyer who, in the course of a succession of contracts transferring ownership concluded between parties established in different Member States, purchased the goods and wishes to bring an action for damages against the manufacturer, unless it is established that that third party has actually consented to that clause under the conditions laid down in that article.**

[Signatures]

\* Language of the case: French.